UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SCOTT PHILLIP LEWIS,

                                        Plaintiff,

v.                                                          1:24-cv-0376
                                                            (BKS/TWD)

ADIRONDACK MEDICAL CENTER, et al.,

                                        Defendants.
_____

APPEARANCES:

SCOTT PHILLIP LEWIS
*Plaintiff, pro se*
1936 Saranac Ave.
#3, PMB 411
Lake Placid, NY 12946

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

        The Clerk has sent to the Court for review a civil complaint submitted by *pro se* plaintiff

Scott Phillip Lewis ("Plaintiff"),[1] as well as a motion to proceed *in forma pauperis* ("IFP").  Dkt.

_____

[1] Plaintiff has filed numerous other actions that are presently pending in this District, as well as others. *See, e.g.*, *Lewis v. Town of Elizabethtown*, 8:24-CV-00535 (AMN/DJS) (N.D.N.Y. filed Apr. 18, 2024); *Lewis v. Paymaster Payroll Sys., Inc.*, 8:24-CV-00121 (MAD/DJS) (N.D.N.Y. filed Jan. 25, 2024), Dkt. No. 9 (dismissing complaint and entering judgment in favor of the defendants); *Lewis v. Walsh*, 8:24-CV-00098 (GTS/CFH) (N.D.N.Y. filed Jan. 21, 2024); *Lewis v. Essex Cnty.*, 8:24-CV-00100 (MAD/CFH) (N.D.N.Y. filed Jan. 19, 2024); *Lewis v. Despos, LLC*, 8:24-CV-00079 (AMN/CFH) (N.D.N.Y. filed Jan. 17, 2024); *Lewis v. R. L. Vallee, Inc.*, 8:24-CV-00069 (AMN/DJS) (N.D.N.Y. filed Jan. 16, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); *Lewis v. Affiliated Enter. Sol., LLC*, 8:24-CV-00061 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); *Lewis v. Redline Hockey, LLC*, 8:24-CV-00068 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); *Lewis v. Citizens United, Inc.*, 8:24-CV-00029

No. 1 ("Compl."); Dkt. No. 2.  For the reasons discussed below, the Court grants Plaintiff's IFP application and recommends that the complaint be dismissed in its entirety with leave to amend.

## I.    IFP APPLICATION

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP.  Dkt. No. 2.  Upon review, Plaintiff's IFP application demonstrates economic need.  *See* 28 U.S.C. § 1915(a)(1).  Therefore, he is granted permission to proceed IFP.

## II.    BACKGROUND

On January 7, 2024, Plaintiff submitted a complaint against Adirondack Medical Center d/b/a Adirondack Health alleging violations of Title III of the American with Disabilities Act ("ADA"), 42 U.S.C. § 1218 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  *Lewis v. Adirondack Med. Ctr.*, No. 8:24-cv-27 (BKS/DJS) (N.D.N.Y. filed Jan. 7, 2024) ("*Lewis I*").  On February 29, 2024, United States Magistrate Judge Daniel J. Stewart granted Plaintiff's application to proceed IFP and recommended Plaintiff's complaint be dismissed with leave to amend.  *Lewis I*, Dkt. Nos. 13, 14.  As detailed therein, Plaintiff's claims under both the ADA and Rehabilitation Act stemmed from Adirondack Medical Center's purported failure to timely provide physical therapy service in 2022, which Plaintiff alleged was financially

---

(DNH/DJS) (N.D.N.Y. filed Jan. 8, 2024), Dkt. No. 22 (dismissing complaint with leave to amend); *Lewis v. Adirondack Med. Ctr.*, 8:24-CV-00027 (BKS/DJS) (N.D.N.Y. filed Jan. 7, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); *Lewis v. Onondaga Cnty.*, 8:24-CV-00013 (GTS/DJS) (N.D.N.Y. filed Jan. 3, 2024), Dkt. No. 11 (Report-Recommendation recommending dismissal pending review); *Lewis v. Essex Cnty.*, 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023); *Lewis v. Williamson Cnty.*, 1:24-CV-00118 (ADA) (W.D. Tex. filed Jan. 29, 2024); *Lewis v. Franklin Cnty.*, 8:23-CV-1647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 10 (Report-Recommendation recommending dismissal pending review); *Lewis v. Williamson Cnty.*, 1:21-CV-00074 (ADA/SH) (W.D. Tex. filed Jan. 25, 2021), Dkt. No. 142 (Report-Recommendation recommending granting summary judgment in favor of the defendants pending review).

motivated. *Lewis I*, Dkt. No. 14 at 4. On March 18, 2024, Plaintiff filed objections to the Report-Recommendation. *Lewis I*, Dkt. No. 16.

By Memorandum-Decision and Order issued April 17, 2024, Chief United States District Judge Brenda K. Sannes adopted Magistrate Judge Stewart's Report-Recommendation and dismissed the complaint with leave to amend. *Lewis I*, Dkt. No. 17. Any amended complaint must be filed by July 4, 2024. *Lewis I*, Dkt. No. 19. To date, Plaintiff has not filed an amended complaint in *Lewis I*.

On March 19, 2024, Plaintiff filed the complaint in the instant matter against Adirondack Medical Center, Lake Placid Sports Medicine, PLLC, CDPHP Universal Benefits, Inc., Eugene Byrne, Daniel P. Bullock, Bartlomiej Szczech, Tracey Viola, and William J. Smith alleging violations of the ADA and 42 U.S.C. § 1985(3). Compl. at ¶¶ 1-9.[2, 3]

Plaintiff explains he sought treatment at Adirondack Medical Center in March 2022 for chronic pain from a "previously injured left wrist, hand and fingers and left shoulder." *Id*. at ¶ 12. Further, he states he was diagnosed with attention-deficit hyperactivity disorder ("ADHD") and post traumatic stress disorder ("PTSD") in January 2022 and May 2023, respectively. *Id*. at ¶ 16. Plaintiff complains that "After being denied medical care by Adirondack Medical Center, Plaintiff's injuries still produced chronic pain that disrupted Plaintiff's everyday life." *Id*. at ¶ 20. In April 2023, Plaintiff was scheduled for an MRI. *Id*. at ¶ 22. "Plaintiff was on Medicaid through CDPHP Universal Benefits, Inc." *Id*. "Plaintiff was told the imaging would be done on

---

[2] Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[3] According to Plaintiff, "[t]he claims made without this complaint are wholly separate from any made within Plaintiff's previous complaint made against Adirondack Medical Center." Compl. at ¶ 19. However, the facts as alleged in the instant matter bear, at least some, relation to those facts asserted in *Lewis I*. *Compare Lewis I*, Dkt. No. 1 *with* Compl.

the left forearm.  Plaintiff was immediately concerned because the injury was within the left

wrist, hand and fingers, and not the forearm." *Id*. at ¶ 23.  "Plaintiff was told that the insurance

company could only take images on the forearm since that was the imaging that was approved."

*Id*. at ¶ 24.  Although he was "enraged," Plaintiff proceeded with the imaging of the forearm.  *Id*.

"The results of the first MRI were inconclusive, since it did not take an image of the injury."  *Id*.

at ¶ 25.  "When Plaintiff brought this to the attention of the Adirondack Medical Center, Plaintiff

was told by Dr. Lindsay Wilhelm, the physician who made the referral, said that Plaintiff never

mentioned injuries to his hand and fingers."  *Id*.  According to Plaintiff, "[t]his is a bold faced

lie."  *Id*. at ¶ 26.  "Plaintiff perceived the imaging taken on the wrong body part to be organized

fraud to take advantage of Plaintiff's [M]edicaid insurance."  *Id*. at ¶ 27.  He further claims.

"[t]his tactic is done knowing that Plaintiff will need to return for additional MRI's (sic) after

images on the wrong body part are taken."  *Id*.

     Plaintiff "eventually" received MRIs of the left wrist, hand, and fingers and left shoulder.

*Id*. at ¶ 28.  "His left shoulder was diagnosed with a torn labrum."  *Id*.  Plaintiff claims he "has

never reviewed these MRI's (sic) with staff from Adirondack Medical Center or any other

individual."  *Id* at 29.  "Instead, Plaintiff was referred to Lake Placid Sports Medicine in Lake

Placid, New York."  *Id*. at ¶ 30.

     "Before being seen by a physician, Plaintiff was told they needed to complete 'a nerve

test' in Plattsburgh, New York or Queensbury, New York."  *Id*.  "Plaintiff declined the

unnecessary testing prior to being seen by a physician."  *Id*.  "After refusing a nerve test that

would not benefit Plaintiff's injuries in any way but instead would benefit Defendant with

monetary incentives, Plaintiff was told that there were no physicians available who would be

able to treat his injuries."  *Id*. at ¶ 31.  "Plaintiff was discontinued and refused to be seen in the

future by Adirondack Health on or around May 2023." *Id*. at ¶ 33.  In June 2023, Plaintiff "reported the suspected fraud to CDPHP Universal Benefits, Inc." but "was told, after investigation, that they cannot direct physicians how to run their businesses." *Id*. at ¶ 34. According to Plaintiff, "CHPHP admitted that if medical professionals were abusing Medicaid reimbursements by ordering MRI's (sic) on the wrong body part, they would participate in the scheme." *Id*.

The complaint lists two claims: (1) a Title III ADA claim against Lake Placid Sports Medicine, PLLC; *id*. at ¶¶ 35-40; and (2) a 42 U.S.C. § 1985(3) conspiracy claim against "All Defendants," *id*. at ¶¶ 41-43.  *See also* Dkt. No. 1-1 (citing "42 U.S.C. § 1985(3) Conspiracy to violate Americans with Disabilities Act 1990" and indicating "I'm just a poor boy from a poor family (with disabilities).").  As relief, Plaintiff seeks monetary damages.  *Id*. at ¶ 46.  For a complete statement of Plaintiff's claims, reference is made to the complaint.

## III.    STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an IFP complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted).  A claim is

frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  This short and plain statement of the claim must be "plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation."  *Id* at 678.  It must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id* at 663.

Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *see also Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

## IV.   ANALYSIS

Having liberally construed Plaintiff's complaint, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court recommends it be dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### A.    Plaintiff's ADA Claim against Lake Placid Sports Medicine, PLLC

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To state a claim under Title III, Plaintiff must allege that: (1) he has a disability; (2) Defendant owns, leases, or operates a place of public accommodation; and (3) that Defendant discriminated against Plaintiff within the meaning of the ADA. *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008); *see Rossman v. Dollar Gen. Corp.*, 368 F. Supp. 3d 422, 426-27 (N.D.N.Y. 2019) (finding that plaintiff stated a claim under Title III of the ADA where she specifically alleged that, on two occasions, she had visited retailer's store and had encountered physical impediments that prevented her from navigating through the store in a wheelchair).

Plaintiff has not alleged an ADA claim against Lake Placid Sports Medicine, PLLC sufficient to withstand initial review.  First, Plaintiff has not plausibly alleged he is disabled within the meaning of the ADA.  The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).  "A diagnosis alone is insufficient to establish disability under the statute." *Terpening v. McGinty*, No. 1:21-CV-1215 (GTS/CFH), 2022 WL 17418268, at *8 (N.D.N.Y. Oct. 5, 2022) (citations omitted), *report-recommendation adopted*, 2022 WL 17415121 (N.D.N.Y. Dec. 5, 2022).

Plaintiff's assertions that he has been diagnosed with ADHD and PTSD "without additional factual allegations to show how a major life activity is or was substantially limited by such conditions is not enough to satisfy his pleading burden under either prong (A) or prong (B) of the definition." *Lewis v. Redline Hockey, LLC*, No. 8:24-CV-68 (BKS/DJS), 2024 WL 1652491, at *3 (N.D.N.Y. Apr. 17, 2024); *see also Lewis v. R.L. Vallee, Inc.*, No. 8:24-CV-69 (AMN/DJS), 2024 WL 1739608, at *3 (N.D.N.Y. Apr. 23, 2024) (finding Plaintiff's allegations insufficient to allege he was disabled under ADA because Plaintiff did not describe how his ADHD or PTSD substantially limited a major activity).  "And Plaintiff has not alleged facts that suggest [Lake Placid Sports Medicine, PLLC] perceived him as disabled, such that he would meet the definition under prong (C)." *Lewis v. Redline Hockey, LLC*, 2024 WL 1652491, at *3.

Second, Plaintiff has not pled Lake Placid Sports Medicine, PLLC's actions constituted discrimination under Title III of the ADA or resulted in the discriminatory provision of services to Plaintiff.  Discrimination on the basis of disability in public accommodations involves, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a

disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (citing 42 U.S.C. § 12182(b)(2)(A)(iii)); *see also Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir. 2012) (quoting 42 U.S.C. § 12182(b)(2)(A)(ii) ("The Act defines discrimination to include . . . 'a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods [and] services . . . to individuals with disabilities, unless . . . such modifications would fundamentally alter the nature of such goods [and] services.'")).  Although Plaintiff alleges Lake Placid Sports Medicine, PLLC engaged in a "fraudulent scheme for monetary incentives while ultimately refusing treatment to Plaintiff," Compl. at ¶ 32, and Plaintiff was "told" there were "no physicians available who would be able to treat his injuries" after he refused "a nerve test," *id*. at ¶¶ 30-32, Plaintiff does not allege Lake Placid Sports Medicine, PLLC took these actions for the purpose of discriminating against him because of an alleged disability.

Third, Plaintiff only seeks monetary damages—not injunctive relief.  *See* Compl. at ¶ 46. However, as explained in *Lewis I*, "[i]t is well established that Title III of the ADA allows only for injunctive relief, not monetary damages."  *Lewis v. Adirondack Med. Ctr.*, No. 8:24-CV-27 (BKS/DJS), 2024 WL 1652458, at *4 (N.D.N.Y. Apr. 17, 2024) (quoting *Bacon v. Walgreen Co.*, 91 F. Supp. 3d 446, 451 (E.D.N.Y. 2015) (citing *Brief v. Albert Einstein C. of Med.*, 423 F. App'x 88, 90 (2d Cir. 2011))).

Accordingly, based on the foregoing, and for substantially the same reasons set forth in *Lewis I*, the Court recommends Plaintiff's ADA claim against Lake Placid Sports Medicine, PLLC be dismissed for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### B.    Plaintiff's 42 U.S.C. § 1985(c) Claim against "All Defendants"

"Section 1985 prohibits conspiracies to deprive individuals of civil rights." *Johnson v. N.Y.C.*, 669 F. Supp. 2d 444, 451 (S.D.N.Y. 2009).  To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007); *accord Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).  Further, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc.*, 507 F.3d at 791.

"Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Walker v. O'Connor*, No. 1:22-CV-581 (DNH/TWD), 2022 WL 2341420, at *4 (N.D.N.Y. June 29, 2022) (citation omitted), *report-recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022); *see, e.g.*, *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants.  Their conspiracy allegation must therefore fail."); *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 340 (E.D.N.Y. 2010) (concluding the § 1985 conspiracy claim failed because "Plaintiff has provided only conclusory, vague and unsupported allegations . . . as a basis for asking the Court to find the existence of a conspiracy."), *aff'd*, 417 F. App'x 96 (2d Cir. 2011).  "Moreover, a § 1985

conspiracy claim fails as a matter of law where there is no underlying constitutional violation." *Walker*, 2022 WL 2341420, at *4 (citing *Oliver v. Penny*, No. 21-111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (summary order) (concluding plaintiff's § 1985 conspiracy claim "failed because she did not plausibly allege an underlying constitutional violation")).

      Here, Plaintiff has not alleged a conspiracy claim sufficient to withstand initial review. First, the complaint contains only "conclusory, vague, or general allegations, " that "All Defendants" engaged in a conspiracy. *See* Compl. at ¶¶ 41-42. Although Plaintiff alleges "Defendants participated in a scheme to maximize their financial interests while refusing to provide medical care to Plaintiff," and "conspired in a fraudulent scheme" "to maximize profits while refusing to treat Plaintiff"" he fails to advance any factual allegations to support such conclusory statements. *Id*. at ¶ 42; *see, e.g.*, *Mir v. Zucker*, No. 19-CV-06374, 2019 WL 5693695, at *7 (S.D.N.Y. Nov. 1, 2019) ("vague and unsupported" allegations regarding conspiracy insufficient to state claim under § 1985). Second, Plaintiff has failed to adequately allege the necessary racial or other invidious discriminatory animus. *Cine SK8, Inc.*, 507 F.3d at 791; *see, e.g.*, *Wiltz v. New York Univ.*, No. 1:19-CV-03406, 2019 WL 8437456, at *15 (S.D.N.Y. Dec. 23, 2019), *report-recommendation adopted*, 2020 WL 614658 (S.D.N.Y. Feb. 10, 2020). Third, as discussed above, Plaintiff has not plausibly alleged an underlying violation of the ADA. *See, e.g.*, *Tirse v. Gilbo*, No. 6:15-CV-0987 (GTS/ATB), 2016 WL 4046780, at *18 (N.D.N.Y. July 27, 2016) ("Because the Court has found that Plaintiff has failed to allege facts plausibly suggesting a conspiracy and/or an underlying constitutional violation, Plaintiff's § 1985 claim is likewise dismissed.").

      Accordingly, this Court recommends that Plaintiff's Section 1985(3) claim against "All Defendants" be dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### C.    Leave to Amend

In deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court recommends Plaintiff be afforded the opportunity to file an amended complaint to cure the deficiencies identified above.  *See Gomez*, 171 F.3d at 796.  The amended pleading must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.  Any amended complaint submitted by Plaintiff must also demonstrate that a case or controversy exists between the Plaintiff and the Defendants which Plaintiff has a legal right to pursue.  Plaintiff is cautioned that no portion of his prior complaint shall be incorporated into his amended complaint by reference.

## V.    CONCLUSION

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**,[4] and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of

---

[4]  Plaintiff is advised that, although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

[5]  If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have

the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

       **IT IS SO ORDERED.**

Dated: May 10, 2024
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 14 of 105

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

2022 WL 17418268
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tammy TERPENING, Plaintiff,

v.

Anthony MCGINTY, in his judicial
and individual capacities, Defendant.

No. 1:21-CV-1215 (GTS/CFH)
|
Signed October 5, 2022

**Attorneys and Law Firms**

Tammy Terpening, 17 Blair Road, Apt. 6, Kerhonkson, New
York 12446, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, United States Magistrate Judge

**I. Procedural Background**

 *1 Plaintiff pro se Tammy Terpening ("plaintiff")
commenced this action on November 9, 2021, with the
filing a complaint and an application to proceed in forma
pauperis ("IFP"). See Dkt. No. 1 ("Compl."); Dkt. No. 2. In
a Report-Recommendation and Order dated April 28, 2022,
the undersigned: (1) granted plaintiff's IFP application; (2)
recommended that plaintiff's 42 U.S.C. § 1983 and Title VII
claims, and Americans with Disabilities Act ("ADA") claim
against defendant Judge Anthony McGinty ("defendant")
in his individual capacity be dismissed with prejudice and
without leave to amend; and (3) recommended that plaintiff's
ADA claim against defendant in his official capacity be
dismissed without prejudice and with leave to amend. See
Dkt. No. 6. Plaintiff was informed that she had fourteen
days to file objections to the Report-Recommendation and
Order. See id. at 19. Plaintiff did not file any objections
and on June 13, 2022, Judge Suddaby adopted the Report-
Recommendation and Order in its entirety. See Dkt. No. 8.
Presently before the Court is plaintiff's amended complaint for
review pursuant to 28 U.S.C. § 1915. See Dkt. No. 9 ("Am.
Compl.").

**II. Initial Review of Amended Complaint**

**A. Legal Standard**

Section 1915 [1] of Title 28 of the United States Code directs
that, when a plaintiff seeks to proceed IFP, "the court shall
dismiss the case at any time if the court determines that ...
the action or appeal (i) is frivolous or malicious; (ii) fails to
state a claim on which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from such
relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility
to determine that a plaintiff may properly maintain his or her
complaint before permitting him or her to proceed with the
action.

[1]    The language of § 1915 suggests an intent to
limit availability of IFP status to prison inmates.
See 28 U.S.C. § 1915(a)(1) (authorizing the
commencement of an action without prepayment
of fees "by a person who submits an affidavit that
includes a statement of all assets such prisoner
possesses"). The courts have construed that section,
however, as making IFP status available to any
litigant who can meet the governing financial
criteria. See, e.g., Fridman v. City of N.Y., 195 F.
Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

Where, as here, the "plaintiff proceeds pro se, the court must
construe his [or her] submissions liberally and interpret them
to raise the strongest arguments that they suggest." Kirkland
v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per
curiam) (citation and internal quotation marks omitted). This
does not mean that the Court is required to accept unsupported
allegations that are devoid of sufficient facts or claims. Pro
se litigants are "not exempt ... from compliance with relevant
rules of procedural and substantive law[.]" Traguth v. Zuck,
710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). Although
detailed allegations are not required at the pleading stage,
the complaint must still include enough facts to provide the
defendants with notice of the claims against them and the
grounds on which these claims are based. See Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly,
550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must
plead "enough facts to state a claim to relief that is plausible
on its face." Twombly, 550 U.S. at 570. "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 15 of 105

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

**\*2** Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (citations and internal quotation marks omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought...." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (citations and internal quotation marks omitted). A complaint that fails to comply with the pleading requirements "presents far too [ ] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the

complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (internal citation omitted). However, "[d]ismissal [ ] is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

## B. Plaintiff's Amended Complaint [2]

> [2]
>
> All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Plaintiff's amended complaint raises essentially the same claims as her original complaint. See generally Compl.; Am. Compl. Plaintiff asserts that defendant was the Ulster County Family Court Judge presiding over child custody proceedings between her and her children's father. See id. at 4, 8, 16-17. Plaintiff claims that the children's father was abusive towards plaintiff and the children. See id. at 3. Plaintiff states that "since at least 2019, [she] filed a [custody] petition however [she] became ill and temporarily required the care of a hospital." Id. at 13. Plaintiff submits a photocopy of discharge instructions from Vassar Brothers Medical Center Emergency Department, dated September 29, 2019, which indicated a Hematochezia [3] diagnosis for one of her daughters. See id. at 14, 16. [4] Plaintiff also submits a discharge summary dated December 12, 2019, which stated that plaintiff was "admitted to medicine service. MRI done was positive for stroke. Patient started on stroke care measure medications. Found to be B12 deficient and started on supplementation." Id. at 15. The hospital summary notes that plaintiff had "iron deficiency secondary to dysfunctional uterine bleeding. Started on iron supplementation. Pelvic ultrasound was negative for ovarian or uterine lesions. Patient with new onset diabetes, added on diabetic heart healthy diet." Id. An "[e]chocardiogram was found to have global hypokinesis with ejection fraction of 40-45%. She was recommended to proceed with transesophageal echocardiogram." Id. The summary states, however, that "because Family Court judge did not consider her hospitalized status as justification to delay deciding custody for her minor children, with potential to release to their biological father, who has been accused of sexually molesting them, discharge was attested in order for patient to appear in family court." Id. Plaintiff was

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 16 of 105

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

"strongly encouraged to return for inpatient hospitalization management if symptoms were to recur." Id.

3       Hematochezia is bleeding in the stools. See Stedmans Medical Dictionary 397760 (Nov. 2014).

4       Because of plaintiff's pro se status, the undersigned has considered the allegations in the amended complaint along with the documents attached thereto. See, e.g., Anthony v. Murphy, No. 5:15-CV-00450 (DNH/TWD), 2015 WL 1957694, at *1 n.1 (N.D.N.Y. Apr. 28, 2015) ("[I]n light of [the p]laintiff's pro se status, the Court has considered the allegations in, and attachments to, both [the p]laintiff's original and amended/supplemental complaints upon its initial review."), report and recommendation adopted, No. 5:15-CV-450 (DNH/TWD), 2015 WL 3409261 (N.D.N.Y. May 27, 2015).

*3 Plaintiff attests that she requested "to adjourn the court date for necessary provisions for health and safety[,]" but "[d]efendant steadfastly refused and denied with blatant disrespect for the well being of [p]laintiff." Am. Compl. at 16-17. Plaintiff states that she arrived late to the court proceeding and her sister, who was already in attendance, informed plaintiff that defendant "harassed, intimidated, and threatened [plaintiff's sister] with incarceration if she interfered with watching [plaintiff's] children." Id. at 17. Plaintiff asserts that "[i]t was at this Court's first appearance where the [d]efendant on his own accord without explanation changed custody[ ]" in favor of the children's father. Id. Plaintiff states that she was "[s]ick, crushed, and in depair[.]" Id. She attests that "[l]ater that day," she received an email from her children's school which explained that the children's father said that "he is not able to have the girls with him at the moment and wishes for them to remain with their mother until he has prepared for them." Id. at 17-18.

On the first page of her amended complaint, plaintiff states that she is

seeking zero monetary damages, punitive damages, injunctive relief with penalties under [ ] 42 U.S.C. § 1988, declaratory judgment, pursuant to 18 U.S.C. §§ 241 and 242, 42 U.S.C. § 1985, 42 U.S.C. § 12203, 42 U.S.C. § 12182, 42 U.S.C. § 12301(3)(5)(7)

(A)(B), Title II claim of American Disabilities Act, seeking, appointed counsel and in the alternative, tortious interference with parental rights under the common law and for such other relief The Court deems just and appropriate.

Am. Compl. at 1. In her "claims for relief[,]" plaintiff states that she "seeks all prescribed relief stated throughout this action" and specifically prays for the appointment of counsel, a jury trial, and "[a] judgment against [d]efendant for costs and such other relief as the Court may deem appropriate." Id. at 24. 5

5       Plaintiff submits a letter addressed to defendant wherein she complained that her children's appointed attorney, William Pape, was ineffective, and she sought a different attorney. See Am. Compl. at 8. Plaintiff does not make any substantive allegations against Mr. Pape in her amended complaint or name him as a defendant. See generally Am. Compl.

**C. Analysis**

**1. Miscellaneous Statutes**

Plaintiff cites a string of statutes under which she purports to assert causes of action. See Am. Compl. at 1. First among them is 42 U.S.C. § 1988. See id. "[Section] 1988 does not provide an independent cause of action, but instead provides a mechanism by which particular remedies may be sought in civil rights actions." Solomon v. City of Rochester, 449 F. Supp. 3d 104, 113 (W.D.N.Y. 2020) (citation and quotation marks omitted). Plaintiff also cites 18 U.S.C. §§ 241 and 242. See Am. Compl. at 1. These statutes concern criminal conspiracy and criminal deprivation of rights under the color of law, but "they do not provide a private right of action to civil litigants." Burke v. APT Found., 509 F. Supp. 2d 169, 173 (D. Conn. 2007) (citations omitted); see 18 U.S.C. §§ 241, 242. Next, plaintiff cites 42 U.S.C. § 12301(3), (5), (7)(A)(B). See Am. Compl. at 1. This statute explains a Congressional policy enacted as part of its Helping America's Youth initiative and the provisions that plaintiff references discuss the importance of children's health and safety. See

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 17 of 105

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

42 U.S.C. § 12301(3), (5), (7)(A)(B). However, the policy states that it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity, by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." Improving the Coordination and Effectiveness of Youth Programs, Exec. Order No. 13459, § 6(c), 73 FR 8003 at *8005. Accordingly, it is recommended that any purported claims under 42 U.S.C. § 1988, 18 U.S.C. §§ 241 and 242, and 42 U.S.C. § 12301, are dismissed with prejudice and without leave to amend as plaintiff cannot state a cognizable claim. [6]

[6]    At the end of her amended complaint, plaintiff recites the standards for a motion for summary judgment pursuant to Fed. R. Civ. P. 56 and caselaw concerning qualified immunity. See Am. Compl. at 18-21. Neither are applicable to the standards applied at this stage.

## 2. 42 U.S.C. § 1985

*4  "Section 1985 prohibits conspiracies to deprive individuals of civil rights." Johnson v. City of New York, 669 F. Supp. 2d 444, 451 (S.D.N.Y. 2009); see Am. Compl. at 1. As an initial matter, defendant is immune from suit under 42 U.S.C. § 1985 to the extent she seeks damages. See Walker v. Rivera, No. 1:22-CV-560 (DNH/TWD), 2022 WL 2341544, at *4 (N.D.N.Y. June 29, 2022) (explaining that judicial immunity "immunizes [ ] judges from [ ] causes of action [ ] assert[ed] under both 42 U.S.C. § 1983 and § 1985."), report and recommendation adopted, 2022 WL 2805477 (N.D.N.Y. July 18, 2022).

"It is well-established that judges have absolute immunity from suit for acts performed in their judicial capacities." Cruz v. N.Y., No. 5:17-CV-00510 (BKS/TWD), 2017 WL 6021838, at *18 (N.D. N.Y. Oct. 27, 2017) (citing Bradley v. Fisher, 80 U.S. 335 (1871); Mireles v. Waco, 502 U.S. 9, 11(1991)), report and recommendation adopted, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017). "Immunity from suit is overcome in only two narrow circumstances. [ ] [A] judge is not immune from liability for ... actions not taken in a judge's judicial capacity ... [and] for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. (citations and quotation marks omitted). "The Supreme Court has 'generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in

nature.' " Id. (quoting Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009)). "Judges enjoy absolute immunity even when a plaintiff offers allegations of 'bad faith or malice.' " Id. (quoting Mireles, 502 U.S. at 11). "Whether an act by a judge is a 'judicial one' relates to the 'nature of the act itself'— whether it is a function that is necessarily performed by a judge." Amato v. McGinty, No. 1:17-CV-593 (MAD/ATB), 2017 WL 9487185, at *3 (N.D.N.Y. June 6, 2017) (quoting Mireles, 02 U.S. at 12), report and recommendation adopted, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017). "The parties must have dealt with the judge in his or her 'judicial capacity.' " Id. (citation omitted).

Plaintiff contends that defendant was acting outside of his judicial capacity, and instead as "a witness" when he changed a custody order. Am. Compl. at 17. Although plaintiff asserts that defendant altered the custody agreement "on his own accord" and "without explanation[,]" custody orders are a judicial function of a family court judge. Id.; see Amato, 2017 WL 9487185, at *3 ("[A]ll of Judge McGinty's alleged 'biased' or 'illegal' conduct was taken in connection with his position as a Family Court judge presiding over plaintiff Amato's custody case. Whether the judge's conduct involved issuing orders based on 'funding,' allegedly biased decisions in favor of defendant [ ], or making decisions that were not in the best interest of [the child], these were all actions taken in the course of a custody proceeding in his capacity as a Family Court Judge. Thus, Judge McGinty is entitled to judicial immunity."); Walker v. Fam. Ct. Judge Catherine Cholakis, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at *7 (N.D.N.Y. June 29, 2020) (citation quotation marks omitted) (determining that the defendant was entitled to judicial immunity despite allegations of the defendant "lack[ing] judicial competence and exhibit[ing] personal animus and bias" towards the plaintiff).

*5  As defendant was acting in his judicial capacity as a family court judge when he changed the custody order, he is entitled to judicial immunity as to plaintiff's purported § 1985 claim against him in his individual capacity to the extent plaintiff seeks punitive damages. [7] See Cruz, 2017 WL 6021838, at *18 ("Because the allegations in [the p]laintiff's complaint indicate that his claims against [various defendants] were all related to the support, visitation, and/or custody proceedings between [the p]laintiff and [his wife], the Court finds that they are all entitled to judicial immunity and recommends dismissal of [the p]laintiff's complaint against them with prejudice on judicial immunity grounds."); Bliven v. Hunt, 418 F. Supp. 2d 135, 137 (E.D.N.Y. 2005) ("Judges

Case 1:24-cv-00376-BKS-TWD   Document 4   Filed 05/10/24   Page 18 of 105

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

are absolutely immune from liability for judicial acts, however erroneous the act and however evil the motive."); Kampfer v. Scullin, 989 F. Supp. 194, 202 (N.D.N.Y. 1997) ("[T]he doctrine of absolute judicial immunity bars suits for monetary damages, including compensatory and punitive damage suits."). Additionally, defendant is immune from suit under the Eleventh Amendment to the extent plaintiff seeks to sue him in his "judicial" or official capacity for damages. See Washington v. Ciccone, No. 3:21-CV-0564 (MAD/ML), 2021 WL 2935950, at *4 (N.D.N.Y. July 13, 2021) ("While judicial immunity shields judges from suit to the extent they are sued in their individual capacities, the Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities."), report and recommendation adopted, 2021 WL 4859663 (N.D.N.Y. Oct. 19, 2021); Hines v. City of Albany, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008)("Claims against a government employee in his official capacity are treated as a claim against the municipality[.]").

7   Plaintiff states that see seeks "zero monetary damages, punitive damages[.]" Am. Compl. at 1. It is unclear whether the "zero" extends to punitive damages. Id.

"Although the doctrine of judicial immunity provides that a judge is not liable for damages for acts performed in the exercise of her judicial function, judicial immunity does not bar actions seeking prospective injunctive relief against judicial officers. Nor does judicial immunity bar actions seeking declaratory relief." Estes-El v. Town of Indian Lake, 954 F. Supp. 527, 534 (N.D.N.Y. 1997) (citations omitted). Further, "the Eleventh Amendment does not bar a suit against a state official when that suit seeks ... prospective injunctive relief." Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. State, 336 F. Supp. 3d 50, 65 (E.D.N.Y. 2018) (citations and quotation marks omitted). However, "[w]hen 'only past acts are involved,' declaratory relief is unavailable." Guan v. Mayorkas, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021) (citations omitted). Plaintiff's allegations concern only past acts; therefore, she is not entitled to declaratory relief. See, e.g., Amato v. McGinty, No. 1:21-CV-00860 (GLS/ TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022). Moreover, whether plaintiff seeks the Court's involvement in past custody orders or ongoing custody proceedings, both requests are likely barred by the Younger and Rooker-Feldman doctrines. See Younger v. Harris, 401 U.S. 37 (1971); Rooker v. Fidelity Trust Co., 263 U.S. 413; District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

"[T]he Supreme Court has established that plaintiffs can properly bring a federal action 'seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.' " Torres v. New York State Dep't of Corr. & Cmty. Supervision, No. 9:20-CV-301 (GLS/TWD), 2020 WL 7316120, at *3 (N.D.N.Y. Dec. 11, 2020) (citations omitted); see Ex Parte Young, 209 U.S. 123 (1908). "Under this doctrine, an action may proceed against a state official when a plaintiff: '(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective.' " Id. (quoting In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007)). However, under the Younger abstention doctrine, "federal courts are forbidden from enjoining ongoing state proceedings." McKnight v. Middleton, 699 F. Supp. 2d 507, 520 (E.D.N.Y. 2010), aff'd, 434 F. App'x 32 (2d Cir. 2011) (summary order) (citation omitted). "The Younger abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil enforcement, or 'quasi-criminal,' proceedings; and (3) 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.' " Walker, 2022 WL 2341544, at *6 (quoting Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013)). "Younger abstention is mandatory when three conditions are met: '(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims.' " McKnight, 699 F. Supp. 2d at 520.

*6  It is unclear whether there are pending family court proceedings in which plaintiff seeks the Court's intervention. See generally Am. Compl. [8] However, "the heart of this case is a child custody dispute, a matter rightfully reserved for state courts." McKnight, 699 F. Supp. 2d at 520; see Walker, 2022 WL 2341544, at *6 (collecting cases applying Younger abstention in the context of child custody disputes). Additionally, "[p]laintiff would [likely] have 'an adequate opportunity for judicial review of the federal [ ] claims' in state court." McKnight, 699 F. Supp. 2d at 520-21 (quoting McGowan, 282 F.3d at 198). "For example, after the Family Court makes its final disposition on custody and visitation, [the p]laintiff may appeal that decision to the Appellate Division and raise the unconstitutionality of the N.Y. Dom. Rel. Law and the orders of the Family Court ... in that court." Id. Thus, it is likely that plaintiff's request for injunctive or declaratory relief are barred insofar as there are pending custody proceedings.

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 19 of 105

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

8    Plaintiff attaches to her amended complaint protective orders against the children's father from December 2015 and March and October 2019, a visitation order from April 2019, and a family offense petition from October 2019. See Am. Compl. at 5-7, 9-12. In her original complaint, plaintiff specifically requested "injunctive relief and a permanent restraining order against [defendant] to stop his abuse and to avoid any further harm." Compl. at 6. She also sought declaratory relief in the form of statements that (1) "the policies, practices, procedures and standards [of d]efendant apply to her contested lawsuit proceedings, contested motion hearings and trail to issued Custody and related Orders are 'program activities'[; (2)] Custody Order are 'services' as defined by ADA which ADA equal rights, opportunities and benefits, direct threat risk prevention modification rights and accommodation rights apply to[; and (3)] declar[e d]efendant[']s [ ] practices ... a[s] unconstitutional." Id. at 5. The undersigned previously noted that any relief concerning past custody orders and any intervention into ongoing family court proceedings are likely barred by the Younger and Rooker-Feldman doctrines. See Dkt. No. 6 at 16, n.7. Plaintiff does not state in her amended complaint the precise declaratory or injunctive relief she seeks. See generally Am. Compl.

Next, any claim asking the Court to provide a declaratory judgment on a prior custody order is barred by the Rooker-Feldman doctrine. "The *Rooker-Feldman doctrine* bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." Dorce v. City of N.Y., 2 F.4th 82, 101 (2d Cir. 2021). For the Rooker-Feldman doctrine to apply: "(1) the federal-court plaintiff must have lost in state court[;] (2) the plaintiff must complain of injuries caused by a state-court judgment[;] (3) the plaintiff must invite district court review and rejection of that judgment[;] and (4) the state-court judgment must have been rendered before the district court proceedings commenced." Id. (citation and quotation marks omitted).

It appears that plaintiff is challenging Judge McGinty's December 2019 custody order granting the children's father custody. See Am. Compl. at 17. Intervention into that custody order is barred by the Rooker-Feldman doctrine. See Phifer v. City of N.Y., 289 F.3d 49, 57 (2d Cir. 2002) ("There

is no question that *Rooker-Feldman* bars [the plaintiff's] challenges to the family court's decisions regarding custody, neglect, and visitation."); Amato, 2022 WL 226798, at *11 (citation omitted) ("[I]t appears [the p]laintiff 'lost' in state court, complains of injuries caused by the state court judgments, and asks this Court to invalidate the state court's judgments regarding child custody. Thus, as currently drafted, the amended complaint is likely barred under the *Rooker-Feldman* doctrine.").

**\*7** Plaintiff also fails to state a claim for relief under § 1985. To plead a conspiracy claim, "a plaintiff must allege: (1) a conspiracy"; "(2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges or immunities under the laws;" "(3) an overt act in furtherance of the conspiracy;" "and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). In her amended complaint, plaintiff states that "this case involves a multifaceted campaign to silence, harass, and discredit [p]laintiff for exercising her freedoms and rights afforded and protected by United States Law." Am. Compl. at 2. Plaintiff has only named one defendant and she does not otherwise allege any facts that would support a conspiracy claim. See generally Am. Compl.; see also Thomas, 165 F.3d at 146 (citations omitted) (explaining that "[a] conspiracy 'need not be shown by proof of an explicit agreement but can be established by showing the parties have a tacit understanding to carry out the prohibited conduct.' "); see also Walker, 2022 WL 2341544, at *5 (citation and quotation marks omitted) ("[T]he conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."). Accordingly, it is recommended that plaintiff's purported § 1985 claim seeking injunctive and declaratory relief against defendant in his individual and official capacities be dismissed without prejudice, but be dismissed with prejudice and without leave to amend to the extent she seeks punitive damages.

### 3. ADA Claims

Plaintiff's amended complaint raises three ADA claims: Title II discrimination and retaliation claims and a Title III discrimination claim. See generally Am. Compl. (citing, inter alia, 42 U.S.C. §§ 12182 and 12203, and "Title II claim of American Disabilities Act"). First, "Title III of the ADA proscribes discrimination against the disabled in

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 20 of 105

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

public accommodations[,]" stating that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns ... or operates a place of public accommodation." Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 85 (2d Cir.), opinion corrected, 511 F.3d 238 (2d Cir. 2004) (quoting 42 U.S.C. § 12182(a)); see Benyi v. N.Y., No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *14 (N.D.N.Y. Mar. 23, 2021) ("Title III 'expressly does not apply to public entities, including local governments.' "), report and recommendation adopted, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citations omitted). As plaintiff brings this action against Judge McGinty, whose position is not a "public accommodation[,]" she cannot state a claim under Title III of the ADA, and it is recommended that any purported claim be dismissed with prejudice and without leave to amend. 42 U.S.C. § 12181(7).

Second, as to her Title II claims, the undersigned previously explained in its April 28, 2022, Report-Recommendation and Order, that defendant cannot be sued in his individual capacity under the ADA. See Dkt. No. 6 at 10-11. Judge Suddaby subsequently adopted the Report-Recommendation and Order and dismissed with prejudice the ADA claims against defendant in his individual capacity. See Dkt. No. 8 at 3. As such, the only purported ADA claims that the undersigned now addresses are those seeking to sue defendant in his "judicial" or official capacity. See Rosenfield v. N.Y. State Div. of Veterans' Affs., No. 1:18-CV-1299 (GTS/CFH), 2019 WL 4621962, at *10 (N.D.N.Y. Sept. 24, 2019) (collecting cases) ("It is well recognized in this Circuit that individuals cannot be sued in their personal capacity under either the ADA or the Rehabilitation Act.").

Generally, "suits for money damages against state officials in their official capacities are barred by the Eleventh Amendment." Torres, 2020 WL 7316120, at *3. It does not appear that plaintiff seeks money damages in her amended complaint as she states that she is seeking "zero money damages, punitive damages...." Am. Compl. at 1. It is not clear whether plaintiff intended the "zero" to extend to punitive damages; regardless, punitive damages are not an available remedy for an ADA discrimination claim. See Cosby v. Tawanna, No. 3:19-CV-401 (MPS), 2019 WL 1921709, at *5 (D. Conn. Apr. 30, 2019) (citing Barnes v. Gorman, 536 U.S. 181, 189, (2002) ("Because punitive damages may not be awarded in private suits under Title VI of the 1964 Civil Rights Act, it follows that they

may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act.")) (explaining that "[p]unitive damages are not available in private suits under the ADA or the [Rehabilitation Act]."); see also Askins v. N.Y.C. Transit, No. 11-CV-6371 (PGG), 2013 WL 142007, at *6 (S.D.N.Y. Jan. 8, 2013) (same). [9] Declaratory relief under the ADA is also unavailable. See Torres, 2020 WL 7316120, at *4; see also T.W. v. N.Y. State Board of Law Examiners, 16-CV-3029 (RJD/MMH), 2022 WL 2819092, at *8 (E.D.N.Y. July 19, 2022) ("The declaratory relief T.W. seeks — a declaration that the individual Board member defendants violated Title II — is plainly foreclosed by the Ex parte Young doctrine."). However, "prospective injunctive relief [ ] may be asserted against [ ] individual defendants [ ] in their official capacities[ ]" under Title II of the ADA. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). [10]

[9]      If plaintiff were to seek monetary damages, the undersigned incorporates by reference its discussion in its April 28, 2022, Report-Recommendation and Order concerning Congress' abrogation of Eleventh Amendment immunity concerning money damages. See Dkt. No. 6 at 14, n.6; see also Colliton v. D'Alessio, No. 22-CV-7200 (LTS), 2022 WL 4110191, at *3, n.2 (S.D.N.Y. Sept. 6, 2022) (citations omitted) (declining to address whether Congress abrogated sovereign immunity for Title II claims that "actually violate[ ] the Fourteenth Amendment" because the plaintiff "fail[ed] to state a claim under Title II of the ADA).

[10]     The undersigned notes, however, that the Younger doctrine cautions against interfering with ongoing family court matters. See supra at 11-14; see also Amato, 2022 WL 226798, at *11.

**\*8** Whether punitive damages are available for an ADA retaliation claim is not as straightforward as the Second Circuit has not explicitly addressed the issue. See Edwards v. Brookhaven Sci. Assocs., LLC, 390 F. Supp. 2d 225, 234 (E.D.N.Y. 2005) (citations omitted) (explaining that "the Second Circuit, without analyzing the issue, has affirmed an award of compensatory damages in a retaliation case brought under the ADA[ ]"; "employees who prevail on a claim under Title I of the ADA may recover compensatory and punitive damages and demand and receive a trial by jury[ ]" and the remedies available for retaliation under the ADA are commensurate with those available under Title

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 21 of 105

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

I[.]"). At this juncture, the undersigned need not determine whether plaintiff could recover punitive damages for an ADA retaliation claim because, as explained infra, plaintiff has not sufficiently stated a claim for relief.


**a. Discrimination**

To support an ADA discrimination claim, "a plaintiff must show the following: (1) plaintiff is a qualified individual with a disability; (2) plaintiff was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by [the] public entity; and (3) such exclusion or discrimination was due to [plaintiff's] disability." B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 158 (2d Cir. 2016) (citation and quotation marks omitted). "Although the scope of Title II is not limitless, the phrase services, programs, or activities has been interpreted to be a catch-all phrase that prohibits all discrimination by a public entity." Hulett v. City of Syracuse, 253 F. Supp. 3d 462, 484 (N.D.N.Y. 2017) (quoting, inter alia, Noel v. N.Y.C. Taxi & Limousine Comm'n, 687 F.3d 63, 68 (2d Cir. 2012)) (quotation marks and internal citation omitted). [11]

> [11] The undersigned incorporates by reference its previous discussion concerning whether defendant is a "public entity"—an analysis that the undersigned need not perform as plaintiff has not alleged sufficient facts to surpass the threshold "disability" inquiry. See Dkt. No. 6 at 12, n.5; 14-15, n.6.

As with her original complaint, here too, plaintiff's claim fails because she has not plausibly alleged a "disability." Dkt. No. 6 at 13-15. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[ ]." 42 U.S.C. § 12101(1).


**i. Whether plaintiff has, or has a record of, a physical or mental impairment that substantially limits one or more major life activities**

"[A] plaintiff who seeks to show that he [or she] is disabled within the meaning of the ADA must do more than 'merely submit evidence of a medical diagnosis of an impairment.' " Sussle v. Sirina Prot. Sys. Corp., 269 F. Supp. 2d 285, 305 (S.D.N.Y. 2003) (quoting Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S 184, 198 (2002), overturned on other grounds by ADA Amendments Act of 2008, Pub. L 110-325, 122 Stat. 3553 (Jan. 1, 2009)). "A diagnosis alone is insufficient to establish disability under the statute." Ibela v. Allied Universal, No. 21-1995-CV, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022) (citing Toyota Motor Mfg., 534 U.S at 198). Additionally, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working[ ]"; as well as "major bodily functions" such as "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions' within the definition of 'major life activities.' " 42 U.S.C. § 12102(2) (A),(B).

**\*9** The Second Circuit has clarified that "the substantial-limitation requirement in the definition of 'disability' is not an exacting one." Hamilton v. Westchester Cnty., 3 F.4th 86, 92 (2d Cir. 2021). The substantial-limitation inquiry "usually will not require scientific, medical, or statistical analysis," and is "made without regard to the ameliorative effects of mitigating measures[.]" 29 C.F.R. § 1630.2(j)(1)(v), (vi); see also 42 U.S.C. 12102(4)(E). Additionally, "a plaintiff's actual disability claim under the ADA does not fail solely because he [or she] failed to "state that his [or her disability] will be permanent or chronic ... [or] indicate the duration or long-term impact of his [or her] impairment such that the Court may infer that his [or her] injury was not temporary." Id. at 93-94 (citation and quotation marks omitted) (alterations in original). However, "[w]hile an impairment lasting less than six months *can* constitute a disability since the 2008 amendments, it obviously does not follow that such an impairment *will* constitute a disability." Id. (citation omitted); see 28 C.F.R. § 35.108(d)(1)(i).

Plaintiff does not explicitly state what her "disability" is but asserts that she had a stroke and was hospitalized, and that defendant did not believe her hospitalization and "her health and safety" were reason enough to adjourn the custody proceeding. [12] Am. Compl. at 13-17. Plaintiff has not alleged any facts explaining how her stroke or hospitalization substantially limited one or more of her major life activities. See generally Am. Compl. In the hospital record documenting plaintiff's stroke, it was noted that an "[e]chocardiogram was found to have global hypokinesis with ejection fraction of

Case 1:24-cv-00376-BKS-TWD   Document 4   Filed 05/10/24   Page 22 of 105

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)
2022 WL 17418268

40-45%." Id. at 15. The hospital record also notes that plaintiff was diabetic and had low iron form uterine bleeding. See Am. Compl. at 15. However, plaintiff does not allege that either of these conditions caused her hospitalization or are a "disability." See generally Am. Compl.

> 12    As explained in the undersigned's April 28, 2022, Report-Recommendation and Order, in her original complaint, plaintiff alleged that because of defendant's actions, she developed post-traumatic stress disorder ("PTSD"). See Dkt. No. 6 at 14-15; see also Compl. at 14. Plaintiff does not reallege any facts related to PTSD in her amended complaint. See generally Am. Compl.

Although plaintiff provided documentation to corroborate that she was in the hospital following a stroke, there is no indication of how it limited her activities. See id. at 15-16. This is insufficient to establish a "disability." See Ouderkirk, 2021 WL 4958845, at *5 (determining that the plaintiff's complaint "failed to allege facts plausibly suggesting that [the p]laintiff is disabled within the meaning of the ADA" where the plaintiff alleged that the defendant "took [the p]laintiff's arm brace that she 'wore for a disability and subjected her to several weeks of physical pain.' "); but see Bernheim v. N.Y.C. Dep't of Educ., No. 19-CV-9723 (VEC/JLC), 2021 WL 2619706, at *8 (S.D.N.Y. June 25, 2021) (concluding that the plaintiff "sufficiently alleged a disability under the ADA by pleading" "that her severe [irritable bowel syndrome ("IBS")] has substantially limited her ability to work. Specifically, she alleges that due to her severe IBS, she has had to 'take a number of absences on an intermittent basis' and also points to a 'six month medical sabbatical' she took for her condition.... [The plaintiff] has thus sufficiently alleged a disability under the ADA by pleading that the irregularity of her bowel functions, due to her 'severe' IBS, limited her ability to attend her teaching job on an intermittent to long term basis."), report and recommendation adopted, 2021 WL 4198126 (S.D.N.Y. Sept. 15, 2021); Blair v. SUNY Univ. at Buffalo, No. 17-CV-1317S, 2020 WL 695870, at *6 (W.D.N.Y. Feb. 11, 2020) (explaining that the plaintiff's complaint referring "to a need for 'frequent visits to the bathroom' to manage his Crohn's disease[ ]" and "his allegation of 'low blood volume' " is sufficient to establish a disability).

**\*10** It is generally known that that a stroke impacts numerous functions including, for example, walking, memory, emotion regulation, and talking. [13] Plaintiff's

echocardiogram also indicated that she had an "ejection fraction[.]" Am. Compl. at 15. If an ejection fraction is between forty to fifty-five percent, that is "[b]elow normal heart function. Can indicate previous heart damage from heart attack or cardiomyopathy." [14] This result appears to indicate that plaintiff's circulatory system was not functioning perfectly. See 42 U.S.C. § 12102 (including "the operation of a major bodily function" such as "circulatory" in the definition of "a major life activity"). However, neither the hospital reports, nor plaintiff's amended complaint indicate how plaintiff's impairments substantially limited her in one or more major life activity and it was only through the undersigned's independent research that it learned of the symptoms from a stroke and an ejection fraction may be experienced by the general public. See generally Am. Compl.; see O'Connor v. N.Y. State Dep't of Fin. Servs., No. 1:21-CV-00828 (BKS/ATB), 2022 WL 3998099, at *3 (N.D.N.Y. Sept. 1, 2022) (The "[p]laintiff fails to identify any activity that her depression or PTSD impairs. But even assuming [the p]laintiff sufficiently alleged the first two steps with respect to hearing loss, depression, and PTSD, the Amended Complaint is devoid of factual details that would allow an inference that these impairments 'substantially limit' any major life activity."); Owens v. Longo, No. 06-CV-0281 (GLS/DRH), 2008 WL 84594, at *6 (N.D.N.Y. Jan. 7, 2008) ("[A] plaintiff will not automatically be found disabled upon presentation of records of a medical appointment or surgery regarding an impairment."), aff'd, 326 F. App'x 626 (2d Cir. 2009) (summary order); Horwitz v. L. & J.G. Stickley, Inc., 20 F. App'x 76, 80 (2d Cir. 2001) (summary order) ("Because past hospitalization, even coupled with continued treatment, does not create a record of a substantially limiting medical condition, the plaintiff was not protected by the ADA.").

> 13    Stedmans Medical Dictionary 397760 (Nov. 2014); Mayo Clinic, Stroke, https://www.mayoclinic.org/diseases-conditions/stroke/symptoms-causes/syc-20350113 (last visited September 26, 2022).

> 14    Ejection Fraction: What the Numbers Mean, Penn Heart and Vascular Blog, (April 13, 2022), https://www.pennmedicine.org/updates/blogs/heart-and-vascular-blog/2022/april/ejection-fraction-what-the-numbers-mean.

Although the standards to be applied are liberal for pro se plaintiffs and the definition of "disability" is to be construed broadly, plaintiff has failed to allege any facts concerning how any impairment limits her major life activities other than her being in a generally "weakened[,]" "[s]ick," and

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 23 of 105

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

"crushed" state. Am. Compl. at 17. This is insufficient to plead a qualifying disability under the ADA. See O'Connor, 2022 WL 3998099, at *3 (citations omitted) ("While courts broadly apply the term 'substantially limits,' a '[p]laintiff still must plead sufficient facts to raise a right to relief above a speculative level.' ").

### ii. Whether plaintiff was "regarded as" having an impairment that substantially limits one or more major life activities

A "disability" can be established if an individual is "regarded as having" an impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(C). An individual can be "regarded as having such an impairment" "if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Id. § 12102(3)(A). A "plaintiff need only establish that [the] defendant regarded him [or her] as having a mental or physical impairment and is 'not required to present evidence of how or to what degree [defendant] believed the impairment affected him [or her].' " Rodriguez v. Verizon Telecom, No. 13-CV-6969 (PKC/DCF), 2014 WL 6807834, at *5 (S.D.N.Y. Dec. 3, 2014) (quoting Hilton v. Wright, 928 F. Supp. 2d 530, 554 (N.D.N.Y. 2013)). However, "[a]n individual is not 'regarded as having [a disability]' if the public entity demonstrates that the impairment is, objectively, both 'transitory' and 'minor,' with 'transitory' statutorily defined as 'lasting or expected to last six months or less.' " Hamilton v. Westchester Cnty., 3 F.4th 86, 94 (2d Cir. 2021) (quoting 28 C.F.R. § 35.108(f)(2)); see also 42 U.S.C. § 12102(3)(B).

Plaintiff asserts that she "made a reasonable request to adjourn the court date and necessary for the provisions of her health and safety[.]" Am. Compl. at 16-17. The hospital record similarly states that "because Family Court judge did not consider her hospitalized status as justification to delay deciding on custody for her minor children, ... discharge was attested in order for patient to appear in family court." Id. at 15. There is no indication of what defendant was told or believed concerning plaintiff's "hospitalization[,]" such as whether or what physical or mental impairment plaintiff had or how long it would last.[15] Id. Whether a plaintiff is "regarded" as having a disability is "a question of intent[.]" Francis v. City of Meriden, 129 F.3d

281, 284 (2d Cir. 1997). Plaintiff has not alleged what defendant believed or perceived concerning an impairment. See generally Am. Compl. For instance, there is no indication if defendant believed the veracity of plaintiff's statement that she was in the hospital, or that she was suffering from any mental or physical impairment. See Sacks v. Gandhi Eng'g Inc., No. 11-CV-5778 (DAB/DF), 2013 WL 8282955, at *13 (S.D.N.Y. Aug. 23, 2013) (citing 29 C.F.R. § 1630.2(h)(1) ("Physical or mental impairment" to mean "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine.")) (concluding that there was sufficient evidence to withstand summary judgment where the defendant told the plaintiff he was fired because of "his lack of 'agility' "), report and recommendation adopted, 999 F. Supp. 2d 629, 636 (S.D.N.Y. 2014); see also Laface v. E. Suffolk Boces, 349 F. Supp. 3d 126, 147 (E.D.N.Y. 2018) (citation omitted) ("While the [p]laintiff has alleged that he informed the [d]efendants of his disability, he has not alleged that his employer, BOCES, regarded him as disabled under the ADA. In fact, even when BOCES agreed to temporarily accommodate his disability, [a defendant] specifically noted that 'it is not clear we are obligated to provide you with an accommodation.' ").

15    In plaintiff's original complaint, she specified that her family court attorney told defendant that plaintiff had a stroke. See Compl. at 6. However, even if plaintiff had repleaded this specific information, plaintiff has not sufficiently alleged what defendant's belief was concerning any impairment. See generally Am. Compl. Plaintiff is reminded that amended pleadings are intended to completely replace prior complaints and she must include all of the allegations, without reference to a prior complaint, that she seeks to base her claims on.

*11    Accordingly, plaintiff has not shown that she was "regarded as" having a disability within the meaning of the ADA. Cf. Gentile v. Potter, 509 F. Supp. 2d 221, 238 (E.D.N.Y. 2007) (citation omitted) ("Mere knowledge is insufficient to prove 'either that the employer regarded the employee as disabled or that the perception caused the adverse employment action.' "). As plaintiff has not sufficiently plead a "disability" or that defendant "regarded" her as having a disability, the undersigned recommends dismissing plaintiff's

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 24 of 105

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

ADA discrimination claims against defendant in his official capacity without prejudice.

As to the undersigned's April 28, 2022, Report-Recommendation and Order discussion concerning the sufficiency of the original complaint and whether plaintiff was denied access to services "because of" a disability, the undersigned clarifies that it does not appear that plaintiff is making an intentional discrimination claim. Dkt. No. 6 at 13-15. Rather, plaintiff is making a reasonable accommodation claim. See Am. Compl. at 2, 16-17. To plead such a claim, plaintiff is not "required [to] pro[ve] that the defendants' actions were motivated by animus towards the [disabled]." Amato v. McGinty, No. 1:17-CV-1280 (GLS/TWD), 2019 WL 8064011, at *3 (N.D.N.Y. Aug. 7, 2019) (quoting Good Shepherd Manor Found., Inc. v. City of Momence, 323 F.3d 557, 562 (7th Cir. 2003)). Rather, plaintiff "must [ ] 'demonstrate that a denial of benefits occur[ed] ... because of [her] disability.' " Id. (citing Henrietta D. v. Bloomberg, 331 F.3d 261, 278 (2d Cir. 2003)) (internal quotation marks and citations omitted). "Quite simply, the demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation." Henrietta, at 277. However, as plaintiff has not sufficiently alleged a disability, the undersigned need not determine whether plaintiff sufficiently alleged that a disability caused her difficulty accessing any "benefits[ ]" that would amount to a denial of a "reasonable accommodation." Id. at 282 (citation omitted) ("A 'reasonable accommodation' is one that gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought.").

### b. Retaliation

To plead a claim for retaliation under the ADA, there must be facts alleging that: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the] plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 148 (2d Cir. 2002) (citations omitted). "Requesting reasonable accommodations for a disability may also constitute protected activity." Konieczny v. N.Y. State Div. of Parole, 647 F. Supp. 2d 256, 264 (W.D.N.Y. 2009) (citation omitted). "Generally, any activity designed

to resist or antagonize ...; to contend against; to confront; resist; [or] withstand discrimination prohibited by Title VII constitutes a protected oppositional activity." Straw v. Wolters Kluwer United States, Inc., No. 20-CV-3251 (LLS), 2020 WL 2115177, at *4 (S.D.N.Y. May 1, 2020), appeal dismissed (July 2, 2020) (quotation marks omitted) (quoting Littlejohn v. City of N.Y., 795 F.3d 297, 317 (2d Cir. 2015)). "[A] plaintiff pursuing a retaliation claim need not prove that he or she was actually 'disabled' within the meaning of the ADA." Frantti v. N.Y., 414 F. Supp. 3d 257, 290 (N.D.N.Y. 2019) (citation omitted).

**\*12** Plaintiff's initial reference to a retaliation claim is in her recitation of various statutes, in which she includes the ADA's retaliation provision, 42 U.S.C. § 12203. See Am. Compl. at 1. Plaintiff then states that defendant's "willfully brazen behavior can no longer threaten my family and/ or retaliate against potential witnesses, and profit off of someone else's loss." Id. at 2. Plaintiff explains that defendant "harassed, intimidated, and threatened [plaintiff's sister] with incarceration if she interfered with watching [plaintiff's] children." Id. at 17. Although is it possible for a retaliation claim to be based on action taken towards a thirty-party, plaintiff does not allege that defendant acted in such a way towards plaintiff's sister because of an exercise of protected activity. But see Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 174-75 (2011) (explaining that in the context of a Title VII claim, retaliation against a third party may constitute an adverse action if it would have dissuaded the plaintiff from engaging in his or her protected activity); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases."). It is also not clear whether plaintiff contends that defendant took actions against her sister because of her request to adjourn the proceedings, because plaintiff was in the hospital, or for some other non-disability related reason. See Am. Compl. at 17.

Plaintiff does not otherwise allege facts concerning retaliation against her for engaging in protected activity. See generally Am. Compl. Plaintiff does not assert, for example, that any adverse action was taken against her because she "made a reasonable request to adjourn the court date[.]" Id. at 16. Rather, plaintiff states that defendant denied her request "with blatant disrespect for the well being of [p]laintiff" and he subsequently granted her children's father custody, "without explanation[.]" Id. at 17; but see Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015) ("A retaliatory purpose can be shown indirectly by timing: protected activity

2022 WL 17418268

followed closely in time by adverse [ ] action."). Plaintiff also states that defendant's conduct was the result of "cultural and class bias" and was an "outrageous unauthorized social experiment[ ]" which does not implicate retaliation against protected activity under the ADA. Am. Compl. at 3.

Although plaintiff's pro se complaint is to be read liberally and to raise the strongest arguments it suggests, it is not the function of initial review to read any claims into the complaint. See Triestman, 470 F.3d at 477 (citations and quotation marks omitted) ("There are many cases in which we have said that a pro se litigant is entitled to 'special solicitude,' that a pro se litigant's submissions must be construed 'liberally,' and that such submissions must be read to raise the strongest arguments they 'suggest[.]' At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not 'consistent' with the pro se litigant's allegations, or arguments that the submissions themselves do not 'suggest[.]' ").

As plaintiff has not elaborated on any purported retaliation claim beyond listing the statute as one of many under which she seeks to bring this action, and using the word "retaliation," the undersigned recommends dismissing it without prejudice. See Amato v. McGinty, No. 1:21-CV-00860 (GLS/TWD), 2022 WL 226798, at *9 (N.D.N.Y. Jan. 26, 2022) (citing Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1986) (the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning")) (explaining that "[t]he use of 'buzz words' such as 'disability,' 'accommodation,' and 'retaliation' does not cure a pleading defect.... She does not allege any facts suggesting a plausible connection between her alleged PTSD and '[Legal Abuse Syndrome]' and the actions that were taken against her in the state court proceedings.").

### 4. "Tortious Interference with Parental Rights Under the Common Law"

Plaintiff purports to assert a claim of "tortious interference with parental rights under the common law[.]" Am. Compl. at 1. The Eastern District of New York has explained that "[w]ith respect to 'parental' rights, [the] plaintiffs have not cited, nor has this Court identified, any cause of action related to such rights. Most cases involve the more specific right of custody...." Decter v. Second Nature Therapeutic

Program, LLC, 42 F. Supp. 3d 450, 457 (E.D.N.Y. 2014). "[T]he existence and contours of a tort cause of action for interference with parental custody under New York law are far from clear." Pittman by Pittman v. Grayson, 149 F.3d 111, 120 (2d Cir. 1998). However, "[t]he 'unlawful taking or withholding of a minor child from the custody of the parent entitled to such custody is a tort.' " Whalen v. Cnty. of Fulton, 941 F. Supp. 290, 299 (N.D.N.Y. 1996) (quoting Kajtazi v. Kajtazi, 488 F. Supp. 15, 18 (E.D.N.Y. 1978)), aff'd, 126 F.3d 400 (2d Cir. 1997). "The plaintiff must have a legal right to custody in order to possess a cause of action for custodial interference." Id. (citation omitted).

**\*13** "[T]he State of New York has not waived its Eleventh Amendment immunity to suit in federal court for state common law [torts]." Hayut v. State Univ. of N.Y., 127 F. Supp. 2d 333, 340 (N.D.N.Y. 2000); cf. Lambert v. N.Y. State Office of Mental Health, No. 97-CV-1347 (JG), 2000 WL 574193, at *7 (E.D.N.Y. Apr. 24, 2000) ("Likewise, the Eleventh Amendment bars [the plaintiff]'s common law tort claim for intentional infliction of emotional distress."), aff'd, 22 F. App'x 71 (2d Cir. 2001) (summary order). Judicial immunity has also been applied to common law torts. See, e.g., Holbert v. Cohen-Gallet, No. 05-CV-1281 (NGG), 2006 WL 47452, at *6 (E.D.N.Y. Jan. 9, 2006) ("Because the doctrine of judicial immunity rests on the need for uninhibited judicial decision-making, immunity extends to the exercise of judicial power by any judicial officer.... Presiding over the [the p]laintiff's custody modification proceeding was without question a judicial act and [the defendant], as a Family Court Referee, had jurisdiction to do so. Thus, [the defendant's] actions in the courtroom ... cannot be grounds for tort liability against her."). As such, defendant is immune in both his individual and "judicial" capacities.

Further, "a district court 'cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction.' " Cohen v. Postal Holdings, LLC, 873 F.3d 394, 399 (2d Cir. 2017) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996)). As the undersigned recommends denying plaintiff's federal claims, the undersigned also recommends declining to exercise supplemental jurisdiction over any purported state law claim. See id. (citing Kolari v. N.Y. Presbyterian Hosp., 455 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has jurisdiction have been dismissed)). [16]

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 26 of 105

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

16    Plaintiff also includes a header titled "Defendant's Fraudulent Scheme to Hide and/or Tamper with Witness and/or Alter Court Records." Am. Compl. at 21. Plaintiff submitted a one-page letter from a court clerk at the Town of Rochester Justice Center which states, "We have no records pertaining to Docket No. 18070010." Id. at 22. Plaintiff also states that she has been unable to obtain transcripts from the relevant custody proceedings. See id. at 17. Plaintiff has not otherwise plead any facts that suggest that defendant has taken any actions to tamper with evidence, or hide or alter any records; thus, there are no facts on which the undersigned could find a plausible claim for relief. See London v. Cnty. of Ulster, No. 1:14-CV-01095 (MAD), 2015 WL 1579147, at *9 (N.D.N.Y. Apr. 9, 2015) ("While [the p]laintiff has scripted pages upon pages of accusations against these two [d]efendants, including claims of bias, coercion, and witness/evidence tampering, these accusations are a cavalcade of conclusions and not facts upon which this Court may find that a plausible claim has been pled here. Thus, we recommend dismissing these [d]efendants from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).").

### D. Amendment of the Complaint

"Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile." Griffin v. Doe, 71 F. Supp. 3d 306, 319-20 (N.D.N.Y. 2014) (citing Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)). "[A]n opportunity to amend is not required where the plaintiff has already amended the complaint." Tafari v. McCarthy, 714 F. Supp. 2d 317, 339 (N.D.N.Y. 2010) (citation omitted). In light of plaintiff's pro se status, it is recommended that she be afforded another opportunity to amend her complaint for the claims that defendant is not immune and where there is a cognizable cause of action. See Amato, 2022 WL 226798, at *12 ("[I]n light of [the p]laintiff's *pro se* status and in an abundance of caution, as was the case in the related action, better pleading—addressing the deficiencies outlined above—could potentially save [the p]laintiff's ADA claim for prospective injunctive relief against Judge McGinty from being *sua sponte* dismissed on initial review.").

### III. Appointment of Counsel

**\*14** In Judge Suddaby's June 13, 2022, Decision and Order, he addressed plaintiff's two motions to appoint counsel. See Dkt. Nos. 4, 7; Dkt. No. 8 at 2-3. Judge Suddaby denied plaintiff's request for counsel without prejudice because plaintiff had not substantiated her efforts to procure counsel, it was too soon to determine whether plaintiff's claims were of substance, and the other relevant factors weighed against granting the request. See Dkt. No. 8 at 2-3.

In her amended complaint, plaintiff states that "[a]lthough this Court noted that this Pro Se litigant is able to effectively litigate this action thus far, ... my disabilities put me in an inferior position and not on equal ground as a highly trained and skilled professional attorney"; therefore, she "specifically request[s] appointed counsel to ensure a just and proper opportunity to further present my claim...." Am. Compl. at 2.

"[T]he indigent [person must demonstrate that they are] unable to obtain counsel before appointment will even be considered." Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986). Plaintiff has not asserted any information indicative of an attempt to secure counsel. See generally Am. Compl. Additionally, "in deciding whether to appoint counsel ... the [court] should first determine whether the indigent's position seems likely to be of substance." Hodge, 802 F.3d at 61. If the claim is likely to be of substance, the Court must consider certain factors, including

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason ... why appointment of counsel would be more likely to lead to a just determination.

Id. "[A]ppointments of counsel are not to be granted 'indiscriminately.' " Edwards v. Troy Police Dept., No. 1:19-CV-543 (LEK/CFH), 2019 WL 13217234, at *1 (N.D.N.Y. Oct. 23, 2019) (quoting Cooper v. A. Sargente & Co., Inc., 877 F.2d 170, 172 (2d Cir. 1989)). "Although 28 U.S.C. § 1915(e)

Case 1:24-cv-00376-BKS-TWD   Document 4   Filed 05/10/24   Page 27 of 105

Terpening v. McGinty, Not Reported in Fed. Supp. (2022)

2022 WL 17418268

(1) authorizes the court 'to request an attorney to represent any person unable to afford counsel,' a civil litigant has no constitutional right to the assistance of counsel." Id. (quoting Berrios v. N.Y.C. Housing Auth., 564 F.3d 130, 135 (2d Cir. 2009)).

As Judge Suddaby stated in his Decision and Order, "because [d]efendant has not yet appeared and answered, the Court is unable to determine, as a threshold matter, whether [p]laintiff's claims are likely to be of substance." Dkt. No. 8 at 2-3 (citing Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1341 (2d Cir. 1994)). Next, "although plaintiff contends that h[er] mental illness/diagnoses make it difficult for h[er] to litigate this action, it appears that plaintiff has been able to represent h[erself] thus far by communicating with the Court and filing a detailed complaint in this action." Edwards, 2019 WL 13217234, at *2. Plaintiff was able to then review the undersigned's Report-Recommendation and Order, and Judge Suddaby's Decision and Order and produce an amended complaint attempting to address the faults identified in her original complaint. See Am. Compl. As such, it does not appear that, as to date, plaintiff has been unable to effectively litigate this action. Finally, "[a]ppointment of counsel in civil cases is a privilege which is justified only by exceptional circumstances, not a right accorded to any plaintiff who would be better equipped or would feel more comfortable with legal representation." Edwards, 2019 WL 13217234, at *2. "Lack of knowledge of the law does not suffice to demonstrate that appointment of counsel would increase the likelihood of a just determination in this case." Id. Accordingly, plaintiff's request for the appointment of counsel is denied without prejudice.

### IV. Conclusion

**\*15  WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that any purported claims under 18 U.S.C. §§ 241 and 242, 42 U.S.C. § 12301(3)(5)(7)(A)(B), 42 U.S.C. § 12182, and "tortious interference with parental rights under the common law" (Dkt. No. 9) be **DISMISSED WITHOUT PREJUDICE WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's purported (1) 42 U.S.C. § 1985 claim against defendant in his individual and official capacities seeking injunctive and declaratory relief; and (2) ADA claims against defendant in his official capacity seeking

injunctive relief (Dkt. No. 9) be **DISMISSED WITHOUT PREJUDICE WITH LEAVE TO AMEND**;[17] and it is further

[17]    Should the District Judge adopt this Report-Recommendation & Order, permitting plaintiff file a second amended complaint, plaintiff is advised that any second amended complaint will supersede and replace the amended complaint in its entirety. Plaintiff is not permitted to incorporate by reference any portion of earlier complaints and may not attempt to replead claims that have already been dismissed by this Court with prejudice.

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file a second amended complaint, and if plaintiff does not file a second amended complaint it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court; and it is further

**ORDERED**, that plaintiff's request for the appointment of counsel is **DENIED without prejudice**.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[18]

[18]    If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day

2022 WL 17418268

that is not a Saturday, Sunday, or legal holiday. <u>Id.</u>
§ 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17418268

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 29 of 105
Terpening v. McGinty, Not Reported in Fed. Supp. (2022)
2022 WL 17415121

2022 WL 17415121
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tammy TERPENING, Plaintiff,
v.
Anthony MCGINTY, in both judicial
and individual capacity, Defendant.

1:21-CV-1215 (GTS/CFH)
|
Signed December 5, 2022

**Attorneys and Law Firms**

TAMMY TERPENING, Plaintiff, Pro Se, 17 Blair Road, Apt.
6, Kerhonkson, New York 12446.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

 *1  Currently before the Court, in this *pro se* civil
rights action filed by Tammy Terpening ("Plaintiff") against
Anthony McGinty ("Defendant"), is United States Magistrate
Judge Christian F. Hummel's Report-Recommendation
recommending that certain of the claims asserted in Plaintiff's
Amended Complaint be dismissed with prejudice, and that the
remainder of those claims be dismissed without prejudice and
with leave to amend. (Dkt. No. 10.) Plaintiff has not filed an
objection to the Report-Recommendation, and the deadline in
which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant filings in this action, the
Court finds no error in the Report-Recommendation, clear or
otherwise.[1] Magistrate Judge Hummel employed the proper
standards, accurately recited the facts, and reasonably applied
the law to those facts. As a result, the Court accepts and adopts
the Report-Recommendation for the reasons stated therein.

[1]    When no objection is made to a report-
       recommendation, the Court subjects that report-
       recommendation to only a clear error review. Fed.
       R. Civ. P. 72(b), Advisory Committee Notes: 1983
       Addition. When performing such a "clear error"
       review, "the court need only satisfy itself that there
       is no clear error on the face of the record in order to

accept the recommendation." *Id.*; *see also Batista
v. Walker*, 94-CV-2826, 1995 WL 453299, at *1
(S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
permitted to adopt those sections of [a magistrate
judge's] report to which no specific objection is
made, so long as those sections are not facially
erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Hummel's Report-
Recommendation (Dkt. No. 10) is **ACCEPTED** and
**ADOPTED**; and it is further

**ORDERED** that the following claims asserted in Plaintiff's
Amended Complaint (Dkt. No. 9) are **DISMISSED with
prejudice**:

 (1) any claims under 18 U.S.C. §§ 241 and 242,

 (2) any claims under 42 U.S.C. § 12301(3)(5)(7)(A)(B),

 (3) any claims under 42 U.S.C. § 12182, and

 (4) any claim for "tortious interference with parental rights
     under common law"; and it is further

**ORDERED** that the remaining claims asserted in Plaintiff's
Amended Complaint (Dkt. No. 9)–specifically, her claim
under 42 U.S.C. § 1985 against Defendant in his individual
and official capacities seeking declaratory and injunctive
relief, and her claims under the Americans with Disabilities
Act against Defendant in his official capacity seeking
injunctive relief–**shall be DISMISSED with prejudice**
and without further order of the Court **UNLESS, within
THIRTY (30) DAYS** of the date of this Decision and
Order, Plaintiff files a Second Amended Complaint curing
the pleading defects in those claims identified in the Report-
Recommendation; and it is further

**ORDERED** that, should Plaintiff file a Second Amended
Complaint, the Second Amended Complaint must be a
complete pleading that supersedes and replaces the Amended
Complaint in all respects and does not incorporate by
reference any portion of the Amended Complaint; and it is
further

 *2  **ORDERED** that, should Plaintiff file a Second Amended
Complaint, the Second Amended Complaint will be referred
to Magistrate Judge Hummel for further review pursuant to
28 U.S.C. § 1915(e).

Case 1:24-cv-00376-BKS-TWD     Document 4     Filed 05/10/24     Page 30 of 105
**Terpening v. McGinty, Not Reported in Fed. Supp. (2022)**
2022 WL 17415121

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17415121

---

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1652491
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,

v.

REDLINE HOCKEY, LLC d/b/a USA Hockey
Store and USA Spirit Shop, USA Hockey Inc.,
Matthew Nyman and Michael Nyman, Defendants.

8:24-cv-68 (BKS/DJS)
|
Signed April 17, 2024

**Attorneys and Law Firms**

Plaintiff pro se: Scott Phillip Lewis, Lake Placid, NY 12946.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge:

**I. INTRODUCTION**

 *1  Plaintiff Scott Phillip Lewis commenced this proceeding on January 15, 2024, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., Section 50 of the New York Civil Rights Law, and for defamation. (Dkt. No. 1). Plaintiff also sought leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2). This matter was referred to United States Magistrate Judge Daniel J. Stewart. (*Id.*). On January 23, Plaintiff filed a request that proposed summonses be issued, which was subsequently denied. (Dkt. Nos. 5–6). Following the denial, Plaintiff filed a motion for reconsideration and a supporting memorandum of law. (Dkt. Nos. 7–8). On February 20, 2024, Magistrate Judge Stewart granted Plaintiff's application to proceed IFP, denied Plaintiff's motion for reconsideration, and issued a Report-Recommendation, recommending that Plaintiff's complaint be dismissed with leave to amend. (Dkt. Nos. 9–11). Plaintiff filed a motion on February 28 to waive PACER fees which Magistrate Judge Stewart denied. (Dkt. Nos. 12–13). Plaintiff has timely filed his objections to the Report-Recommendation and has appealed the orders denying his request for the issuance of the summonses and denying his motion to waive PACER fees. (Dkt. Nos. 14–16). For the reasons set forth below, the Report-Recommendation is adopted and Plaintiff's appeals are denied.

**II. STANDARD OF REVIEW**

This court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [report-recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (citation omitted). Properly raised objections "must be specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (citation omitted). "[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920 at *2, 2011 U.S. Dist. LEXIS 95351 (S.D.N.Y. Aug. 25, 2011) (citation omitted). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Kruger*, 976 F. Supp. 2d at 296 (citation omitted).

A magistrate judge may issue orders regarding nondispositive pretrial matters, and the district court reviews such orders under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "An order is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000) (citations and internal quotation marks omitted). "Under this highly deferential standard, magistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Williams v. Rosenblatt Sec., Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (quoting *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013)).

**III. DISCUSSION**

**A. Objections to the Report-Recommendation**

 *2  Plaintiff has not raised any objections to the facts or the legal framework set forth in the Report-Recommendation. (*See* Dkt. No. 15). The Court therefore adopts Magistrate Judge Stewart's summary of the factual background and

applicable law and presumes familiarity with those matters for the purposes of this decision.

### 1. ADA

Plaintiff alleges that Defendants violated his rights under the ADA by discriminating against him because he is disabled. (Dkt. No. 1, at 4–5). Magistrate Judge Stewart recommended Plaintiff's ADA claim be dismissed with leave to amend because "[t]he Complaint does not allege that Plaintiff filed a discrimination complaint with the EEOC and does not provide a copy of a right to sue letter." (Dkt. No. 11, at 4). Plaintiff has objected to the dismissal on the basis that "[t]he Seventh Amendment extends the right to a jury trial in Federal civil cases." (Dkt. No. 15, at 3).

As an initial matter, the right to a jury trial as guaranteed by the Seventh Amendment is not violated by requiring a plaintiff to administratively exhaust his claims before bringing them to federal court. *See Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) ("[T]he Seventh Amendment's guarantee of the right to the ultimate determination of issues of fact by the jury does not extend to the threshold issue[s]," like administrative exhaustion, "that courts must address to determine whether litigation is being conducted in the right forum at the right time." (citations and internal quotation marks omitted)). While Plaintiff's objection is meritless, having reviewed the issue regarding exhaustion of administrative remedies *de novo*, the Court concludes that it would be error to dismiss Plaintiff's ADA claim for failure to plead exhaustion of administrative remedies or receipt of a right to sue letter. "Administrative exhaustion in the ... ADA context 'is not a jurisdictional [prerequisite], but only a precondition to bringing [suit] ... that can be waived by the parties or the court.' " *Anderson v. City of New York*, No. 22-cv-3990, ––– F. Supp. 3d ––––, 2024 WL 183103, at *6 n.6, 2024 U.S. Dist. LEXIS 8834 (S.D.N.Y. Jan. 17, 2024) (quoting *Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016)); *see also Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (concluding the district court's *sua sponte* dismissal of the plaintiff's discrimination claims "for failure to exhaust, or plead other facts that would relieve him of the obligation to file a complaint with the EEOC," was erroneous, explaining that "the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense."). Consequently, a Plaintiff's failure to allege sufficient facts

regarding exhaustion is not *necessarily* fatal to Plaintiff's claim.

However, Plaintiff's claim remains insufficient in other ways. A *prima facie* case of disability discrimination under the ADA requires a plaintiff to show: "(1) the defendant is covered by the ADA; (2) [the] plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) [the] plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) [the] plaintiff suffered an adverse employment action because of his disability or perceived disability." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 486 (S.D.N.Y. 2017) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)). While "a plaintiff alleging disability discrimination is not required to plead a *prima facie* case" at the pleadings stage, the plaintiff still must "give plausible support to a minimal inference of discriminatory motivation." *Id.* at 487 (internal citation marks omitted) (quoting *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (summary order)); *see also Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) (summary order) ("To state a claim for discrimination under the ADA, a plaintiff must allege facts which plausibly suggest, inter alia, that she suffered [an] adverse employment action because of [her] disability.").

**\*3** Here, Plaintiff has not sufficiently alleged facts supporting the minimal inference required. First, Plaintiff has not plausibly alleged he is disabled within the meaning of the ADA. The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff's assertions that he "had been diagnosed with ADHD" and that he "was subsequently diagnosed with PTSD after employment ended," (Dkt. No. 1, ¶ 26), without additional factual allegations to show how a major life activity is or was substantially limited by such conditions is not enough to satisfy his pleading burden under either prong (A) or prong (B) of the definition. *See e.g.*, *Rodriguez v. Verizon Telecom*, No. 13-cv-6969, 2014 WL 6807834, at *3–5, 2014 U.S. Dist. LEXIS 167833 (S.D.N.Y. Dec. 3, 2014) (finding the plaintiff failed to plead his alcohol and drug addictions constituted a disability or a record of disability under the ADA because he did not allege any facts pertaining to how these conditions "substantially limit" or "substantially limited a major life activity"). And Plaintiff has not alleged facts that suggest

any Defendant perceived him as disabled, such that he would meet the definition under prong (C). *See Laface v. Eastern Suffolk Boces*, 349 F. Supp. 3d 126, 147 (E.D.N.Y. 2018) (explaining that whether a plaintiff is regarded as disabled "turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability" (citation omitted)).

Second, Plaintiff has not pled that he experienced an adverse employment action. An adverse employment action is defined "as a 'materially adverse change' in the terms and conditions of employment," for example, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (citations omitted). Plaintiff alleges that he "encountered hostile situations in the workplace," including that Defendant Matthew Nyman "responded aggressively" to Plaintiff in a conversation regarding how Plaintiff should fill out his tax forms. (Dkt. No. 1, ¶ 12 [1]). Plaintiff states that "[w]hile Plaintiff was seeking partnership opportunities, he ended up working a minimum wage job for more hours than initially agreed" and that he was "put in what was perceived to be manufactured situations for entertainment purposes rather than put in any business setting concurrent to prior experience." (*Id.* ¶¶ 27–28). None of these events constitute adverse employment actions. *See Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 495–96 (E.D.N.Y. 2019) ("An employer's behavior does not constitute an adverse employment action because the employee sustained some generalized harm; the harm must be related to the employee's terms and conditions of employment." (citations omitted)). Moreover, Plaintiff does not provide any facts that would indicate that any of these events occurred *because* Plaintiff was disabled within the meaning of the ADA. *See, e.g., Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018) (finding plaintiff had not sufficiently pled claims of religious and disability discrimination in part due to lack of allegations "that her supervisors or other management ... made any statements about her religion or her disability, let alone statements indicating that those characteristics played a role in" the alleged adverse employment actions).

[1]    Plaintiff's Complaint contains two paragraphs numbered "12." (*See* Dkt. No. 1, at 2–3). This

citation is to the second paragraph "12." (*See id.* at 3).

Plaintiff also cites 42 U.S.C. § 12112(b)(5)(A), [2] suggesting he may be claiming he was not provided a reasonable accommodation in accordance with the ADA. (Dkt. No. 1, ¶ 24); *see also id.* ¶ 36 ("Instead of providing accommodations in accordance to [sic] the Americans with Disabilities Act, Defendant used Plaintiff as a prop for entertainment purposes."). But Plaintiff does not allege any facts suggesting he requested an accommodation or was denied one.

[2]    Plaintiff cites the statutory provision as "42 U.S.C. § 12112(5)(A)," (Dkt. No. 1, ¶ 24), but it is clear from the text that Plaintiff is referring to 42 U.S.C. § 12112(b)(5)(A).

**\*4**    Accordingly, the Court agrees with the Report-Recommendation that Plaintiff's ADA claim should be dismissed with leave to amend.

### 2. Right to Privacy

Plaintiff alleges that Defendants violated Section 50 of the New York Civil Rights Law by recording him without consent "for entertainment purposes." (*Id.* ¶¶ 34–36). The Magistrate Judge recommended dismissing this claim because "[w]hile he alleges that video surveillance cameras in the store were used to film him, he does not allege that his name, portrait, or voice was used for any advertising purposes" and instead "specifically avers that the footage was used for the entertainment of the employees." (Dkt. No. 11, at 5). Plaintiff objects to the dismissal recommendation, differentiating between the Magistrate Judge's characterization "that the footage was used for entertainment purposes" and his allegation that "he was used 'as a prop for entertainment purposes.'" (Dkt. No. 15, at 3). Plaintiff argues that the Magistrate Judge incorrectly assumed "the footage was used solely by 'the employees'"; that "Plaintiff is unaware of any safeguards in place for which employees have access to the surveillance camera footage at the USA Hockey Store in Lake Placid, NY and how these recordings were being safeguarded to protect employees [sic] privacy"; that "Plaintiff was required to wear USA Hockey clothing so any unauthorized access to Defendants constitutes an advertisement"; and that "[i]t can be liberally construed that Plaintiff's allegations that he was used as 'a prop for entertainment purposes' shows that Plaintiff was used for monetary gain for entertainment or trade purposes." (*Id.* at 3–4).

Section 50 of the New York Civil Rights Law states that: "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor." "Section 51 creates a cause of action for the invasion of the 'right to privacy' granted by Section 50." *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 451 (S.D.N.Y. 2008) (citing *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 571 n.6, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977)). "To maintain a civil action under section 51, a plaintiff must show that the defendant (1) used his name, portrait, picture, or voice, (2) for advertising or trade purposes, (3) without his written consent." *Id.* (citing *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 621 (S.D.N.Y. 1985)).

As Magistrate Judge Stewart correctly stated, Plaintiff has not alleged any facts that suggest his name, portrait, picture, or voice were used for advertising or trade purposes. Plaintiff's objections amount to an argument that video of him *could* have been used for advertising or trade purposes and that he had unanswered questions regarding who had access to the video. This is different from actually alleging such events occurred and as such is insufficient to state a claim. *See Bell Atl. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (explaining that with regards to a complaint, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" (citation omitted)).

**\*5** Accordingly, the Court agrees with the Report-Recommendation that Plaintiff's claim of a violation of his right to privacy should be dismissed with leave to amend.

### 3. Defamation

Plaintiff alleges that Defendant Matthew Nyman made a defamatory statement by telling "the Village of Lake Placid Police Department that Plaintiff 'harassed' him." (Dkt. No. 1, ¶ 39). The Magistrate Judge found that "Plaintiff's brief allegations" lacked the "level of specificity" required to plead the elements of a defamation claim and recommended dismissal. (Dkt. No. 11, at 6). Plaintiff objects to the Magistrate's Judge's finding regarding the lack of specificity. (Dkt. No. 15, at 4–5).

"Under New York law, to state a claim for defamation, a plaintiff must allege '(1) a written [or spoken] defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability.' " *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 149, 169–70 (S.D.N.Y. 2021) (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)).

Magistrate Judge Stewart's assessment regarding the specificity of Plaintiff's defamation claim was correct. "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Tannerite Sports LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). Plaintiff has not pled factual allegations sufficient to indicate fault and falsity of a defamatory statement, but has instead alleged little "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *See Bell Atl. Corp.*, 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted); *see also* Dkt. No. 1, ¶¶ 39 ("Matthew Nyman made a statement to the Village of Lake Placid Police department that Plaintiff 'harassed' him."), 41 ("Matthew Nyman made false statements knowingly and maliciously with intent to injure Plaintiff."). While Plaintiff does allege that Defendant "Nyman knew that Plaintiff was seeking clarification over the use of cameras as previously discussed," (*id.* ¶ 40), such a statement by itself contains too little information to evaluate whether Defendant Nyman's statement that Plaintiff "harassed" him was false. *See Tannerite Sports LLC*, 864 F.3d at 247 ("Because falsity is an element of New York's defamation tort, and 'falsity' refers to material not substantially true, the complaint in this case must plead facts that, if proven, would establish that the defendant's statements were not substantially true."). Finally, Plaintiff does not plead any facts suggesting special damages or per se actionability. *See Kesner*, 515 F. Supp. 3d at 171 ("Special damages are those that involve the 'loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation.' " (citation omitted)); *id.* ("Statements that are defamatory per se 'are actionable without pleading and proof of special damages,' " including "those that 'charge the plaintiff with a serious crime' and those that 'tend to injure another in his or her trade, business or profession.' " (citations omitted)).

**\*6** Accordingly, the Court agrees with the Report-Recommendation that Plaintiff's defamation claim against Defendant Nyman should be dismissed with leave to amend.

### B. Appeals of Magistrate Judge Decisions

Plaintiff also appeals the Magistrate Judge's decisions to: (1) deny Plaintiff's requests to issue summonses; and (2) deny Plaintiff's motion to waive PACER fees. (Dkt. Nos. 14, 16). The Court finds that neither decision is "clearly erroneous or contrary to law." *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

### 1. Denial of Request to Issue Summonses

On January 23, 2024, Plaintiff filed a letter motion requesting the issuance of four proposed summonses pursuant to Rule 4(b) of the Federal Rules of Civil Procedure. (Dkt. No. 5). Plaintiff asserted that the summonses should be issued as the Complaint had been filed and "[t]he summons [sic] have been properly completed and presented to this Court," arguing that "[t]he pending Motion for Leave in Forma Pauperis in this matter does not impact the issuance of a summons." (Dkt. No. 5, at 1). In an Order entered on January 25, 2024 ("January Order"), Magistrate Judge Stewart denied Plaintiff's request as "premature" because the Court had not yet ruled on Plaintiff's motion for IFP status or completed an "initial review of the Complaint[ ] pursuant to 28 U.S.C. § 1915." (Dkt. No. 6, at 3). Magistrate Judge Stewart explained that for purposes of Rule 4(b), a complaint is considered filed "when IFP status is granted or the appropriate filing fee is paid, rather than at the time a complaint is delivered to the clerk of a court." (*Id.*) (quoting *Truitt v. Cnty. Of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)). Plaintiff appeals this decision on the grounds that refusing to issue the summonses violates Rule 4 and constitutes unequal treatment under the Fifth Amendment. (Dkt. No. 14, at 1–4).

Here, the Magistrate Judge correctly applied the law. Courts in the Second Circuit have found that a "[p]laintiff's action was not properly filed until this Court granted his IFP application." *Perkins v. Napoli*, No. 8-cv-6248, 2012 WL 5464607, at \*3, 2012 U.S. Dist. LEXIS 160534 (W.D.N.Y. Nov. 8, 2012) (citing *Romand v. Zimmerman*, 881 F. Supp. 806, 809 (N.D.N.Y. 1995)). Therefore, as Plaintiff's IFP application was still pending at the time Plaintiff requested the issuance of the summonses and the filing fee had not been paid, Magistrate Judge Stewart's finding that Plaintiff's

Complaint had not yet been filed for purposes of Rule 4(b) was neither clearly erroneous nor contrary to law. Furthermore, treating litigants differently based on IFP status does not implicate a suspect class, and thus does not constitute a Fifth Amendment violation. *See Dicara v. Conn. Educ. Dep't*, No. 8-cv-627, 2008 WL 5083622, at \*2, 2008 U.S. Dist. LEXIS 96372 (D. Conn. Nov. 26, 2008) ("[P]overty is not a suspect classification for the purposes of equal protection analysis." (citations omitted)). Plaintiff's appeal of the January Order is therefore denied.

### 2. Denial of Motion to Waive PACER Fees

On February 28, 2024, Plaintiff filed a motion to waive PACER fees. (Dkt. No. 12). Plaintiff asserted two arguments in support of his motion. First, Plaintiff argues that because Magistrate Judge Stewart failed to include the docket number for a case cited in the January Order as "Arroyo v. Georgia, 2023 WL 4539770, at \*4 (N.D.Ga. May 30, 2023[)]", Plaintiff had to "search[ ] for an unknown docket number ... accruing fees in the process." (Dkt. No. 12, at 1–2 (quoting Dkt. No. 6, at 3)). Second, Plaintiff argued that his PACER fees should be waived due to his indigence, noting that his IFP application had been granted on February 20, 2024. (*Id.* at 2–3 (citing Dkt. No. 9)). On March 6, 2024, Magistrate Judge Stewart issued a text order denying Plaintiff's motion. (Dkt. No. 13 ("Text Order denying ... Motion to Waive PACER Fees.")). Plaintiff appeals the Magistrate Judge's denial of his motion on the basis that he has shown good cause to waive PACER fees and that the text order, issued without further explanation, was "not appropriate" and "has created the appearance that the Magistrate Judge will not provide rights to the poor." (Dkt. No. 16, at 2–4).

**\*7** As Plaintiff himself is aware, (*see id.* at 1), a Magistrate Judge is not required to issue a written order when ruling on non-dispositive matters, Fed. R. Civ. P. 72(a) ("When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, *when appropriate*, issue a written order stating the decision.") (emphasis added).

Moreover, the decision itself is not clearly erroneous or contrary to law. PACER itself provides for "four automatic fee exemptions." *In re Club Ventures Investments LLC*, 507 B.R. 91, 99 (S.D.N.Y. 2014) (citation omitted); *see also* Options to Access Records If You Cannot Afford PACER

Fees, https://pacer.uscourts.gov/my-account-billing/billing/options-access-records-if-you-cannot-afford-pacer-fees (last accessed Apr. 4, 2024) (allowing users to "access $30 or less worth of court records within a quarterly billing cycle," as well as court opinions for free). "[A] party seeking a discretionary exemption cannot rely on his *in forma pauperis* status alone. The party must demonstrate that an exemption beyond the four automatic exemptions 'is necessary ... to avoid unreasonable burdens and to promote public access to information.' " *In re Club Ventures Investments LLC*, 507 B.R. at 99 (citation omitted). As Plaintiff failed to explain why the automatic exemptions are not sufficient for his purposes, the Court finds Magistrate Judge Stewart's denial of Plaintiff's motion for a waiver of PACER fees was neither clearly erroneous nor contrary to law and is therefore affirmed. *See Oliva v. Brockwood Coram I, LLC*, No. 14-cv-2513, 2015 WL 1966357, at *2, 2015 U.S. Dist. LEXIS 57215 (E.D.N.Y. Apr. 30, 2015) ("Because [the plaintiff] does not explain how that level of access is insufficient for his purposes, he falls short of establishing that the regular usage fee constitutes an unreasonable burden."). Plaintiff's appeal is therefore denied.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Stewart's Report-Recommendation (Dkt. No. 11) is **ADOPTED**; and it is further;

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** with leave to amend; and it is further;

**ORDERED** that any amended complaint must be filed **within thirty (30) days** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in total; and it is further;

**ORDERED** that if Plaintiff files a timely amended complaint, it shall be referred to Magistrate Judge Stewart for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case; and it is further;

**ORDERED** that Plaintiff's appeal (Dkt. No. 14) of the January Order (Dkt. No. 6) is **DENIED** in its entirety; and it is further;

**ORDERED** that Plaintiff's appeal (Dkt. No. 16) of the order denying a waiver of PACER fees (Dkt. No. 13) is **DENIED** in its entirety; and it is further;

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 1652491

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1739608
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,

v.

R.L. VALLEE, INC. d/b/a Maplefields, Defendant.

8:24-CV-69 (AMN/DJS)
|
Signed April 23, 2024

**Attorneys and Law Firms**

SCOTT PHILLIP LEWIS, 1936 Saranac Ave., #3 PMB 411,
Lake Placid, NY 12946, Plaintiff, pro se.

**MEMORANDUM-DECISION AND ORDER**

Anne M. Nardacci, United States District Judge:

**I. INTRODUCTION**

 **\*1** On January 16, 2024, Plaintiff *pro se* Scott Phillip
Lewis commenced this action against R.L. Vallee, Inc. d/
b/a Maplefields ("Defendant"). *See* Dkt. No. 1. Plaintiff
alleges that while working part-time at Defendant's store:
(1) Defendant discriminated against him in violation of the
Americans with Disability Act ("ADA"), 42 U.S.C. § 12101
*et seq.*; (2) Defendant violated his rights under Section 50
of the New York Civil Rights Law ("Section 50"); and
(3) Defendant's assistant store manager defamed him. *See
generally id.* [1] Plaintiff sought leave to proceed *in forma
pauperis* ("IFP"). Dkt. No. 2. This matter was referred
to United States Magistrate Judge Daniel J. Stewart. *Id.*
On January 23, 2024, Plaintiff submitted a letter request
that a proposed summons be issued, Dkt. No. 5, which
Magistrate Judge Stewart denied, Dkt. No. 6 ("January
Order"). Following the denial, Plaintiff filed a motion for
reconsideration and a supporting memorandum of law. Dkt.
Nos. 7-8.

[1]     For a recitation of Plaintiff's allegations in the
        Complaint, the parties are referred to the Report-
        Recommendation. *See* Dkt. No. 11 at 3-4.

On February 20, 2024, Magistrate Judge Stewart granted
Plaintiff's application to proceed IFP, denied Plaintiff's motion
for reconsideration, and issued a Report-Recommendation

and Order ("Report-Recommendation") recommending that
Plaintiff's Complaint be dismissed with leave to amend. *See*
Dkt. Nos. 9-11. On February 28, 2024, Plaintiff filed a
motion to waive PACER fees, Dkt. No. 12, which Magistrate
Judge Stewart denied, Dkt. No. 13. Plaintiff has timely filed
objections to the Report-Recommendation and has appealed
the Magistrate Judge's orders denying his request for the
issuance of a summons and his motion to waive PACER fees.
Dkt. Nos. 14-16.

For the reasons set forth below, the Report-Recommendation
is adopted in its entirety and Plaintiff's appeals are denied.

**II. STANDARD OF REVIEW**

This Court reviews *de novo* those portions of a magistrate
judge's report-recommendation that have been properly
preserved with a specific objection. 28 U.S.C. § 636(b)(1)
(C). "To be 'specific,' the objection must, with particularity,
'identify [1] the portions of the proposed findings,
recommendations, or report to which it has an objection
and [2] the basis for the objection.' " *Petersen v. Astrue*,
2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in
original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific
objections have been filed, this Court reviews a magistrate
judge's report-recommendation for clear error. *See id.* at 229
(citing Fed. R. Civ. P. 72(b), Advisory Committee Notes:
1983 Addition). Similarly, when a party files "[g]eneral or
conclusory objections, or objections which merely recite
the same arguments [previously] presented to the magistrate
judge," the district court reviews a magistrate judge's report-
recommendation for clear error. *O'Diah v. Mawhir*, No. 9:08-
CV-322 (TJM) (DRH), 2011 WL 933846, at \*1 (N.D.N.Y.
Mar. 16, 2011) (citations omitted); *accord Mario v. P & C
Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a
"statement, devoid of any reference to specific findings or
recommendations to which [the plaintiff] objected and why,
and unsupported by legal authority, was not sufficient to
preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 &
n.6 (collecting cases). "When performing [ ] a 'clear error'
review, 'the court need only satisfy itself that there is no
clear error on the face of the record in order to accept the
recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*,
No. 6:21-CV-01138 (MAD/TWD), 2023 WL 2552452, at \*1
(N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc.
Sec.*, No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5484663, at
\*1 n.1 (N.D.N.Y. Nov. 14, 2017)).

 **\*2** "[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal

Lewis v. R.L. Vallee, inc., Slip Copy (2024)
Case 1:24-cv-00376-BKS-TWD   Document 4   Filed 05/10/24   Page 38 of 105
2024 WL 1739608

pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal ...." *Machicote v. Ercole*, No. 06 Civ. 13320 (DAB) (JCF), 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 1:22-cv-567 (BKS/CFH), 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

### A. Objections to the Report-Recommendation

Plaintiff has not raised any objections to the facts or the legal framework set forth in the Report-Recommendation. *See generally* Dkt. No. 15. Therefore, the Court adopts Magistrate Judge Stewart's summary of the factual background and applicable law and presumes familiarity with those matters for the purposes of this decision. *See* Dkt. No. 11.

### 1. ADA Claim

Magistrate Judge Stewart concluded that Plaintiff's ADA claim should be dismissed with leave to amend because Plaintiff did not allege that he filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") and Plaintiff did not attach a copy of a right to sue letter to the Complaint. Dkt. No. 11 at 4-5. [2] Plaintiff objects to Magistrate Judge Stewart's conclusion and contends that requiring a right to sue letter prior to commencing a civil action violates his Seventh Amendment right "to a jury trial in Federal civil cases." Dkt. No. 15 at 2-3.

[2] *See also Garcia v. Coca-Cola Bottling Co. of New York*, No. 96 Civ. 6072 (AGS), 1998 WL 151032, at *2 (S.D.N.Y. Mar. 31, 1998) ("It is well established that a plaintiff must file a charge of discrimination with the EEOC and obtain a right to sue letter from

the EEOC before proceeding in federal district court"); *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) ("In order to be timely, a claim under the ADA must be filed in federal district court within 90 days of the claimant's receipt of a right-to-sue letter from the EEOC.") (citing 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e−5(f)(1)).

Upon *de novo* review, the Court agrees with Magistrate Judge Stewart that Plaintiff's ADA claim should be dismissed. First, "the right to a jury trial as guaranteed by the Seventh Amendment is not violated by requiring a plaintiff to administratively exhaust his claims before bringing them to federal court." *Lewis v. Redline Hockey, LLC d/b/a USA Hockey Store & USA Spirit Shop, et al.*, No. 8:24-CV-68 (BKS/DJS), 2024 WL 1652491, at *2 (N.D.N.Y. Apr. 17, 2024) (citing *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) ("[T]he Seventh Amendment's guarantee of the right to the ultimate determination of issues of fact by the jury does not extend to the threshold issue[s]," like administrative exhaustion, "that courts must address to determine whether litigation is being conducted in the right forum at the right time.") (citations and quotation marks omitted)). However, the Court finds that Plaintiff's "failure to allege sufficient facts regarding exhaustion is not *necessarily* fatal to Plaintiff's [ADA] claim." *Redline Hockey, LLC*, 2024 WL 1652491, at *2 (emphasis in original); *id.* ("Administrative exhaustion in the ... ADA context 'is not a jurisdictional [prerequisite], but only a precondition to bringing [suit] ... that can be waived by the parties or the court.' ") (quoting *Anderson v. City of New York*, No. 22 CIV. 3990 (NSR), 2024 WL 183103, at *6 n.6 (S.D.N.Y. Jan. 17, 2024)); *see also Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (reversing the district court's *sua sponte* dismissal of the plaintiff's "Title VII claims for failure to exhaust, or plead other facts that would relieve him of the obligation to file a complaint with the EEOC" because "the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense").

**\*3** Nevertheless, Plaintiff's ADA claim should be dismissed because Plaintiff has not sufficiently pled facts establishing that he is disabled within the meaning of the ADA or that he was denied a reasonable accommodation. The ADA authorizes a private claim when an employer fails to make "reasonable accommodations to the known physical or mental limitations" of a disabled employee. Dkt. No. 1 at ¶ 19. [3] "To establish a *prima facie* case of disability discrimination in a reasonable accommodation case, 'the plaintiff's burden

requires a showing that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.' " *Lewis v. Affiliated Enter. Sols., et al.*, No. 8:24-CV-61 (BKS/DJS), 2024 WL 1652460, at *3 (N.D.N.Y. Apr. 17, 2024) (quoting *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 183-84 (2d Cir. 2006)). "For purposes of a reasonable accommodation claim, a disability under the ADA is defined as 'a physical or mental impairment that substantially limits one or more major life activities of such individual' or 'a record of such an impairment.' " *Id.* at *4 (quoting 42 U.S.C. §§ 12102(1)(A), (B)).

3    Plaintiff cites the statutory provision as "42 U.S.C. § 12115(5)(A)," Dkt. No. 1 at ¶ 19, however he references the provision at 42 U.S.C. § 12112(b)(5) (A).

Here, as to disability, Plaintiff alleges that in 2015 he was "involved in a hit and run accident ... leaving [him] with a concussion and traumatic brain injury," and the hit and run incident led to "a progressive increase in attention-deficit/hyperactivity disorder ("ADHD") symptoms associated with the post-traumatic stress disorder ("PTSD") from the accident." Dkt. No. 1 at ¶¶ 12-13. Plaintiff further alleges that he "developed an alcohol abuse disorder," and that the "symptoms of PTSD and ADHD" worsened on or around July 2018. *Id.* at ¶¶ 14-15. Additionally, Plaintiff alleges that he was "diagnosed with ADHD and PTSD prior to employment at [Defendant's store and m]anagement was aware of the mental impairments at all times during and after Plaintiff's employment," and "[b]ecause management perceived Plaintiff as being disabled, he was not afforded an opportunity to use his prior work experiences and strengths and was discriminated against." *Id.* at ¶¶ 18, 22.

Plaintiff does not allege that his ADHD, PTSD, or alcohol abuse disorder have "substantially limited" a major life activity. Therefore, Plaintiff's allegations are insufficient to plead a disability under the ADA, 42 U.S.C. §§ 12102(1) (A), (B). *See Affiliated Enter. Sols.*, 2024 WL 1652460, at *4 (finding that Plaintiff's almost identical allegations in another case were insufficient to allege that Plaintiff was disabled because Plaintiff did not describe how his ADHD, PTSD, or alcohol abuse disorder substantially limited a major life activity); *Redline Hockey, LLC*, 2024 WL 1652491, at *3 (finding, in another case brought by Plaintiff, that his

"assertions that he had been diagnosed with ADHD and ... subsequently diagnosed with PTSD after [his] employment ended, without additional factual allegations to show how a major life activity is or was substantially limited by such conditions," were insufficient to allege a disability under the ADA.

Additionally, Plaintiff does not allege he requested and was denied a reasonable accommodation. "A reasonable accommodation is one that 'enable[s] an individual with a disability who is qualified to perform the essential functions of that position.' " *Affiliated Enter. Sols.*, 2024 WL 1652460, at *4 (quoting 29 C.F.R. § 1630.2(o)(1)(ii)). [4] Here, Plaintiff merely alleges that management did not afford him "an opportunity to use his prior work experiences and strengths" and that he was "not afforded [an] opportunity congruent with [his] skill level and past work experience." *See* Dkt. No. 1 at ¶¶ 22-23. These facts are insufficient to allege that Plaintiff was denied a reasonable accommodation. *See Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 609 (E.D.N.Y. 2013) (dismissing a reasonable accommodation claim where "[n]otably absent from plaintiff's [c]omplaint [were] any allegations that plaintiff requested a reasonable accommodation or that [her employer] refused to make such an accommodation").

4    Examples of reasonable accommodations include " '[m]aking existing facilities used by employees readily accessible to and usable by individuals with disabilities' as well as '[j]ob restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; [and] the provision of qualified readers or interpreters.' " *Affiliated Enter. Sols.*, 2024 WL 1652460, at *4 (quoting 29 C.F.R. §§ 1630.2(o)(2) (i), (ii)).

**\*4** Accordingly, the Court adopts Magistrate Judge Stewart's recommendation that Plaintiff's ADA claim should be dismissed with leave to amend.

## 2. Right to Privacy

Magistrate Judge Stewart found that Plaintiff's Complaint "fails to allege facts that would support a claim under Section 50" of the New York Civil Rights Law. Dkt. No. 11 at 5-6.

Plaintiff objects to Magistrate Judge Stewart's conclusion and contends that his Section 50 claim should not be dismissed because he "alleged [that] recordings from video surveillance cameras owned and operated by Defendant were shared via social media for advertisement and trade purposes." Dkt. No. 15 at 3-4 (citing Dkt. No. 1 at ¶¶ 7, 28-32).

Upon *de novo* review, the Court agrees with Magistrate Judge Stewart that Plaintiff's Section 50 claim should be dismissed. Dkt. No. 11 at 6. "Section 50 of the New York Civil Rights Law states that: 'A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person ... is guilty of a misdemeanor.' " *Redline Hockey, LLC*, 2024 WL 1652491, at *4 (quoting N.Y. Civ. Rights Law § 50).

Magistrate Judge Stewart noted that "the statute applies only in cases where the defendant uses the plaintiff's identity in a manner that conveys or reasonably suggests the subject's endorsement of the publication in question." Dkt. No. 11 at 5-6 (quoting *Yantha v. Omni Childhood Ctr., Inc.*, No. 13-CV-1948 (ARR) (JMA), 2013 WL 5327516, at *9 (E.D.N.Y. Sept. 20, 2013)). Magistrate Judge Stewart correctly found that Plaintiff's allegations fall short of this standard because Plaintiff did not, for example, "identify where the footage was allegedly shared or what the content of the footage was." *Id.* at 6; *see also Redline Hockey, LLC*, 2024 WL 1652491, at *4 (adopting Magistrate Judge Stewart's report-recommendation that Plaintiff's allegation that defendants recorded "him without consent for entertaining purposes" was insufficient to allege a claim under Section 50 because Plaintiff did not allege facts suggesting "his name, portrait, picture, or voice were used for advertising or trade purposes").

Accordingly, the Court adopts Magistrate Judge Stewart's recommendation that Plaintiff's Section 50 claim should be dismissed with leave to amend.

### 3. Defamation

Magistrate Judge Stewart recommended that Plaintiff's defamation claim be dismissed with leave to amend because his allegations lacked the "level of specificity" required to plead the elements of a defamation claim. Dkt. No. 11 at 6-7. Plaintiff objects to Magistrate Judge Stewart's conclusion and contends that his allegations that Defendant "made a knowingly false statement to the New York State police

concerning Plaintiff" and that the false statements injured him, are sufficient to state a claim for defamation. Dkt. No. 15 at 4.

"Under New York law, to state a claim for defamation, a plaintiff must allege '(1) a written [or spoken] defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability.' " *Redline Hockey, LLC*, 2024 WL 1652491, at *5 (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)). Plaintiff alleges that around December 2023, he "confronted [the] assistant manager over the use of the cameras in the store" and the assistant manager "threatened to call the police." Dkt. No. 1 at ¶¶ 38-39. Plaintiff alleges that the assistant manager of Maplefields "made false statements regarding this altercation" and Plaintiff was told by the manager at Maplefields that he was not allowed inside the store. *Id.* at ¶¶ 40-41. Plaintiff further alleges that the manager "insinuated that the New York State Police were ... involved" based on the "false defamatory statements made by the assistant manager." *Id.* at ¶ 42. [5]

> [5]    The Court has also reviewed the audio recording Plaintiff submitted to the Court, Exhibit A, which was referenced in the Complaint, *see* Dkt. No. 1 at ¶ 42.

**\*5** Magistrate Judge Stewart noted that in "assessing whether a defamation claim has been plead with sufficient particularity, courts look to whether said complaint references the alleged defamatory statement, identifies who made the statement, when it was made, the context in which it was made, whether it was made orally or in writing and whether it was made to a third party." Dkt. No. 11 at 5-6 (quoting *Bloom v. Fox of Los Angeles*, 528 F. Supp. 2d 69, 74 (E.D.N.Y. 2007)). Magistrate Judge Stewart concluded that Plaintiff's allegations are insufficient to allege a claim of defamation with "sufficient particularity" because they fail to "identify the speaker, the allegedly defamatory words, or when and to whom the statements were made." *Id.* Upon *de novo* review, the Court agrees with Magistrate Judge Stewart that Plaintiff has failed to adequately allege a defamation claim.

Accordingly, the Court adopts Magistrate Judge Stewart's recommendation that Plaintiff's defamation claim should be dismissed with leave to amend.

### B. Appeals of the Magistrate Judge's Decisions

Plaintiff also appeals: (1) Magistrate Judge Stewart's January Order denying Plaintiff's requests to issue summonses in several cases filed in this District; and (2) Magistrate Judge Stewart's text order denying Plaintiff's motion to waive PACER fees. *See* Dkt. Nos. 14, 16. In *Redline Hockey, LLC*, Plaintiff also appealed the January Order denying his request to issue summonses and Magistrate Judge Stewart's order denying Plaintiff's motion to waive PACER fees.

As to the January Order, Chief United States District Judge Brenda K. Sannes explained that Magistrate Judge Stewart "correctly applied the law" in denying Plaintiff's request because "[c]ourts in the Second Circuit have found that a '[p]laintiff's action was not properly filed until this Court granted his IFP application.' " *Redline Hockey, LLC*, 2024 WL 1652491, at *5 (quoting *Perkins v. Napoli*, No. 8-cv-6248, 2012 WL 5464607, at *3 (W.D.N.Y. Nov. 8, 2012)); *see also* Dkt. No. 6 at 3 (Magistrate Judge Stewart explaining that for purposes of Rule 4(b) of the Federal Rules of Civil Procedure, a complaint is considered filed "when IFP status is granted or the appropriate filing fee is paid, rather than at the time a complaint is delivered to the clerk of a court") (quotation omitted).

As to the Magistrate Judge's text order denying Plaintiff's motion to waive PACER fees, Plaintiff argues that: (1) the January Order cites to a case as "*Arroyo v. Georgia*, 2023 WL 4539770, at *4 (N.D. Ga. May 30, 2023)," and because this citation failed to provide the docket number Plaintiff had to "search[ ] for an unknown docket number ... accruing fees in the process," Dkt. No. 12, at 1-2 (citing Dkt. No. 6, at 3); and (2) his PACER fees should be waived because he is indigent and his IFP application was granted. *Id.* at 2-3 (citing Dkt. No. 9).

Plaintiff made the same arguments in *Redline Hockey, LLC*, which Chief Judge Sannes rejected, finding that Magistrate Judge Stewart's decision to deny Plaintiff's motion to waive PACER fees was "not clearly erroneous or contrary to law." 2024 WL 1652491, at *7. Chief Judge Sannes explained that PACER provides "four automatic fee exemptions." *Id.* (citing *In re Club Ventures Invs. LLC*, 507 B.R. 91, 99 (S.D.N.Y. 2014).[6] Additionally, a plaintiff's *in forma pauperis* status alone is insufficient to waive PACER fees without demonstrating why an exemption " 'is necessary ... to avoid unreasonable burdens and to promote public access to information.' " *Id.* (quoting *In re Club Ventures Invs. LLC*, 507 B.R. at 99). Chief Judge Sannes found that Plaintiff "failed to explain why the automatic exemptions [were] not

sufficient for his purposes" and denied Plaintiff's appeal of Magistrate Judge Stewart's denial of Plaintiff's motion for a waiver of PACER fees. *Id.* (citing *Oliva v. Brockwood Coram I, LLC*, No. 14-CV-2513 (JMA) (AYS), 2015 WL 1966357, at *2 (E.D.N.Y. Apr. 30, 2015)) ("Because [the plaintiff] does not explain how that level of access is insufficient for his purposes, he falls short of establishing that the regular usage fee constitutes an unreasonable burden.")).

6    *See also* Options to Access Records If You Cannot Afford PACER Fees, https://pacer.uscourts.gov/my-account-billing/billing/options-access-records-if-you-cannot-afford-pacer-fees (last accessed April 23, 2024) (noting that there is "no charge for [users] accessing up to $30 in chargers per [quarterly billing cycle]").

**\*6** The Court finds that Chief Judge Sannes' reasoning also applies in this case. Accordingly, Plaintiff's appeals of Magistrate Judge Stewart's Orders are denied. *See Affiliated Enter. Sols.*, 2024 WL 1652460, at *6 (denying Plaintiff's appeal of the January Order and appeal of the denial of Plaintiff's motion to waive PACER fees); *Lewis v. Adirondack Medical Center d/b/a Adirondack Health*, No. 8:24-CV-27 (BKS/DJS), 2024 WL 1652458, at *4 (N.D.N.Y. Apr. 17, 2024) (denying Plaintiff's appeal of the January Order); *Lewis v. Citizens United Inc.*, No. 8:24-CV-29 (DNH), 2024 WL 1639857, at *1 (N.D.N.Y. Apr. 16, 2024) (same).

## IV. CONCLUSION
Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 11, is **ADOPTED** in its entirety; and the Court further

**ORDERS** that the Complaint, Dkt. No. 1, is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file an amended complaint within **THIRTY (30) DAYS** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in total; and the Court further

**ORDERS** that if Plaintiff timely files an amended complaint, it shall be referred to Magistrate Judge Stewart for review; and if Plaintiff fails to timely file an amended complaint, the Clerk is directed to close this case without further order of this Court; and the Court further

**ORDERS** that Plaintiff's appeal, Dkt. No. 14, of Magistrate Judge Stewart's Order, Dkt. No. 6, is **DENIED** in its entirety; and the Court further

**ORDERS** that Plaintiff's appeal, Dkt. No. 16, of Magistrate Judge Stewart's Order, Dkt. No. 13, is **DENIED** in its entirety; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 1739608

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1652458
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,

v.

ADIRONDACK MEDICAL CENTER
d/b/a Adirondack Health, Defendant.

8:24-cv-27 (BKS/DJS)
|
Signed April 17, 2024

**Attorneys and Law Firms**

Plaintiff pro se: Scott Phillip Lewis, Lake Placid, NY 12946.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge:

**I. INTRODUCTION**

**\*1** Plaintiff Scott Phillip Lewis commenced this proceeding on January 7, 2024, alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (Dkt. No. 1). Plaintiff also sought leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 3). This matter was referred to United States Magistrate Judge Daniel J. Stewart. (*Id.*). On January 10, Plaintiff filed a motion to allow medical records that he filed along with his Complaint to be made publicly accessible. (Dkt. No. 5). On January 23, Plaintiff filed a request that a proposed summons be issued, which Magistrate Judge Stewart denied. (Dkt. Nos. 7, 9). Following the denial, Plaintiff filed a motion for reconsideration and a supporting memorandum of law. (Dkt. Nos. 10, 11-1). On February 20, Magistrate Judge Stewart denied Plaintiff's motion for reconsideration. (Dkt. No. 12). Then, on February 29, Magistrate Judge Stewart granted Plaintiff's application to proceed IFP, issued a Report-Recommendation recommending that Plaintiff's complaint be dismissed with leave to amend, and issued an order denying Plaintiff's motion to make his medical records public. (Dkt. Nos. 13–14). Plaintiff has timely filed objections to the Report-Recommendation and Order, and has appealed the order denying his request for the issuance of the summons. (Dkt. Nos. 15–16).[1] For the reasons set forth below, the

Report-Recommendation is adopted and Plaintiff's appeals are denied.

[1]   The Court has construed Plaintiff's objection to Magistrate Judge Stewart's order, denying the motion to make the medical records publicly available as an appeal from that order.

**II. STANDARD OF REVIEW**

This court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [report-recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (citation omitted). Properly raised objections "must be 'specific and clearly aimed at particular findings'" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (citation omitted). "[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920 at *2, 2011 U.S. Dist. LEXIS 95351 (S.D.N.Y. Aug. 25, 2011) (citation omitted). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Kruger*, 976 F. Supp. 2d at 296 (citation omitted).

A magistrate judge may issue orders regarding nondispositive pretrial matters, and the district court reviews such orders under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "An order is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000) (citations and internal quotation marks omitted). "Under this highly deferential standard, magistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Williams v. Rosenblatt Sec., Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (quoting *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013)).

## III. REPORT-RECOMMENDATION

**\*2**  In the Report-Recommendation, Magistrate Judge Stewart first provided a "Summary of the Complaint," in which he outlined Plaintiff's factual allegations, referencing both the Complaint and the medical records Plaintiff attached as exhibits to the Complaint. (Dkt. No. 14, at 3–4 (citing Dkt. Nos. 1, 2)). Then, analyzing the substance of the Complaint, Magistrate Judge Stewart explained that to the extent the Complaint alleged a claim for medical malpractice, such a claim is not actionable under either the ADA or the Rehabilitation Act. (*Id.* at 4). Next, Magistrate Judge Stewart explained that Plaintiff's "allegation that Defendant forced [him] to undergo the intake procedure a second time for financial reasons" was conclusory and, in any event, failed to allege facts indicating Defendant discriminated against him because he was disabled. (*Id.* at 5). Magistrate Judge Stewart further noted the medical records Plaintiff attached to the Complaint showed that the delay was caused by Plaintiff, not Defendant. (*Id.* (noting it "was Plaintiff's own lack of follow through that resulted in a delay in his treatment" (citing Dkt. No. 2, at 13))). Magistrate Judge Stewart therefore concluded that as Plaintiff failed to plead a "nexus between the disabilities alleged and the purported delay in service" he "failed to allege discrimination in treatment sufficient to pursue either claim." (*Id.*). Finally, Magistrate Judge Stewart recommended the dismissal of Plaintiff's ADA claims "since he seeks only monetary damages, and a Title III ADA claim" only permits injunctive relief. (*Id.* at 6).

## IV. DISCUSSION

### A. Objections to the Report-Recommendation

Plaintiff has not raised any objections to the legal framework set forth in the Report-Recommendation. (*See* Dkt. No. 16). The Court therefore adopts Magistrate Judge Stewart's summary of the applicable law and presumes familiarity with that matter for the purposes of this decision.

### 1. "Summary of the Complaint"

Plaintiff objects to the Report-Recommendation's "Summary of the Complaint," arguing that the Summary "shows a reckless bias." (*Id.* at 2). Specifically, he objects to Magistrate Judge Stewart's statement that Plaintiff's "medical records indicate that he did not schedule follow-up appointments." (*Id.* at 3 (quoting Dkt. No. 14, at 4)). Construing Plaintiff's objection to raise the strongest

argument it suggests, *see Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006),* Plaintiff appears to argue that Magistrate Judge Stewart impermissibly relied on the medical records attached to the Complaint and violated the requirement that all plausible inferences be drawn in Plaintiff's favor by inferring from the records that Plaintiff did not schedule follow-up appointments.

At the pleadings stage, "the Court 'may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.' " *Endemann v. Liberty Ins. Corp., 390 F. Supp. 3d 362, 369–70 (N.D.N.Y. 2019)* (quoting *DiFolco v. MSNBC Cable L.L.C.,* 662 F.3d 104, 111 (2d Cir. 2010)). Upon reviewing the Report-Recommendation's Summary *de novo,* the Court finds that the Summary accurately summarizes the facts as alleged in the Complaint and in the accompanying medical records. With respect to follow-up appointments, the "Physical Therapy Discharge Summary," dated April 27, 2022, states that Plaintiff "has not been seen since his evaluation on 2/28. Since he has not attempted to schedule additional appointments he is being discharged on this date." (Dkt. No. 2, at 13). This statement is correctly reflected by the Report-Recommendation's description that the "medical records indicate [Plaintiff] did not schedule follow-up appointments." (Dkt. No. 14, at 4).

According, the Court adopts the Summary of the Complaint as stated in the Report-Recommendation.

### 2. ADA and Rehabilitation Act Claims

Plaintiff objects to Magistrate Judge Stewart's recommendation that his Title III ADA and Rehabilitation Act claims be dismissed. (Dkt. No. 16, at 3–5). First, he argues that the Report-Recommendation erroneously found that Plaintiff has not claimed "that he was denied service outright," because "[i]t can be liberally construed that Plaintiff's complaint outlines that he did not receive physical therapy for the physical injuries that treatment was sought [sic] for." (*Id.* (quoting Dkt. No. 14, at 4 n.2)). Second, Plaintiff objects to Magistrate Judge Stewart's finding that Plaintiff's factual "allegation that Defendant forced Plaintiff to undergo the intake procedure a second time for financial reasons" was "conclusory" and "insufficient to state a claim" because "Defendant's goal was to use Plaintiff's mental impairments against him for monetary incentives while ultimately denying [him] the care he

seeked [sic]" and that "[t]hese decisions were made because Plaintiff suffered from mental impairments." (*Id.* at 3 (quoting Dkt. No. 14, at 5)). Third, Plaintiff objects to the statement in the Report-Recommendation that the medical records "not[ed] that Plaintiff had not attempted to schedule appointments following consultation"; Plaintiff asserts that he "absolutely attempted to schedule appointments following initial consultations" and that "[i]nstead of providing physical therapy after Plaintiff's initial evaluation, Defendant milked Plaintiff's insurance and ultimately did not treat Plaintiff." (*Id.* at 4 (quoting Dkt. No. 14, at 5)). Fourth, Plaintiff objects to the Report-Recommendation's determination that he failed to plead a "nexus between the disabilities alleged and the reported delay in service," arguing that he "outlined the disabilities and never being treated by Adirondack Health for the injuries possessed within the original complaint." (*Id.* (quoting Dkt. No. 14, at 5)).

**\*3** Each of these objections fail. Magistrate Judge Stewart correctly considered the medical records Plaintiff attached to the Complaint in evaluating Plaintiff's claims. *See Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 176 n.7 (E.D.N.Y. 2015) (explaining that when "the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." (quoting *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994)), *aff'd* F.3d 1458 (2d Cir.) (table decision)).

However, even setting the medical records aside, the Complaint itself fails to allege facts showing that Defendant discriminated against him based on a disability by delaying or denying physical therapy services, or in requiring that Plaintiff obtain "new referrals and evaluations ... to begin physical therapy." (Dkt. No. 1, ¶ 24); *see Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 387 (E.D.N.Y. 2017) ("To state a claim under Title III ... [a plaintiff] must allege (1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." (quoting *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008))). There are no facts alleged in the Complaint that would allow a plausible inference that Defendant denied Plaintiff treatment or that any action or inaction by Defendant was based on Plaintiff's disability. Indeed, as Magistrate Judge Stewart observed, Plaintiff's allegations are conclusory. (Dkt. No. 14, at 5). Plaintiff alleges for example, "[i]nstead of receiving proper

treatment, Plaintiff's disability was used to take advantage of Plaintiff financially while Defendant denied treatment." (Dkt. No. 1, ¶ 46). Such an allegation by itself cannot plausibly suggest disability discrimination. *See Doe v. NYSARC Trust Serv., Inc.*, No. 20-cv-801, 2020 WL 5757478, at \*6, 2020 U.S. Dist. LEXIS 177574 (N.D.N.Y. Sept. 28, 2020), *report and recommendation adopted*, 2020 WL 7040982, 2020 U.S. Dist. LEXIS 224184 (N.D.N.Y. Dec. 1, 2020) (finding Plaintiff's allegations that rather than working with Plaintiff to find an accommodation, Plaintiff was barred from Defendant's premises "solely because of his schizophrenia and mild mental retardation" to be "wholly conclusory" and recommending the claim be dismissed). Plaintiff has not alleged that the policy itself is discriminatory against those with disabilities. *See Aiken v. Nixon*, 236 F. Supp. 2d 211, 225 (N.D.N.Y. 2002) (finding allegations of discrimination "insufficient" to defeat a motion to dismiss where "Plaintiffs do not allege that any individual has been denied any benefit or service on the basis of a disability. Rather ... in their claims for injunctive relief, plaintiffs challenge a general state policy that is applicable to all who enter ... and plaintiffs do not allege that this policy differentiates in its applicability based upon a disability."). Nor has Plaintiff alleged facts suggesting the "policies and procedures were applied in a discriminatory way." *See Andersen v. North Shore Long Island Jewish Healthcare Sys.'s Zucker Hillside Hosp.*, No. 12-cv-1049, 2013 WL 784391, at \*10, 2013 U.S. Dist. LEXIS 29972 (E.D.N.Y. Jan. 23, 2013), *report and recommendation adopted as modified*, 2013 WL 784344, 2013 U.S. Dist. LEXIS 28602 (E.D.N.Y. Mar. 1, 2013). Thus, Plaintiff's objections are without merit.

**\*4** Finally, Plaintiff objects to the Report-Recommendation's assessment that "the complaint should be dismissed 'since [Plaintiff] seeks only monetary damages" as both "erroneous" and "contrary to law." (Dkt. No. 16, at 4 (quoting Dkt. No. 14, at 6)). However, "[i]t is well established that Title III of the ADA allows only for injunctive relief, not monetary damages." *Bacon v. Walgreen Co.*, 91 F. Supp. 3d 446, 451 (E.D.N.Y. 2015) (citing *Brief v. Albert Einstein College of Medicine*, 423 F. App'x 88, 90 (2d Cir. 2011)). Despite his objection, Plaintiff did not assert in his Complaint (nor does he assert now) that he is seeking any form of injunctive relief. (*See* Dkt. No. 1, ¶¶ 67, 69 (asserting that he seeks "[a]ctual [d]amages," "[c]ompensatory damages," "[p]unitive or exemplary damages," "[c]osts of [c]ourt," "[p]rejudgment and postjudgment interest," "[u]nliquidated damages," and "all over relief to which Plaintiff is justly entitled."); Dkt. No. 16, at 4).

Accordingly, the Court agrees with the Report-Recommendation that Plaintiff's ADA and Rehabilitation Act claims should be dismissed with leave to amend.

## V. Appeals of Magistrate Judge Decisions

Plaintiff also appeals the Magistrate Judge's decisions to: (1) deny Plaintiff's requests to issue summonses; and (2) deny Plaintiff's motion to make his medical records publicly available. (Dkt. Nos. 15, 16). The Court finds that neither decision is "clearly erroneous or contrary to law." *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

### A. Denial of Request to Issue Summons

On January 23, 2024, Plaintiff filed a letter motion requesting the issuance of a proposed summons pursuant to Rule 4(b) of the Federal Rules of Civil Procedure. (Dkt. No. 7). Plaintiff asserted that the summons should be issued as the Complaint had been filed and "[t]he summons have [sic] been properly completed and presented to this Court," arguing that "[t]he pending Motion for Leave in Forma Pauperis in this matter does not impact the issuance of a summons." (*Id.* at 1). In an Order entered on January 25, 2024 ("January Order"), Magistrate Judge Stewart denied Plaintiff's request as premature" because the Court had not yet ruled on Plaintiff's motion for IFP status or completed an "initial review of the Complaint[ ] pursuant to 28 U.S.C. § 1915." (Dkt. No. 9, at 3). Magistrate Judge Stewart explained that for purposes of Rule 4(b), a complaint is considered filed "when IFP status is granted or the appropriate filing fee is paid, rather than at the time a complaint is delivered to the clerk of a court." (*Id.*) (quoting *Truitt v. Cnty. Of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)). Plaintiff appeals this decision on the grounds that refusing to issue the summons violates Rule 4 and constitutes unequal treatment under the Fifth Amendment. (Dkt. No. 15, at 1–4).

Here, the Magistrate Judge correctly applied the law. Courts in the Second Circuit have found that a "[p]laintiff's action was not properly filed until this Court granted his IFP application." *Perkins v. Napoli*, No. 8-cv-6248, 2012 WL 5464607, at *3, 2012 U.S. Dist. LEXIS 160534 (W.D.N.Y. Nov. 8, 2012) (citing *Romand v. Zimmerman*, 881 F. Supp. 806, 809 (N.D.N.Y. 1995)). Therefore, as Plaintiff's IFP application was still pending at the time Plaintiff requested the issuance of the summonses and the filing fee had not been paid, Magistrate Judge Stewart's finding that Plaintiff's Complaint had not yet been filed for purposes of Rule

4(b) was neither clearly erroneous nor contrary to law. Furthermore, treating litigants differently based on IFP status does not implicate a suspect class, and thus does not constitute a Fifth Amendment violation. *See Dicara v. Conn. Educ. Dep't*, No. 8-cv-627, 2008 WL 5083622, at *2, 2008 U.S. Dist. LEXIS 96372 (D. Conn. Nov. 26, 2008) ("[P]overty is not a suspect classification for the purposes of equal protection analysis." (citations omitted)). Plaintiff's appeal of the January Order is therefore denied.

### B. Denial of Motion to Make Medical Records Public

**\*5** Plaintiff filed a motion to make the medical records that he filed public on January 10, 2024, stating that he "intended to make all exhibits publicly accessible." (Dkt. No. 5). Along with his Report-Recommendation, Magistrate Judge Stewart rejected Plaintiff's motion in an Order ("February Order"), explaining that "[p]ursuant to General Order 22 of the Northern District medical records in any case are filed on the Court's docket in a manner that restricts public access" and that "Plaintiff's stated desire to have his medical records more readily available is not a basis for departing from this Court's standard practice." (Dkt. No. 14, at 6–7). Plaintiff has characterized the February Order as "illogical" and claims "that he has irresponsibly shielded [the records] from the public." (Dkt. No. 16, at 2–3). Magistrate Judge Stewart accurately stated the applicable rule, and his decision is neither erroneous nor contrary to law. Plaintiff's appeal of the February Order is therefore denied.

## VI. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Stewart's Report-Recommendation (Dkt. No. 14) is **ADOPTED**; and it is further;

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** with leave to amend; and it is further;

**ORDERED** that any amended complaint must be filed **within thirty (30) days** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in total; and it is further;

**ORDERED** that if Plaintiff files a timely amended complaint, it shall be referred to Magistrate Judge Stewart for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case; and it is further;

**ORDERED** that Plaintiff's appeal (Dkt. No. 15) of the January Order (Dkt. No. 9) is **DENIED** in its entirety; and it is further;

**ORDERED** that Plaintiff's appeal (Dkt. No. 16) of the Order (Dkt. No. 14) denying his motion (Dkt. No. 5) to make medical records publicly available is **DENIED** in its entirety; and it is further;

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 1652458

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 48 of 105

2022 WL 2341420
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,

v.

Dr. Mary O'CONNOR, Defendants.

1:22-cv-581 (DNH/TWD)
|
Signed June 29, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, pro se, 757 Taborton
Road, Sand Lake, NY 12153.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** Alisha Clark Walker ("Plaintiff") initiated this action
*pro se* on June 2, 2022, claiming Dr. Mary O'Connor
("Defendant") violated 42 U.S.C. § 1983 and § 1985. (Dkt.
No. 1.) Plaintiff simultaneously moved to proceed *in forma
pauperis* ("IFP"). (Dkt. No. 2.) Having reviewed Plaintiff's
motion to proceed IFP, the undersigned GRANTS the motion
for purposes of this review. *See id.* The undersigned now
considers the sufficiency of the allegations set forth in the
Complaint under 28 U.S.C. § 1915(e). For the reasons
discussed below, the undersigned recommends that the Court
dismiss Plaintiff's Complaint in its entirety with leave to
amend. (Dkt. No. 1.)

## I. SUMMARY OF THE COMPLAINT [1]

[1] The following recitation of facts is drawn from
the Complaint, which the Court accepts as true for
purposes of initial review. *See, e.g., LaTouche v.
Rockland County*, No. 22-CV-1437 (LTS), 2022
WL 953111, at \*1 (S.D.N.Y. Mar. 29, 2022);
*Walker v. City of New York*, No. 20-CV-5240 (PKC)
(LB), 2021 WL 1838277, at \*1 n.1 (E.D.N.Y. May
7, 2021).

This is the second of two actions Plaintiff initiated against
various individuals stemming from a child custody dispute in

New York State Family Court. (*See* Dkt. No. 1; *see also* Case
No. 1:22-cv-560, Dkt. No. 1.) In the first (hereinafter, "*Walker
I*"), Plaintiff claimed several New York State Family Court
Judges, two private attorneys, and the Averill Park School
District violated her First and Fourteenth Amendment rights.
(Case No. 1:22-cv-560, Dkt. No. 1.) In this case, Plaintiff
restates and reasserts many of the same claims against Dr.
Mary O'Connor, a private individual ordered by the New State
Family Court to render forensic psychological evaluations in
the underlying custody dispute. (*See* Dkt. No. 1 at 1-2, 8.)
Here, as in *Walker I*, Plaintiff invokes this Court's jurisdiction
under 28 U.S.C. § 1331 and § 1343, purporting to advance
several causes of action under 42 U.S.C. § 1983 and § 1985.
(Dkt. No. 1 at 4.)

Plaintiff claims "the policies, practices, procedures, and
standards established and/or maintained by Defendant/s [sic]
violate the Right to Free speech under the First Amendment,
and the Due Process and Equal Protection clauses of the
Fourteenth Amendment to the U.S. Constitution." *Id.* at
4. Plaintiff accordingly recycles many of the same claims
against Dr. O'Connor that she asserted against the Defendants
in *Walker I. See id.* at 9-31. Through the first cause of action,
Plaintiff claims Dr. O'Connor "religiously discriminated
against" her in violation of the First Amendment. *Id.* at 9.
In her second cause of action, Plaintiff claims Dr. O'Connor
retaliated against her in violation of the First Amendment.
*Id.* at 10. By her third cause of action, Plaintiff claims
Dr. O'Connor "deprived [her] of the rights of a mother to
her children and due process and freedom of speech" in
violation of the First and Fourteenth Amendments. *Id.* at
12-13. Through her fourth cause of action, Plaintiff claims
Dr. O'Connor discriminated against her. *Id.* at 14-19. In her
fifth cause of action, Plaintiff claims Dr. O'Connor used her
position to "maliciously intentionally harm and pain on the
Plaintiff." *Id.* at 20. By her sixth and final cause of
action, Plaintiff claims Dr. O'Connor engaged in sex bias
discrimination. *Id.* at 25.

## II. STANDARD OF REVIEW

**\*2** This Court must conduct an initial review of complaints
filed *in forma pauperis*, and "complaints in which a prisoner
seeks redress from a governmental entity or officer or
employee of a governmental entity." 28 U.S.C. § 1915(e)(2)
(B) (governing complaints filed *in forma pauperis*); 28 U.S.C.
§ 1915A (governing complaints filed by prisoners against
the government). When reviewing these types of complaints,
this Court must "identify cognizable claims or dismiss the
complaint, or any portion of the complaint, if the complaint ...

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *see also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021) (applying Section 1915(e)(2)(B)); *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (applying Section 1915A). [2]

> [2]    Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

This Court must exercise caution when determining whether to *sua sponte* dismiss a *pro se* complaint on the grounds that it is frivolous. *See Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

When undertaking this initial review, the Court must construe *pro se* pleadings with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III. SUFFICIENCY OF THE COMPLAINT

**\*3** Plaintiff's Complaint should be dismissed because it fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). Moreover, just like *Walker I*, Plaintiff's claims are likely barred by either the *Younger* abstention or the *Rooker-Feldman* doctrine.

#### A. Plaintiff's Section 1983 Claims

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [3] Plaintiff purports to bring this action against Dr. O'Connor, a court-appointed forensic psychologist, under 42 U.S.C. § 1983. (*See* Dkt. No. 1 at 3-4.) "To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). "[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013). A conclusory allegation that a private individual acted in concert with a state actor does not constitute a plausible allegation that the private individual acted under color of state law. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see, e.g.*, *Asensio v. DiFiore*, No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) (concluding the plaintiff's "conclusory allegations" of conspiracy were "plainly insufficient to support a finding that [the defendant] has acted under color of state law."); *Bornschein v. Herman*, 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018) (same).

> [3]    Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 50 of 105

§ 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 9-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1983. *See Sealed Plaintiff*, 537 F.3d at 191.

Plaintiff's Section 1983 claims against Dr. O'Connor are inadequately pled because she failed to allege Dr. O'Connor acted under color of state law. *See* 42 U.S.C. § 1983; *Velez*, 401 F.3d at 84. Plaintiff's conclusory allegations that Dr. O'Connor acted in concert with state actors do not plausibly allege that Dr. O'Connor acted under color of state law. *See Asensio*, 2019 WL 4392743, at *8; *Bornschein*, 304 F. Supp. 3d at 301. Similarly, Plaintiff's allegation that Dr. O'Connor was ordered by the court to issue a forensic evaluation does not give rise to the reasonable inference that she was acting under color of state law. *See, e.g., Markham v. Rosenbaum*, No. 20-CV-6039-FPG, 2020 WL 3316099, at *9 (W.D.N.Y. June 18, 2020), *appeal dismissed*, No. 20-2223, 2021 WL 3027159 (2d Cir. May 13, 2021) (concluding a court-appointed psychologist was not a state actor for purposes of a claim brought pursuant to 42 U.S.C. § 1983 arising out of child custody dispute); *Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (same); *see generally Estiverne v. Esernio-Jensen*, 910 F. Supp. 434, 444 (E.D.N.Y. 2012) ("Dr. Jenssen's cooperation in the [Administration for Children's Services] investigation, by providing medical information and opinion, does not transform her into a state actor."). The undersigned accordingly recommends that the Court dismiss all claims asserted under 42 U.S.C. § 1983 on the grounds that Plaintiff failed to adequately allege Dr. O'Connor acted under color of state law. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**\*4** Moreover, Plaintiff has failed to adequately allege Dr. O'Connor violated one of her federal rights. *See* 42 U.S.C. § 1983; *see also Velez*, 401 F.3d at 84. Plaintiff repeatedly claims Dr. O'Connor violated her First and Fourteenth Amendment rights. (*See* Dkt. No. 1 at 4, 9-31.) Yet, Plaintiff failed to support this general claim with sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor's conduct amounted to *an actual violation* of her First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. Because Plaintiff failed to plausibly allege that Dr. O'Connor violated one or more of her federal rights, the undersigned recommends that the Court dismiss every cause of action Plaintiff asserts under Section 1983 for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see, e.g., Perez v. Colon*, No. 9:19-CV-0722 (BKS), 2019 WL

5102612, at *6 (N.D.N.Y. Oct. 11, 2019) ("In the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him/her."); *Hamilton v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD), 2019 WL 2352981, at *7 (N.D.N.Y. June 4, 2019) (same).

**B. Plaintiff's Section 1985 Claims**

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1985. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).[4] To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007); *see also DeRouseau*, 2022 WL 1747859, at *3. Further, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc.*, 507 F.3d at 791. "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *DeRouseau*, 2022 WL 1747859, at *3; *see, e.g., Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail."); *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 340 (E.D.N.Y. 2010), *aff'd*, 417 F. App'x 96 (2d Cir. 2011) (concluding the § 1985 conspiracy claim failed because "Plaintiff has provided only conclusory, vague and unsupported allegations ... as a basis for asking the Court to find the existence of a conspiracy."). Moreover, a § 1985 conspiracy claim fails as a matter of law where there is no underlying constitutional violation. *See, e.g., Oliver v. Penny*, No. 21-111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (concluding plaintiff's § 1985 conspiracy claim "failed because she did not plausibly allege an underlying constitutional violation"); *Tirse v. Gilbo*, No. 6:15-CV-0987

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

Case 1:24-cv-00376-BKS-TWD   Document 4   Filed 05/10/24   Page 51 of 105

(GTS) (ATB), 2016 WL 4046780, at *18 (N.D.N.Y. July 27, 2016) ("Because the Court has found that Plaintiff has failed to allege facts plausibly suggesting a conspiracy and/or an underlying constitutional violation, Plaintiff's § 1985 claim is likewise dismissed.").

4       Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (See generally Dkt. No. 1 at 9-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1985. *See Sealed Plaintiff*, 537 F.3d at 191.

*5 Here, Plaintiff failed to advance any non-conclusory factual allegations suggesting Dr. O'Connor targeted and discriminated against her on the basis of sex. (See generally Dkt. No. 1; see, e.g., Doe v. Fenchel, 837 F. App'x 67, 68 (2d Cir. 2021) (concluding plaintiff failed to plead any facts in support of the "conclusory allegations" that defendants "targeted him and discriminated against him based on his race, color, gender, sex, veteran status, disability status, and so forth.").) Although Plaintiff alleges Dr. O'Connor "acted in malice with bias" and "routinely engag[ed] in sex bias and discrimination," she fails to advance any factual allegations to support this conclusory statement. (See Dkt. No. 1 at 5, 25.) "Such naked assertions devoid of further factual enhancement are insufficient to give rise to a plausible entitlement to relief." *Doe*, 837 F. App'x at 68.

Plaintiff also failed to adequately allege Dr. O'Connor conspired with other individuals to engage in unlawful conduct against her. (See generally Dkt. No. 1 at 13-14.) Plaintiff advanced the general allegation that Dr. O'Connor acted in concert with others during the custody dispute before the New York State Family Court, but advanced no factual allegations indicating that Dr. O'Connor agreed to engage in *unlawful conduct* against her. *See id.* As explained above, the Complaint lacks sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor violated Plaintiff's First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. The general allegation that Dr. O'Connor acted in concert with others, without more, does not give rise to the inference that she agreed to engage in *unlawful conduct* against Plaintiff. *See, e.g., Webb*, 340 F.3d at 110-11; *Alston v. Sebelius*, No. 13-CV-4537 (SJF) (ARL), 2014 WL 4374644, at *18 (E.D.N.Y. Sept. 2, 2014); *Morpurgo*, 697 F. Supp. 2d at 340.

Finally, Plaintiff failed to allege facts plausibly suggesting an underlying constitutional violation. (See generally Dkt. No. 1 at 9-31; see, e.g., Tirse, 2016 WL 4046780, at *18 (dismissing a § 1985 conspiracy claim because "Plaintiff has failed to allege facts plausibly suggesting ... an underlying constitutional violation".).) Plaintiff alleged in conclusory fashion that Dr. O'Connor violated her First and Fourteenth Amendment rights, but her Complaint lacks factual allegations to support this claim. (See generally Dkt. No. 1 at 4, 6, 9-31.) Those conclusory allegations fail to plausibly allege a constitutional violation. *See id.*; *see also Iqbal*, 556 U.S. at 678. Plaintiff has accordingly failed to state a claim for relief under 42 U.S.C. § 1985(3). *See, e.g., Oliver*, 2022 WL 2165814, at *3; *Tirse*, 2016 WL 4046780, at *18; *Alston*, 2014 WL 4374644, at *18. The undersigned therefore recommends that the Court dismiss every cause of action Plaintiff asserts under 42 U.S.C. § 1985(3) for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).[5]

5       The undersigned notes that, nested within Plaintiff's third cause of action, she purports to assert a "civil rights action brought pursuant to Title VII of the Civil Rights Act of 1964." (Dkt. No. 1 at 4, 14.) That claim fails, however, because Plaintiff did not allege she is or was an employee of Dr. O'Connor, and she did not allege any employment discrimination. *See, e.g., Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022) (dismissing plaintiff's Title VII claim as frivolous because she did not "allege employment discrimination or that she is or was an employee of Judge McGinty") (collecting cases).

**C. Jurisdiction**

Although the nature of Plaintiff's Complaint makes it difficult to precisely determine which doctrines apply, her claims are likely barred by *Younger* abstention and/or the *Rooker-Feldman* doctrine. (See Dkt. No. 1; see, e.g., *Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *10-11 (N.D.N.Y. Jan. 26, 2022) (concluding plaintiff's claims, which stemmed from an underlying New York State Family Court custody dispute, were likely barred by *Younger* abstention and the *Rooker-Feldman* doctrine).)

*6 First, in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971); *see, e.g., Amato*, 2022 WL

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 52 of 105

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420

226798, at \*11. In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73; *see also id.* ("This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions ... or that implicate a State's interest in enforcing the orders and judgments of its courts").

Here, Plaintiff seeks injunctive relief from a child custody dispute before New York State Family Court. (Dkt. No. 1 at 1-2, 32.) "[I]t is well-settled that a custody dispute raises important state interests." *Stumpf v. Maywalt*, No. 21-CV-06248 (EAW), 2022 WL 2062613, at \*3 (W.D.N.Y. June 6, 2022) (collecting cases); *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459 (PKC), 2015 WL 1120120, at \*3 (E.D.N.Y. Mar. 12, 2015). Accordingly, to the extent the custody dispute is continuing in New York State Family Court, this Court should abstain from interfering with that process. *See, e.g.*, *Stumpf*, 2022 WL 2062613, at \*3 (applying *Younger* abstention in an action stemming from an ongoing child custody dispute); *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK) (CFH), 2020 WL 3503158, at \*4 (N.D.N.Y. June 29, 2020) (applying *Younger* abstention in an action seeking declaratory relief over a child custody dispute); *Graham*, 2015 WL 1120120, at \*3 (applying *Younger* abstention in an action seeking injunctive relief over a child custody dispute); *Rhee-Karn v. Burnett*, No. 13 CIV. 6132 (JPO), 2014 WL 4494126, at \*7 (S.D.N.Y. Sept. 12, 2014) (applying *Younger* abstention in an action seeking declaratory and injunctive relief over a child custody dispute).

Second, in the event the relevant underlying state court proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine. *See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker–Feldman* bars Phifer's challenges to the family court's decisions regarding custody, neglect, and visitation."); *Fernandez v. Turetsky*, No. 1 2-CV-4092 (SLT) (MDG), 2014 WL 5823116, at \*4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases).

"The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015). The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Dorce*, 2 F.4th 82, 101; *Sykes*, 780 F.3d at 94.

Here, it appears Plaintiff "lost" in New York State Family Court, complains of injuries caused by that court's judgments, and asks this Court to invalidate those judgments on the grounds that they violated her due process rights. (*See* Dkt. No. 1 at 32 (requesting an "injunction barring Defendant from continuing their [sic] illegal acts," and a "permanent restraining order to be placed on the defendant [sic]").) Thus, as currently drafted, Plaintiff's Complaint is likely barred under the *Rooker-Feldman* doctrine. *See, e.g.*, *Phifer*, 289 F.3d at 57; *Stumpf*, 2022 WL 2062613, at \*4 n.4; *Amato*, 2022 WL 226798, at \*10; *Fernandez*, 2014 WL 5823116, at \*4.

**IV. CONCLUSION**

\*7 For the foregoing reasons, the undersigned recommends that the Court dismiss Plaintiff's Complaint with leave to amend. (Dkt. No. 1.)

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to

**Walker v. O'Connor, Not Reported in Fed. Supp. (2022)**

2022 WL 2341420

the foregoing report.[6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

---

[6]   If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2341420

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2805462
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,

v.

Dr. Mary O'CONNOR, Defendant.

1:22-CV-581
|
Signed July 18, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, Pro Se, 757 Taborton Road, Sand Lake, NY 12153.

**ORDER ON REPORT & RECOMMENDATION**

DAVID N. HURD, United States District Judge

**\*1** On June 2, 2022, *pro se* plaintiff Alisha Clark Walker ("plaintiff") filed this action alleging that defendant, a private individual ordered by a state court to render forensic psychological evaluations in an underlying child custody dispute, discriminated against her. Dkt. No. 1. Along with her complaint, plaintiff sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On June 29, 2022, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application for the purpose of an initial review and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave

to amend. Dkt. No. 4. Although Judge Dancks observed that plaintiff's claims were almost certainly barred by various jurisdictional or immunity principles, in light of plaintiff's *pro se* status Judge Dancks concluded that plaintiff should be given an opportunity to amend. *Id.*

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon review for clear error, the R&R will be accepted and adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty days from the date of this Order in which to amend her pleading in accordance with the instructions set forth in Judge Dancks's Report & Recommendation and this Order; and

4. If plaintiff does not file an amended complaint within this thirty-day period, the Clerk of the Court shall enter a judgment accordingly and close the file without further Order of this Court.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2805462

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Oliver v. Penny, Not Reported in Fed. Rptr. (2022)

2022 WL 2165814

2022 WL 2165814
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Jean C. OLIVER, Plaintiff-Appellant,

v.

Daniel PENNY, in his individual and official
capacity, Thomas Capezza, in his individual and
official capacity, Clay Lodovice, in his individual
and official capacity, John Hartford, in his individual
and official capacity, Michael Volforte, in his
individual and official capacity, Lois Goland, in his
individual and official capacity, Jason Hughes, in his
individual and official capacity, Defendants-Appellees,
New York State Police, Francis Christensen, in
his individual and official capacity, Defendants.

21-111
|
June 16, 2022

Appeal from a judgment of the United States District Court
for the Northern District of New York (Sannes, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Jean C. Oliver, pro se,
Elma, NY.

FOR DEFENDANT-APPELLEE: Barbara D. Underwood,
Solicitor General, Victor Paladino, Senior Assistant Solicitor
General, Laura Etlinger, Assistant Solicitor General, for
Letitia James, Attorney General of the State of New York,
Albany, NY.

PRESENT: PIERRE N. LEVAL, STEVEN J. MENASHI,
BETH ROBINSON, Circuit Judges.

**SUMMARY ORDER**

**\*1** In 2015, Appellant Jean Oliver sued the New York State
Police ("NYSP") and ten of its employees under Title VII,
the Rehabilitation Act, and 42 U.S.C. §§ 1983, 1985, and
1986 (hereinafter referred to as "*Oliver 2015*"). She generally

alleged that she was discriminated against based on her sex
and perceived disability, harassed, and ultimately fired from
her position as an investigator with the NYSP. In 2017, while
proceeding pro se, she commenced a substantially identical
lawsuit against the NYSP and seven of its employees and
agents ("*Oliver 2017*"), with the exception that she also
alleged a First Amendment retaliation claim. The district
court dismissed the second amended complaint in the 2017
action, reasoning that *Oliver 2017* was largely duplicative
of *Oliver 2015* and that Oliver otherwise failed to state a
claim for relief. We assume the parties' familiarity with the
underlying facts, the procedural history of the case, and the
issues on appeal.

"We review *de novo* a district court's dismissal of a complaint
pursuant to Rule 12(b)(6), construing the complaint liberally,
accepting all factual allegations in the complaint as true, and
drawing all reasonable inferences in the plaintiff's favor."
*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.
2002). We review for abuse of discretion a district court's
decision to stay or dismiss a lawsuit as duplicative of another
federal suit. *Sacerdote v. Cammack Larhette Advisors, LLC*,
939 F.3d 498, 507 (2d Cir. 2019).

**I. Duplicative Litigation**
The district court did not abuse its discretion by concluding
that Oliver's claims under the Equal Protection Clause for
sex discrimination, hostile work environment, and retaliation
were barred as duplicative of *Oliver 2015*. "As part of its
general power to administer its docket, a district court may
stay or dismiss a suit that is duplicative of another federal
court suit." *Id.* at 504 (internal quotation marks omitted). In
order to dismiss a pending suit as duplicative, "[t]here must
be the same parties, or, at least, such as represent the same
interests; there must be the same rights asserted and the same
relief prayed for; the relief must be founded upon the same
facts, and the title, or essential basis, of the relief sought must
be the same." *Id.* (internal quotation marks omitted; alteration
in original). We apply the general principles of res judicata to
duplicative lawsuits. *Id.* The main difference is that the rule
against duplicative lawsuits "can only be raised to bar one of
two suits that are both still pending[.]" *Id.* at 505.

The facts and legal claims asserted in *Oliver 2015* were
largely the same as the facts and legal claims asserted in
*Oliver 2017*. Both suits involved the same series of events
concerning Oliver's sexual harassment reports, disciplinary
charges, and eventual dismissal from the NYSP. The claims
are generally identical. Oliver raised sex discrimination,

2022 WL 2165814

hostile work environment, retaliation, conspiracy, and failure to prevent conspiracy claims in both lawsuits. Finally, the relief sought in both lawsuits was the same: Oliver sought reinstatement and monetary damages in both *Oliver 2015* and *Oliver 2017.*

**\*2** The rule against duplicative litigation requires that the parties in the two lawsuits be the same or in privity with one another. *See Sacerdote*, 939 F.3d at 504. Oliver does not challenge on appeal the conclusion that there is privity between the *Oliver 2015* and *Oliver 2017* defendants and therefore waives the issue. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995). Nevertheless, there is privity between the defendants in both suits. Although Oliver sued different individual defendants in her 2017 lawsuit, those defendants represent the same interests as the individuals named in *Oliver 2015.* The *Oliver 2015* defendants consisted of the NYSP, several of its officers, and Oliver's former supervisors. The *Oliver 2017* defendants included the NYSP, two supervisors (Francis Christensen and Daniel Penny), and legal counsel to the NYSP. Two of the defendants overlap between the two lawsuits (NYSP and Christensen). The remainder share the "same interests." *Sacerdote*, 939 F.3d at 504. Employee defendants have a sufficiently close relationship with other employees when their challenged actions in both lawsuits consist of acts in their official capacities on behalf of their employer. *See Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (concluding that the defendant was in privity with defendants in an earlier lawsuit where they all represented the same company within the scope of their employment). The majority of the individual defendants in *Oliver 2017* acted as counsel to the NYSP during the events described in the lawsuits and therefore represented the interests of the NYSP and its employees. *See id.* (concluding that the defendant was in privity with other employee defendants because he was acting as company's chief legal officer during the events leading to the lawsuit).

Two of the defendants in *Oliver 2017*, Clay Lodovice and Michael Volforte, were not employees of the NYSP but of the Governor's Office of Employee Relations. However, they represented the same interests as the other *Oliver 2017* defendants, that of the NYSP, by appearing on NYSP's behalf —as its "designated representative[s]," *Cho*, 991 F.3d at 169—in the proceedings of the Public Employment Relations Board (Lodovice) and by allegedly continuing to withhold copies of Oliver's grievances from the Administrative Law Judge in those proceedings (Volforte). Because their interests were aligned with the NYSP, they were sufficiently in privity

with the *Oliver 2015* defendants. *See John St. Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 283 F.3d 73, 74, 75 (2d Cir. 2002) (per curiam) (concluding that the defendants were in privity with the defendants in a prior suit because they acted within the "scope of their agency").

In sum, Oliver duplicated the majority of her *Oliver 2015* claims in her 2017 lawsuit. The district court did not abuse its discretion by dismissing Oliver's sex discrimination, hostile work environment, and retaliation claims under the Equal Protection Clause as duplicative of *Oliver 2015.* [1]

[1] In her 2017 complaint, Oliver appears to detail an "[i]llegal search and seizure ... under the [Fourth] Amendment" that allegedly occurred immediately after her termination. It is unclear whether these allegations are intended to advance a freestanding Fourth Amendment claim. The district court did not consider such a claim, and this order does not preclude Oliver from asserting a claim based on these allegations in the future. We express no opinion as to whether such a claim would be barred by res judicata.

## II. First Amendment Retaliation

To the extent that Oliver's complaint can be construed as raising a First Amendment retaliation claim, Oliver failed to state a claim for relief. To establish a First Amendment retaliation claim under § 1983, "a plaintiff must show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (internal quotation marks omitted). When the speaker is a public employee, her speech is protected when it involves a matter of public concern and she is speaking as a private citizen. *Lynch v. Ackley*, 811 F.3d 569, 578 (2d Cir. 2016).

Oliver argues that she engaged in protected speech by reporting sex discrimination and harassment and was retaliated against for doing so. But personal grievances, such as discrimination complaints, are not matters of public concern and are "not brought within the protection of the First Amendment" simply because the grievances "could be construed broadly to implicate matters of public concern." *Ruotolo v. City of New York*, 514 F.3d 184, 190 (2d Cir. 2008) (internal quotation marks omitted). Furthermore, the other allegations of protected speech in Oliver's complaint were too

Oliver v. Penny, Not Reported in Fed. Rptr. (2022)

2022 WL 2165814

vague and conclusory for the district court to determine if they involved matters of public concern. Oliver alleged that she "raised grave matters of public safety, public integrity, public trust, and public concern involving supervisory members and those holding leadership positions within the NYSP." She elaborated that she submitted reports concerning "egregious safety violations, fraudulent narcotics investigations, and the mishandling of [c]onfidential [i]nformants." However, these broad allegations did not contain enough detail to ascertain whether they involved matters of public concern, let alone that Oliver was speaking as a private citizen when she made those reports. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

**\*3** Accordingly, the district court properly dismissed the First Amendment retaliation claim.

### III. Conspiracy and Failure to Prevent Conspiracy
Finally, Oliver asserts that she stated claims for conspiracy under 42 U.S.C. §§ 1983 and 1985 and for failure to prevent a conspiracy under 42 U.S.C. § 1986. But these claims failed because she did not plausibly allege an underlying constitutional violation; the Equal Protection Clause claims were properly dismissed as duplicative of *Oliver 2015* and Oliver failed to state a claim for First Amendment retaliation. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (explaining that a § 1983 conspiracy claim fails if there is no underlying violation); *Great Am. Fed. Saving & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979) (noting that § 1985 "is a purely remedial statute" and requires an underlying violation of a federal right); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (noting that a § 1986 claim "lies only if there is a viable conspiracy claim under section 1985").

We have considered all of Oliver's remaining arguments, which we conclude are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

### All Citations

Not Reported in Fed. Rptr., 2022 WL 2165814

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Mir v. Zucker, Not Reported in Fed. Supp. (2019)

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 58 of 105

2019 WL 5693695

2019 WL 5693695
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jehan Zeb MIR, MD, Plaintiff,

v.

Howard ZUCKER, MD, Current Commissioner,
N.Y. Department of Health, in individual
& official capacity, et al., Defendants.

1:19-CV-6374 (CM)
|
Signed 11/01/2019

**Attorneys and Law Firms**

Jehan Zeb Mir, Redondo Beach, CA, pro se.

ORDER OF DISMISSAL

COLLEEN McMAHON, Chief United States District Judge:

**\*1** Plaintiff Jehan Zeb Mir, of Redondo Beach, California, brings this *pro se* action in which he asserts claims 42 U.S.C. § 1981, § 1983, § 1985, and § 1986.[1] He also asserts claims under state law.[2] He seeks damages and injunctive relief. For the reasons discussed below, the Court dismisses this action but grants Plaintiff leave to replead.

1    Plaintiff has paid the relevant fees to bring this action.

2    Plaintiff asserts state-law claims under the Court's diversity jurisdiction. But because Plaintiff, a citizen of California, sues other citizens of California, the parties are not diverse. *See* 28 U.S.C. § 1332(a)(1). The Court therefore understands Plaintiff's state-law claims as brought under the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).

STANDARD OF REVIEW

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the relevant fees, if it determines that the action is frivolous, *see Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000), or that

the Court lacks subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3), *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). Courts can also dismiss a complaint, or portion thereof, for failure to state a claim on which relief may be granted after giving the plaintiff notice and an opportunity to be heard. *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994). The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

BACKGROUND

Plaintiff is a medical doctor whose California and New York medical licenses have been revoked. He previously brought two *pro se* actions in this Court against California and New York officials arising from the revocation of his medical licenses. In the present action, Plaintiff asserts similar claims and names among the defendants individuals (or their successors) named as defendants in his previous actions.

**A. *Mir v. Shah*, 1:11-CV-5211 ("*Mir I*")**

In 2011, Plaintiff brought a *pro se* action in this Court asserting claims under 42 U.S.C. § 1983 against then-Commissioner of the New York State Department of Health, Nirav R. Shah, and the New York State Board for Professional Medical Conduct ("Board"). He asserted that in an administrative proceeding that began in 2006 for the purpose of deciding whether to revoke his New York medical license, the defendants deprived him of due process of law and equal protection under the law. He also challenged the constitutionality of N.Y. Pub. Health Law § 230(10)(p),[3] claiming that it denies due process of law.

3    This New York statute allows New York officials to conduct disciplinary proceedings for health-care professionals who are licensed in New York and who have been found by another State to have committed, among other transgressions, professional misconduct.

**\*2** On August 8, 2012, Judge Barbara S. Jones granted the defendants' motion to dismiss Plaintiff's claims. *See Mir v. Shah*, No. 11-CV-5211, 2012 WL 3229308 (S.D.N.Y. Aug. 8, 2012).[4] In that action, Plaintiff asked Judge Jones

Mir v. Zucker, Not Reported in Fed. Supp. (2019)

2019 WL 5693695

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 59 of 105

to (1) enjoin enforcement of a 2008 agreement in which Plaintiff agreed to not practice medicine in New York while a New York medical disciplinary proceeding against him was pending, (2) enjoin the defendants from carrying out a proceeding against Plaintiff under N.Y. Pub. Health Law § 230(10)(p), and (3) find § 230(10)(p) unconstitutional. Judge Jones dismissed Plaintiff's claims under the *Younger* abstention doctrine because, at that time, a § 230(10)(p) proceeding was pending against Plaintiff, and because that type of proceeding "provide medical professionals with the due process guaranteed by the Fourteenth Amendment." *Id.* at *2-5.

4    The *Mir I* defendants brought their motion to dismiss under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. *Mir*, 1:15-CV-5211, 17, 19. Judge Jones dismissed *Mir I* under Rule 12(b) (6). *See Mir*, 2012 WL 3229308, at *2.

On December 4, 2012, Judge Jones denied Plaintiff's motion for reconsideration. *See Mir v. Shah*, No. 11-CV-5211, 2012 WL 6097770 (S.D.N.Y. Dec. 4, 2012). Plaintiff appealed. On June 17, 2014, the United States Court of Appeals for the Second Circuit affirmed the judgment and the denial of reconsideration. *See Mir v. Shah*, 569 F. App'x 48 (2d Cir. 2014) (summary order).

**B. *Mir v. Bogan*, 1:13-CV-9172 ("*Mir II*")**

After his California and New York medical licenses had been revoked, Plaintiff brought another *pro se* action in this Court. In *Mir II*, he sued, in their individual capacities, those "individuals who are responsible for conducting disciplinary proceedings involving licensed medical professionals in New York and California ... seeking money damages for claims arising out of the revocation of his license to practice medicine in New York" on or about December 27, 2012. 5 *Mir v. Bogan*, No. 13-CV-9172, 2015 WL 1408891, at *1 (S.D.N.Y. Mar. 26, 2015). On March 26, 2015, Judge Paul G. Gardephe granted the defendants' motions to dismiss. 6 *Id.*

5    Plaintiff filed his original complaint in *Mir II* on December 26, 2013, and his amended complaint in that action on April 21, 2014, after his New York medical license had been revoked on or about December 27, 2012, following the previous revocation of his California medical license.

6    Some of the *Mir II* defendants brought their motion to dismiss under Rule 12(b)(2) and (5). *Mir II*, 1:13-CV-9172, 30. Others brought their motion under Rule 12(b)(6), *id.* at 37, while still others brought their motion under Rule 12(b)(2) and (6), *id.* at 39. Judge Gardephe dismissed *Mir II* under Rule 12(b) (6). *See Mir*, 2015 WL 1408891, at *8-9.

Judge Gardephe noted that "[a]lthough the revocation of Mir's license in New York was predicated on the revocation of his medical license in California, the proceedings in California [were] not the subject of" the action before Judge Gardephe. *Id.* at *1. Judge Gardephe dismissed Plaintiff's claims against those defendants who were responsible for conducting Plaintiff's New York medical disciplinary proceeding because, under the doctrine of absolute immunity, those defendants were immune from suit for damages. *See id.* at *10-18; *Ackerman v. State Bd. for Prof'l Med. Conduct*, No. 83-CV-7871, 1984 WL 1258, at *2 (S.D.N.Y. 1984) ("[A]dministrative adjudicatory proceedings are 'functionally comparable to that of a judge.' Thus, absolute immunity was necessary to assure that the participants in the proceedings could 'perform their respective functions without harassment or intimidation.' " (quoting *Butz v. Economou*, 438 U.S. 478, 512-13 (1978))). Judge Gardephe also held that because "the California Defendants played no role in the New York license proceedings, they are not entitled to absolute immunity." *Mir II*, 2015 WL 1408891, at *18. But he dismissed Plaintiff's claims against them for failure to state a claim on which relief may be granted. *Id.* at *18-20.

**\*3** Plaintiff appealed. On August 24, 2016, the Second Circuit affirmed the judgment. *See Mir v. Bogan*, 668 F. App'x 368 (2d Cir. 2016) (summary order).

**C. The present action**

In the present action, Plaintiff alleges that in 2018, he became aware of information that he believes supports his contention that California and New York officials should not have revoked his California and New York medical licenses. (*See* ECF 1, pp. 6-7, 10-11, 108-10, 118.) He sues the current Commissioner of the New York State Department of Health and other current and former New York officials who either prosecuted him in the previously challenged New York medical disciplinary proceeding, presided over that proceeding, revoked his New York medical license in or about January 2013, enforced its revocation, or who have the authority to reinstate it ("New York Defendants"). 7 He also sues current and former members of the relevant California

Mir v. Zucker, Not Reported in Fed. Supp. (2019)

2019 WL 5693695

state government entity who either prosecuted him in his California medical disciplinary proceedings, presided over those proceedings, revoked his California medical license in or about August 2012, enforced its revocation, reported the revocation to New York officials, or who have the authority to reinstate his California medical license, as well as individuals who provided evidence during those proceedings, his former supervisors at the California hospitals where he was employed before his California medical license was revoked, another physician employed at one of those hospitals, and the hospitals themselves ("California Defendants"). He sues the individual defendants in their official and individual capacities.

7     Among these defendants, Plaintiff sues Linda Skidmore Daines, who he describes as the "Personal Representative of [the] Estate of deceased husband Past Commissioner Richard F. Daines, MD." (ECF 1, p. 14.) Plaintiff alleges that Dr. Richard Daines "enforced [an] [o]rder against [Plaintiff] [n]ot to [p]ractice in N.Y. without [Plaintiff's] having committed any medical misconduct in State of N.Y." (*Id.*) He also alleges that Dr. Richard Daines "continued to keep [him] out of practice and continued to prosecute nonexistent referral [c]harges" against him even though, at one point, California officials reinstated his California medical license. (*Id.*)

Plaintiff makes the following allegations: In depositions held on July 16, 2016, and August 30, 2016, Linda K. Whitney, M.D., and Kimberly Kirchmeyer, M.D. – former Executive Directors of the California Medical Board (and both *Mir II* defendants) – admitted "that documentation findings inserted into [a] 2006 [d]ecision were not supported by any [c]harges in the" administrative accusatory documents filed against Plaintiff in his California medical disciplinary proceedings. (*Id.* pp. 108-09.) In another deposition held on August 29, 2016, Sharon Levine, M.D. – a former President of the California Medical Board (and another *Mir II* defendant) – admitted that Plaintiff had "made the correct diagnosis." (*Id.* p. 11.) And in still another deposition held on December 16, 2016, Joshua Bardin, M.D., who had previously been "the sole accuser of [the] charge of misdiagnosis against Plaintiff[,]" admitted that his charge ... was ***entirely*** based on reading of the arteriograms done before surgery[,] which he had not seen when he wrote his accusatory report of consultation." (*Id.* pp. 10-11) (emphasis in original.)

**\*4** Plaintiff seeks preliminary and permanent injunctive against "the New York Defendants for taking reciprocal action based on discipline by [the] California Defendants who have admitted such discipline to be without merit and continue to deny reinstatement of [Plaintiff's] New York medical license." (*Id.* p. 11.) He also asks the Court for "prospective injunctive relief against [the] California Defendants on the same grounds, against continuing to disseminate false information about [Plaintiff], as they did to [New York officials]...." (*Id.*) He further asks the Court to "permanently restrain[ ] and enjoin[ ] [the] defendants from imposing any disciplinary action against Plaintiff [that includes] any [p]rospective [e]nforcement of [o]rders of revocation by California and New York State." (*Id.* p. 123.) Moreover, Plaintiff asks the Court to direct the appropriate defendants to reinstate his California and New York medical licenses and to expunge his California and New York medical disciplinary records. (*Id.*) He also seeks damages and attorney's fees. (*See id.* pp. 123-24.)

## DISCUSSION

### A. Federal claims against the New York Defendants

The Court must dismiss Plaintiff's federal claims against those New York officials who either prosecuted Plaintiff in his New York medical disciplinary proceeding, presided over that proceeding, revoked his New York medical license in or about January 2013, or enforced that revocation ("New York Defendants").[8]

8     These defendants include: Howard Zucker, M.D.; George Autz; Roseanne C. Berger; Lawrence J. Epstein; Marian Goldstein; Martha Grayson; Elizabeth Beson-Guthrie; Martghmarthakristin E. Harkin; Sumathi Kasinathan; Robert G. Lerner; Kathleen S. Lill, PA; Joann Marino; Lynn Gladys Mark, DO; Louis J. Papa; Maria Plummer; Swaminathan Rajan; Ramanathan Raju; Sumir Sahgal; Arash Salemi; Nancy Sapio; Alexander Schwartzman; Neeta Minal Shah; Rahul Sharma; Mushtaq A. Sheikh; Amit M. Shelat; Greg Shutts, PA; Robert R. Walther; Nirav R. Shah, M.D.; Linda Skidmore Daines; Robert Bogan; Peter D. Van Buren; Kendrick A. Sears, M.D.; Lyon Greenberg, M.D.; Ralph Liebling, M.D.; and Deborah Whitfield, Ph. D. Shah, Daines, Bogan, Van Buren, Sears, Greenberg, Liebling, and

Mir v. Zucker, Not Reported in Fed. Supp. (2019)

2019 WL 5693695

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 61 of 105

Whitfield were all *Mir II* defendants. Shah was also a *Mir I* defendant.

The doctrine of issue preclusion, also known as collateral estoppel, bars the relitigation of a legal or factual issue decided in a previous action if "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001) (internal quotation marks and citations omitted, alteration in original); *see Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party.") (internal quotation marks and citations omitted). "The doctrine of *issue preclusion* ... 'bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.' " *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (citation omitted).

Although issue preclusion is an affirmative defense that must be pleaded in a defendant's answer, *see* Fed. R. Civ. P. 8(c) (1), the Court may raise it on its own initiative, *see Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) ("[W]e have previously upheld a district court's dismissal of a case on collateral estoppel grounds even where collateral estoppel was not raised as an affirmative defense in the answer, but was raised by the district court *sua sponte,* without permitting the party against which it was asserted an opportunity to argue the issue.").

**\*5** The present action presents one of the same issues that Judge Gardephe decided in *Mir II* – whether the New York Defendants are immune from suit for any claims for damages arising from their actions in Plaintiff's New York medical disciplinary proceedings. All of the requirements for the application of issue preclusion are present. First, the issues in this action and in *Mir II* are identical. This action, like *Mir II*, arises out of the New York Defendants' revocation of Plaintiff's New York medical license on or about December 27, 2012 or in January 2013. Second, the issue as to whether those defendants are immune from suit has actually been litigated and decided. *See Mir II*, 2015 WL 1408891, at \*10-18. Third, Plaintiff had a full and fair opportunity to litigate this issue. *See id.* at \*7-8 (*Mir II* procedural history);

*see also Mir v. Bogan*, 668 F. App'x 368 (2d Cir. 2016) (summary order) (affirming Judge Gardephe's dismissal of *Mir II*). The fourth element, as it is often formulated, requires that "the issue previously litigated was necessary to support a valid and final judgment on the merits." *Grieve*, 269 F.3d at 153 (2d Cir. 2001). Of course, dismissal on the basis of absolute immunity does not constitute an adjudication on the merits of the underlying claims. It is, however, an adjudication on the merits of the issue, the determination of which is essential to the previous judgment. *See New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) ("Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.").

It is well established that principles of issue preclusion apply to threshold determinations such as subject-matter jurisdiction, *see, e.g., Stone v. Williams*, 970 F.2d 1043, 1057 (2d Cir. 1992), ripeness, *see Park Lake Res. Ltd. Liab. Co. v. United States Dep't of Agric.*, 378 F.3d 1132, 1136-38 (10th Cir. 2004), exhaustion of administrative remedies, *see Hill v. Potter*, 352 F. 3d 1142, 1146-47 (7th Cir. 2003), venue, *see Baris v. Suplicio Lines, Inc.*, 74 F.3d 567, 571 (5th Cir. 1996), *aff'd en banc*, 101 F.3d 367 (5th Cir. 1996), or the failure to join necessary parties, *id.* This list is not exhaustive. *See Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 166 (1932) ("The principles of [preclusion] apply to questions of jurisdiction as well as to *other issues*.") (emphasis added). And courts have given preclusive effect to absolute immunity determinations in various contexts. *See Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order) (absolute immunity of Assistant New York State Attorney General for his or her actions in civil litigation); *Gupta v. Thai Airways Int'l, Ltd.*, 487 F.3d 759, 765-67 n.9 (9th Cir. 2007) (absolute foreign sovereign immunity); *Rabin v. United States*, 210 F.3d 355 (2d Cir. 2000) (unpublished decision) (absolute sovereign immunity of the United States). The Second Circuit has even given preclusive effect to a state-court's previous granting of summary judgment to a police detective "on the dubious ground that" he was entitled to "quasi-judicial immunity." *Conway v. Vill. of Mt. Kisco*, 750 F.2d 205, 213 (2d Cir. 1984).

Accordingly, Judge Gardephe's previous determination in *Mir II* that the New York Defendants (or their predecessors) are immune from suit for damages was an adjudication on the merits of that issue for the purpose of applying the doctrine of issue preclusion. The Court therefore dismisses Plaintiff's

Mir v. Zucker, Not Reported in Fed. Supp. (2019)

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 62 of 105

2019 WL 5693695

federal claims against the New York Defendants under the doctrine of issue preclusion for failure to state a claim on which relief may be granted.[9]

[9]   Even if issue preclusion did not prevent Plaintiff from proceeding with his federal claims against the New York Defendants, the Court would still dismiss those claims because the New York Defendants are immune from suit in their individual capacities under the doctrine of absolute judicial immunity. *See Applewhite v. Briber*, 506 F.3d 181, 182 (2d Cir. 2007); *Mir II*, 2015 WL 1408891, at *10-18; *Ackerman*, 1984 WL 1258, at *2 ("The role of the State Board for Professional Medical Conduct is 'functionally comparable' to that of a judicial proceeding. The charges the Board adjudicates are every bit as weighty as those which come before courts. Immunity is therefore necessary to protect hearing examiners and prosecutors from intimidation and harassment."). This includes any federal claims for injunctive relief against these defendants in their individual capacities. *See § 1983*. They are also immune from suit for damages in their official capacities under the Eleventh Amendment. *See Anghel v. New York State Dep't of Health*, 947 F. Supp. 2d 284, 298-99 (E.D.N.Y. 2013), *aff'd*, 589 F. App'x 28 (2d Cir. 2015) (summary order). "*Section 1983* is not a means for litigating in a federal forum whether a state or local administrative decision was wrong or even whether it was arbitrary and capricious." *Blake v. Ambach*, 691 F. Supp. 651, 655 (S.D.N.Y. July 28, 1988). Plaintiff may challenge the decision to revoke his New York license in the New York State courts under N.Y.C.P.L.R. Art. 78, *see* N.Y. Pub. Health Law § 230-c(5) – a remedy both Judge Jones and Judge Gardephe discussed in their dismissals of Plaintiff's previous actions, *see Mir I*, 2012 WL 3229308, at *3; *Mir II*, 2015 WL 1408891, at *15. And if Plaintiff has become aware of new information that he believes would cause New York officials to reinstate his New York medical license, he may seek reinstatement from them. *See* N.Y. Pub. Health Law § 230(10)(q).

**B. Federal claims against the California Defendants (and their successors) from *Mir II***

**\*6** The Court must also dismiss, under the doctrine of claim preclusion, Plaintiff's federal claims against those California Defendants who were sued in *Mir II* (and their successors) who are current and former members of the relevant California state government entity and who were either involved in the medical disciplinary proceedings that resulted in the revocation of Plaintiff's California medical license, enforced that decision, reported the revocation to New York officials, or who have the authority to reinstate Plaintiff's California medical license ("California medical officials").[10]

[10]   These defendants include: Kimberly Kirchmeyer; Linda K. Whitney; Sharon Levine, M.D.; Dev Gnana Dev, M.D.; Ronald H. Lewis; M.D, Denise Pines; Michele Anne Bholat, M.D.; Randy W. Hawkins, M.D.; Katherine Feinstein, M.D.; Brenda Sutton-Wills; Jamie Wright; Howard R. Krause, M.D; Kristine D. Lawson, J.D.; Laurie Rose Lubiano, M.D.; David Warmoth; Eserrick "T J" Watkins; Felix C Yip, M.D.; Cesar A. Aristeiguita, M.D.; Gerrie Schipske, R.N.P.; the Estate of Barbara Yaroslavsky; Steve Alexander; Stephen Richard Corday; M.D.; Shelton J. Duruisseau, Ph. D.; Mary Lynn Moran, M.D.; Gary Gitnick, M.D.; the Estate of Janet Salomonson; Ronald Wender, M.D.; Frank Vram Zerunyan, J.D.; Hedy L. Chang; Eric Esrailian, M.D.; Reginald Low, M.D.; Mary Agnes Veronica Matyszewski; Kenneth B. Deck, M.D. Kirchmeyer, Whitney, Levine, and Matyszewski were all *Mir II* defendants.

Claim preclusion, also known as *res judicata*, limits repetitious suits, establishes certainty in legal relations, and preserves judicial economy. *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). The doctrine applies in a later litigation, if "(i) an earlier action resulted in an adjudication on the merits; (ii) that earlier action involved the same counterpart or those in privity with them; and (iii) the claim sought to be precluded was raised, or could have been raised, in that earlier action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 898 F. 3d 232, 237 (2d Cir. 2018), *cert. granted*, 139 S. Ct. 2777 (June 28, 2019). "A party cannot avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks and citation omitted).

Mir v. Zucker, Not Reported in Fed. Supp. (2019)

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 63 of 105

2019 WL 5693695

To determine if a claim could have been raised in an earlier action, courts look to whether the present claim arises out of the same transaction or series of transactions asserted in the earlier action. *See Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001). And "a dismissal for failure to state a claim operates as a final judgment on the merits and thus has res judicata effects." *Garcia v. Superintendent of Great Meadow Corr. Facility,* 841 F.3d 581, 583 (2d Cir. 2016) (internal quotation marks and citation omitted). Claim preclusion is also an affirmative defense that must be pleaded in a defendant's answer. *See* Fed. R. Civ. P. 8(c)(1). But like issue preclusion, the Court may raise claim preclusion on its own initiative. *See, e.g., Scherer v. Equitable Assurance Soc'y of the United States,* 347 F.3d 394, 400 (2d Cir. 2003) ("It is well established law in this circuit that certain affirmative defenses, including res judicata, may be raised *sua sponte.*").

In *Mir II,* Plaintiff asserted claims against some of the California medical officials named in this action – Whitney, Levine, Kirchmeyer, and Mastyszewski. Whitney, Levine, and Kirchmeyer were members of the California Medical Board, and Mastyszewski was the prosecutor in Plaintiff's California medical disciplinary proceedings. *Mir II,* 2015 WL 1408891, at *7. Plaintiff brought claims against them in *Mir II* "based on their alleged involvement in the revocation of his medical license in New York." *Id.* [11] Judge Gardephe dismissed Plaintiff's claims against them, for failure to state a claim on which relief may be granted, because Plaintiff "pled no facts suggesting that [they] played a role in the New York license revocation proceeding against him." *Id.* at *18. The Second Circuit affirmed Judge Gardephe's decision. *See Mir,* 668 F. App'x 368.

[11]    Judge Gardephe noted that while Plaintiff mentioned his California medical disciplinary proceedings in his *Mir II* amended complaint, Plaintiff emphasized that he was asserting claims against Defendants Whitney, Kirchmeyer, Levine, and Mastyszewski because of their alleged involvement in preventing him from practicing medicine in New York. *Mir II,* 2015 WL 1408891, at *7.

*7 Here, Plaintiff asserts claims that he previously raised in *Mir II,* or could have raised in that action, against Defendants Whitney, Kirchmeyer, Levine, Mastyszewski and other past and present California medical officials. Those claims include any arising from those California medical officials' actions in Plaintiff's California medical disciplinary proceedings,

their enforcement of Plaintiff's California medical license's revocation, and their reporting that revocation to New York officials. Plaintiff's allegations that evidence was later revealed that may call into question the revocation of both his California and New York medical licenses does not change the fact that his claims in this action arise from the same events on which *Mir II* was based – the revocation of those licenses. Accordingly, the doctrine of claim preclusion prevents Plaintiff from asserting any claims against the California medical officials (or their successors) arising from their actions in Plaintiff's California medical disciplinary proceedings, their enforcement of Plaintiff's California medical license's revocation, and their reporting that revocation to New York officials. The Court therefore dismisses Plaintiff's federal claims against the California medical officials under the doctrine of claim preclusion for failure to state a claim on which relief may be granted.

### C. Remaining federal claims

The Court must dismiss the remaining federal claims as frivolous. Those claims include: (1) Plaintiff's remaining claims against any California Defendant, who is an individual who testified or otherwise gave evidence in Plaintiff's California medical disciplinary proceedings, (2) Plaintiff's claims under 42 U.S.C. § 1981, and (3) Plaintiff's claims of conspiracy under 42 U.S.C. § 1983 and § 1985(3), and his related claims under 42 U.S.C. § 1986.

The Court dismisses Plaintiff's federal claims against any remaining individual California Defendant who was not previously sued, but who testified or otherwise gave evidence in Plaintiff's California medical disciplinary proceedings because such a defendant is immune from suit for damages for such actions. *See Anghel,* 947 F. Supp.2d at 300 (absolute immunity extended to witnesses who testified at a New York administrative medical disciplinary proceeding); *Sprague v. Med. Bd. of Cal.,* No. 07-CV-1561, 2009 WL 10698417, at *6 (S.D. Cal. Mar. 30, 2009) (same extended to witness who testified at a California administrative medical disciplinary proceeding), *aff'd,* 402 F. App'x 275 (9th Cir. 2010) (unpublished opinion); *see also Montero v. Travis,* 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.' " (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989))).

The Court also dismisses any of Plaintiff's remaining claims that Plaintiff asserts under 42 U.S.C. § 1981, including any against private California Defendants who are his former

Mir v. Zucker, Not Reported in Fed. Supp. (2019)

2019 WL 5693695

employers – the private California hospitals – and his former supervisors and coworker at those hospitals. This is because he has alleged no facts suggesting that any of those defendants discriminated against him because of "his race, ancestry, or ethnic characteristics." *Zemsky v. City of New York*, 821 F.2d 148, 150 (2d Cir. 1987); *see also Duplan v. City of New York*, 888 F.3d 612, 21 (2d Cir. 2018) ("§ 1981 does not provide a separate private right of action against state actors").

The Court further dismisses Plaintiff's claims of conspiracy under 42 U.S.C. § 1983 and § 1985(3), as well as any related claims under 42 U.S.C. § 1986, against any of the defendants. Plaintiff fails to allege sufficient facts to suggest, for the purpose of any § 1983 conspiracy claims that he asserts, that there was "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages," *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). He also fails to allege sufficient facts to suggest, for the purpose of any § 1985(3) conspiracy claims that he asserts, that there was: (1) a conspiracy; (2) for the purpose of depriving him of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to his person or property, or a deprivation of his rights or privileges as a citizen of the United States. *See Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). His allegations are vague and unsupported and therefore do not state a claim of conspiracy under either § 1983 or § 1985(3). *See, e.g., Wang*, 356 F. App'x at 517. And if he cannot state a § 1985(3) conspiracy claim, he cannot state a related claim under § 1986. *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994).

**D. State-law claims**

**\*8** A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction...." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the claims over which the Court has original

jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.' " (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**CONCLUSION**

The Court directs the Clerk of Court to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. The Court dismisses this action. The Court dismisses Plaintiff's federal claims for failure to state a claim on which relief may granted and as frivolous. The Court declines to consider Plaintiff's state-law claims. 28 U.S.C. § 1367(c)(3).

Because the Court dismisses *sua sponte* some of Plaintiff's claims for failure to state a claim, the Court grants Plaintiff leave to replead his claims in an amended complaint to be filed within thirty days of the date of this order. *See Wachtler*, 35 F.3d at 82. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the Court will enter a judgment dismissing this action for failure to state a claim and as frivolous.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court also directs the Clerk of Court to docket this order as a "written opinion" within the meaning of Section 205(a)(5) of the E-Government Act of 2002.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5693695

---

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

2019 WL 8437456

2019 WL 8437456
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Randall WILTZ, Plaintiff,

v.

NEW YORK UNIVERSITY et al., Defendants.

1:19-cv-03406 (GHW) (SDA)

|

Signed 12/23/2019

**Attorneys and Law Firms**

Randall Wiltz, Astoria, NY, pro se.

Ira Martin Feinberg, Benjamin Andrew Fleming, Andrew M. Harris, Hogan Lovells US LLP, New York, NY, for Defendants New York University, Franklin Diaz, Erin Lynch, Cushman & Wakefield, Inc., Michael Broderick.

Daniel David Schudroff, Catherine Tucciarello, Jackson Lewis P.C., New York, NY, for Defendants Collins Building Services, Inc., Angel Perlaza.

**REPORT AND RECOMMENDATION**

STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.

**\*1  TO THE HONORABLE GREGORY H. WOODS, UNITED STATES DISTRICT JUDGE:**

**INTRODUCTION**

*Pro se* Plaintiff Randall Wiltz ("Plaintiff" or "Wiltz") brings this action alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.* ("FHA"), the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.*, the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1861, *et seq.*, as well as various civil rights laws and the United States Constitution. (Compl., dated Apr. 16, 2019, ECF No. 1.) Wiltz alleges, *inter alia*, that he was discriminated against based on his race and disability in connection with his efforts to maintain possession of a rent-stabilized apartment owned by Defendant New York

University ("NYU"), and that this discrimination, and his ultimate eviction, was part of an unlawful scheme by the defendants to evict rent-stabilized tenants. (*See id.*) Plaintiff seeks monetary and injunctive relief, including a court order compelling NYU to deliver him a rent-stabilized lease. (*Id.* at 59.)

In addition to NYU, Wiltz names as Defendants Franklin Diaz ("Diaz"), Erin Lynch ("Lynch" and, together with NYU and Diaz, the "NYU Defendants"), Collins Building Services, Inc. ("CBS"), Angel Perlaza ("Perlaza" and, together with CBS, the "CBS Defendants"), Cushman Wakefield, Inc. (C&W) and Michael Broderick ("Broderick" and, together with C&W, the "C&W Defendants"). (Compl. at 4-5.) Currently before the Court are Defendants' motions to dismiss the Complaint (Not. of Mot., ECF Nos. 18, 20 & 25), as well as a motion by the NYU and CBS Defendants for an injunction precluding Plaintiff from filing further litigation without prior approval of the Court. (Not. of Mot., ECF Nos. 47 & 53.) For the reasons set forth below, I recommend that Defendants' motions to dismiss be GRANTED and the motion for an injunction be GRANTED IN PART.

**FACTUAL BACKGROUND** [1]

[1]  For purposes of this motion, the Court accepts Plaintiff's allegations as true and draws all reasonable inferences in his favor. *See City of Providence v. BATS Glob. Mkts., Inc.*, 878 F.3d 36, 48 (2d Cir. 2017).

**I. The NYU Apartment**

In or around 1993, Wiltz moved to New York to attend NYU for an LLM in taxation and a master's degree in real estate development. (Compl. ¶ 8.) That year, Wiltz met Martha Dewell. (*Id.* ¶ 9.) Dewell lived in a rent-stabilized apartment in an NYU-owned residential complex, Washington Square Village, in Greenwich Village. (*Id.* ¶ 10.) Dewell and Wiltz developed a relationship and eventually she "became his surrogate mother." (*Id.* ¶ 9.) In 1995, Wiltz moved in with Dewell and lived with her until she passed away in April 2015. (*Id.* ¶¶ 9, 26.) During that time, Wiltz shared rent and expenses with Dewell and her daughter, Laila Nabulsi, by contributing through regular deposits to a joint account of Dewell and Nabulsi. (*Id.* ¶ 27.) In or around June 2015, Wiltz was diagnosed with "major depressive, anxiety, and associated stress related conditions and disorders, which

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)
2019 WL 8437456
Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 66 of 105

presented challenges for managing stressful conditions and processes[.]" (*Id.* ¶ 29.)

**\*2** In August 2015, Defendant Erin Lynch, NYU's director of facilities for Washington Square Village, ordered an investigation into the circumstances of Dewell's tenancy. (Compl. ¶ 30.) On December 15, 2015, Wiltz sent a letter to the president of NYU, John Sexton, informing Sexton of Wiltz's disability and requesting a referral to the housing committee to apply for succession rights to Dewell's apartment. (*Id.* ¶ 31.) The next day, Wiltz sent a letter to Broderick at C&W (the leasing agent for Washington Square Village), requesting renewal of the lease. (*Id.* ¶ 32.) In January 2016, Wiltz received an eviction notice from NYU.[2] (*Id.* ¶ 41.)

[2]     NYU served Wiltz and Nabulsi with a Ten-Day Notice to Quit, which expired on February 13, 2016. (*See* Decl. of Ira M. Feinberg, dated May 14, 2019 ("Feinberg Decl."), Ex. A, ECF No. 22-1.) Since Wiltz and Nabulsi failed to surrender the apartment by the expiration of the Notice, NYU commenced a holdover proceeding against them. (*See id.*)

## II. **Housing Court Proceedings**[3]

[3]     The Court may take judicial notice of the Housing Court filings. *See Manso v. Santamarina & Assocs.,* No. 04-CV-10276 (LBS), 2005 WL 975854, at *1 (S.D.N.Y. Apr. 26, 2005) (considering Housing Court document filed by parties on a motion to dismiss).

On February 24, 2016, NYU initiated a summary eviction proceeding in the Housing Part of the New York City Civil Court, New York County (the "Housing Court"). *See New York Univ. v. Nabulsi et al.,* No. L&T 056086/2016 (N.Y.C. Civ. Ct.). Housing Court proceedings began on March 9, 2016, at which time the Housing Court elected to stay the eviction until the conclusion of the case. (Compl. ¶ 53.) On May 17, 2016, the Housing Court granted NYU's motion for discovery as to Wiltz's succession rights. (Decision and Order, dated May 17, 2016, Feinberg Decl. Ex. C, ECF No. 22-3.) The Court ordered Wiltz to produce documents within thirty days and to sit for a deposition within thirty days thereafter. (*See id.*) The deposition did not occur and, on July 25, 2016, the Housing Court ordered Wiltz to appear for a deposition on August 10, 2016. (7/25/2016 Order, Feinberg Decl. Ex. D, ECF No. 22-4.) Wiltz subsequently obtained

counsel who executed a stipulation for Wiltz's deposition to occur on September 8, 2016. (*See* 3/29/2017 Decision & Order, Feinberg Decl. Ex. F, ECF No. 22-6, at 1-2 (setting forth procedural history).) NYU then moved for relief based on Wiltz's failure to comply with his discovery obligations and Wiltz moved for a protective order seeking to limit his deposition to forty-five minutes. (*Id.* at 2.)

On October 31, 2016, the Housing Court issued an order directing Wiltz to comply with the applicable discovery deadlines, including that his deposition occur on or before November 30, 2016. (Compl. ¶ 64.) The Housing Court warned Wiltz that if he failed to sit for a deposition by that date, his answer would be stricken and he would be considered in default. (10/31/2016 Order, Feinberg Decl. Ex. E, ECF No. 22-5.)

In November 2016, Wiltz fell ill with an unidentified viral infection that presented as a life-threatening illness. (Compl. ¶ 65.) Wiltz never sat for a deposition. (*See* 3/29/2017 Order at 2.) Thereafter, NYU moved for an order scheduling an inquest on default, which the Housing Court granted on March 29, 2017. (*See id.* at 1-3.) As part of its order, the Housing Court struck Wiltz's answer and explained that, even if Wiltz had demonstrated a reasonable excuse for his default,[4] he had not demonstrated a meritorious succession defense. (*Id.* at 2-3.) The Housing Court scheduled an inquest for April 25, 2017. (*Id.* at 3.)

[4]     The Housing Court noted that Wiltz's attorney's affirmation that Wiltz was hospitalized on November 15, 2016 was not supported by evidence or an affidavit from Wiltz and, in any event, would not excuse Wiltz's failure to comply with discovery prior to the date. (*See* 3/29/2017 Order at 2-3.)

**\*3** Following the inquest, the Housing Court granted NYU a judgment of possession and ordered that a warrant of eviction be issued, though the court stayed execution of the warrant until June 9, 2017. (4/27/2017 Order, Feinberg Decl. Ex. H, ECF No. 22-8.) The same day, Wiltz filed "an Order to Show Cause to Renew and Reargue the incorrect ruling that struck his answer as he had presented a reasonable medical excuse and a meritorious defense." (Compl. ¶ 69; *see also* Order to Show Cause, Feinberg Decl. Ex. J, ECF No. 22-10.).) The Housing Court set a return date of May 9, 2017. (*Id.*)

On August 14, 2017, the Housing Court denied Wiltz's motion to renew and reargue and affirmed the March 29, 2017

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 67 of 105

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

2019 WL 8437456

decision striking Wiltz's answer. (8/14/2017 Order, Feinberg Decl. Ex. K; *see also* Compl. ¶ 106.) In early September 2017, the Housing Court issued a warrant for eviction. (*Id.* ¶ 107.) On September 14, 2017, Wiltz noticed an appeal of the Housing Court's August 14, 2017 Order. (Not. of Appeal, Feinberg Decl. Ex. L, ECF No. 22-12.) Working with New York City's Adult Protective Services Program ("APS"), Wiltz delayed the date of eviction until October 4, 2017. (*Id.* ¶ 108.) Between September 22, 2017 and October 6, 2017, Wiltz was hospitalized at Bellevue Hospital. (*Id.* ¶ 109.)

On October 2, 2017, Wiltz submitted an Order to Show Cause to the Housing Court detailing his disability and seeking to stay execution of the warrant of eviction. (Compl. ¶ 110; *see also* Order to Show Cause, Feinberg Decl. Ex. M, ECF No. 22-13.) On October 12, 2017, the Housing Court held a hearing during which the court denied Wiltz's motion and reinstated the eviction order, but required that APS be notified of developments prior to any eviction. (Compl. ¶¶ 110, 111; 10/12/2017 Order, Feinberg Decl. Ex. N, ECF No. 22-14.) The court also stayed execution of the warrant of eviction until November 10, 2017. (*See* 10/12/2017 Order.)

On November 7, 2017, Wiltz filed an appeal of the October 12, 2017 Order. (Not. of Appeal, Feinberg Decl. Ex. O, ECF No. 22-15.) At a hearing on December 7, 2017, the Appellate Term denied Wiltz's motion for a stay of eviction pending appeal. (12/7/17 Order, Feinberg Decl. Ex. P, ECF No. 22-16.) Wiltz was evicted from the apartment in early 2018. [5]

[5]    Wiltz does not allege the specific date that he was evicted.

On December 31, 2018, the New York Supreme Court, Appellate Term affirmed the orders of the Housing Court with respect to Wiltz's eviction, finding, among other things, that Wiltz had failed to demonstrate the existence of a meritorious succession defense as "[h]is allegations regarding his co-occupancy of the apartment with [Dewell] [were] vague and contradicted by the documentary evidence indicating that tenant [Dewell] resided elsewhere for several years prior to her death." *New York Univ. v. Nabulsi*, 62 Misc. 3d 137(A), at *1 (N.Y. App. Term. 2018). Wiltz filed a motion in the Appellate Division, First Department, for leave to appeal the Appellate Term's decision, which was denied on November 26, 2019. (*See* 11/26/2019 Order, ECF No. 63-1.)

III. **Administrative And Related Proceedings** [6]

[6]    The Court may take judicial notice of these proceedings. *See Lia v. Saporito*, 909 F. Supp. 2d 149, 161 (E.D.N.Y. 2012) ("Agency determinations and administrative findings are public records of which a court may properly take judicial notice."), *aff'd*, 541 F. App'x 71 (2d Cir. 2013).

A. **Division Of Housing And Community Renewal**

On or about October 10, 2016, Wiltz filed a complaint [7] with the New York State Division of Housing and Community Renewal ("DHCR") [8] seeking a reduction in rent based upon alleged decreased services and alleged emergency conditions arising from damaged flooring. [9] (Compl. ¶ 71; *see also* DHCR Compl., Feinberg Decl. Ex. R, ECF No. 22-17.)

[7]    Wiltz also alleges that he filed similar complaints, in or around August 2016, with the New York City Department of Housing Preservation and Development ("DHPD") related to NYU's "denial of tenant services," which Wiltz alleged created safety issues in the apartment. (Compl. ¶ 70.) However, Wiltz does not provide additional information regarding these complaints.

[8]    The DHCR is the entity responsible for administration of the New York Rent Control Law and the Rent Stabilization Law and Code. *See generally* https://hcr.ny.gov/ (last visited Dec. 18, 2019.)

[9]    Wiltz alleges that, on November 25, 2016, DHCR performed a site evaluation that gave rise to a Violations Order. (Compl. ¶ 72.)

**\*4** On October 15, 2016, Wiltz filed another complaint with the DHCR for harassment. (Not. of Return of Compl., Feinberg Decl. Ex. T, ECF No. 22-19.) The DHCR returned the complaint finding that Wiltz had not furnished sufficient information and stating that "[i]t does not constitute harassment for an owner to bring a court action if there is merit to such action." (*Id.*) On May 30, 2017, Wiltz re-filed his harassment complaint. (5/30/2017 DHCR Compl., Feinberg Decl. Ex. U, ECF No. 22-20.) The same day, he filed a third complaint with the DHCR asserting that he was overcharged for rent and again complaining of decreased services due to damage to the apartment. (5/30/2017 DHCR Compl., Feinberg Decl. Ex. Z, ECF No. 22-25.) On June 8, 2017, Wiltz filed a fourth complaint with the DHCR arguing

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

2019 WL 8437456

that he improperly was denied succession rights. (6/8/2017 DHCR Compl., Feinberg Decl. Ex. CC, ECF No. 22-28.)

By letter, dated November 9, 2017, the DHCR terminated the proceeding regarding Wiltz's complaint of decreased services/ emergency conditions, based on the Housing Court's decision "denying [Wiltz] succession rights to the apartment." (DHCR Decision, Feinberg Decl. Ex. S, ECF No. 22-18.) On February 2, 2018, the DHCR declined enforcement against NYU based on the re-filed harassment complaint, finding that, in light of the Housing Court's determination that Wiltz lacked succession rights, he was not subject to the rent regulatory laws and thus not within the agency's jurisdiction. (2/2/2018 DHCR Decision, Feinberg Decl. Ex. V, ECF No. 22-21.) On March 29, 2018, the DHCR terminated the proceedings related to Wiltz's third and fourth complaints, finding that the issues were resolved by the Housing Court proceeding and stating that the agency lacked the ability to overturn a decision made by the Housing Court. (3/29/2018 DHCR Decision, Feinberg Decl. Exs. AA & DD, ECF Nos. 22-26 & 22-29.) On May 13, 2018, Wiltz filed for an administrative appeal of the February and March 2018 decisions. (*See* 5/3/2018 Not of Pet., Feinberg Decl. Ex. BB, ECF No. 22-27; 5/7/2018 Not. of Pet., Feinberg Decl. Ex. EE, ECF No. 22-30.) On April 10, 2019, the DHCR consolidated Wiltz's two appeals and denied them both. (4/10/2019 DHCR Decision, Feinberg Decl. Ex. LL, ECF No. 22-37.) The Commissioner found that the agency properly followed the Housing Court's determination, which "determined that [Wiltz] was not a successor tenant." (*Id.* at 2.)

**B. New York State Department Of Human Rights And Article 78 Proceeding**

On May 10, 2017, Wiltz initiated a proceeding before the New York State Division of Human Rights ("DHR") against NYU, Lynch and Diaz, alleging that NYU's actions to remove him from the apartment were the result of discrimination based on his race and disability. (DHR Compl., Feinberg Decl. Ex. W, ECF No. 22-22.) NYU, Lunch and Diaz filed their answer on July 24, 2017. (DHR Answer, Feinberg Decl. Ex. X, ECF No. 22-23.) On April 10, 2018, the DHR dismissed Wiltz's discrimination claims, finding, after an investigation, that there was no probable cause to believe that NYU, Lynch or Diaz engaged in the discriminatory practices complained of. (4/10/2018 DHR Decision, Feinberg Decl. Ex. Y, ECF No. 22-24.) In particular, the DHR found that NYU's refusal to renew Wiltz's lease was not based on discriminatory animus. (*Id.* at 2-3.) The DHR also found no connection between

NYU's failure to make repairs and any of Wiltz's protected classes. (*Id.* at 3.)

On June 20, 2018, Wiltz commenced an Article 78 proceeding against DHR in New York Supreme Court, New York County, seeking to reverse the DHR's decision. (Article 78 Pet., Feinberg Decl. Ex. GG, ECF No. 22-32.) The New York Supreme Court entered a default judgment against DHR on September 20, 2018. (9/20/2018 Order, Feinberg Decl. Ex. HH, ECF No. 22-33.) On December 19, 2018, NYU, Lynch and Diaz moved to intervene as necessary defendants and to vacate the default and dismiss the proceeding. (12/19/2018 Motion, Feinberg Decl. Ex. KK, ECF No. 22-36.) On May 29, 2019, the New York Supreme Court granted NYU's motion to intervene and affirmed DHR's decision on the merits. (5/29/2019 Article 78 Order, Feinberg Decl. Ex. NN, ECF No. 42-2.)

**PROCEDURAL HISTORY**

**\*5** Wiltz filed the Complaint in this action on April 16, 2019. (Compl., ECF No. 2.) This is the third action Wiltz has filed against the same defendants for nearly identical claims. Previously, on January 8, 2018, Wiltz filed an action in this Court against all of the defendants in this action as well as the City of New York and the State of New York. (*See* Compl., 18-CV-00123 ECF No. 2.) After the Court denied Wiltz's motion for a preliminary injunction and dismissed certain claims, Wiltz filed an Amended Complaint, which the defendants moved to dismiss. (*See* 18-CV-00123 ECF Nos. 89, 93, 97, 99, 105.)

On August 14, 2018, Wiltz filed an action in state court alleging identical claims against all the defendants in the federal action, except the City and the State. (*See* 18-CV-11168 ECF No. 1-1.) The named defendants removed the state action to this Court on November 30, 2018, and Judge Woods accepted it as related to the instant action on December 4, 2018. (*Id.*) Subsequently, the defendants sought a consolidated briefing schedule for their motions to dismiss in both cases. (12/4/2018 Letter, 18-CV-00123 ECF No. 112.) The Court granted that request with respect to the defendants named in both actions, but separately addressed the motions to dismiss filed by the City and State. (12/6/2018 Order, 18-CV-00123 ECF No. 117.) The City's and State's motions to dismiss were granted by the Court on February 19, 2019. (2/19/2019 Order, 18-CV-00123 ECF No. 149.)

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 69 of 105

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

2019 WL 8437456

In March 2019, mere days before his deadline for responding to Defendant's motions to dismiss, Wiltz voluntarily discontinued both federal actions, explaining that he was unable to pursue his claims due to medical complications and housing issues. (*See* 3/15/2019 Endorsement, 18-CV-00123 ECF No. 162.) Approximately one month later, Wiltz filed the instant action. (Compl., ECF No. 2.) On May 14, 2019, Defendants filed the instant motions to dismiss. (*See* ECF Nos. 18, 20 & 25.)

### RULE 12(b) LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.' " *Equan Yunus, Sr. v. J. Lewis Robinson et al.*, No. 17-CV-05839 (AJN), 2019 WL 168544, at *3 (S.D.N.Y. Jan. 11, 2019) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "But '[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.' " *Id.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)). "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (citing *Makarova*, 201 F.3d at 113).

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "must accept as true all of the factual allegations contained in the complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

**\*6** Typically, district courts read the pleadings of a *pro se* plaintiff liberally and interpret them "to raise the strongest arguments they suggest." *See McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citation omitted). However, the degree of solicitude afforded to a *pro se* plaintiff "may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). "The ultimate extension of this reasoning is that a lawyer representing himself ordinarily receives no such solicitude at all." *Id.* While it appears that Wiltz is a lawyer who attended NYU for an LLM degree, he states that he never has been admitted to practice in federal court. (Compl. ¶ 11.) The Court need not decide how much solicitude to afford to Wiltz, however, because even applying a liberal pleading standard, I recommend that the Court dismiss Wiltz's claims for the reasons set forth herein.

### DISCUSSION

The NYU Defendants move to dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure Rule, arguing, *inter alia*, that Wiltz's claims are barred by the *Rooker-Feldman* doctrine, the Anti-Injunction Act and *res judicata*; that the Court should abstain from hearing Wiltz's constitutional claims, and that, in any event, Wiltz fails to state a claim upon which relief can be granted. (NYU Mem. L. In Support Mot. To Dismiss ("NYU Mem."), ECF No. 19.) The C&W Defendants move to dismiss on the same grounds and adopt the arguments advanced by NYU. (*See* C&W Mem. L. In Support Mot. To Dismiss ("C&W Mem."), ECF No. 21.) Finally, the CBS Defendants move to dismiss pursuant to Rule 12(b)(6), arguing that Wiltz has failed to state a cognizable claim of actions against them. (CBS Mem. L. In Support Mot. To Dismiss, ECF No. 26.) The Court first considers Plaintiff's discrimination claims and then considers Plaintiff's RICO claims.

### I. Overview Of Plaintiff's Discrimination Claims

Wiltz asserts that he was discriminated against based on his race and disability in violation of Title II and Title III of the ADA, the FHA, the Rehabilitation Act and 42 U.S.C. §§ 1981, 1985 and 1986. "In the context of a disability claim, plaintiffs who allege violations under the ADA, the FHA, and the Rehabilitation Act may proceed under any or all of three theories: disparate treatment [also referred to as intentional discrimination], disparate impact, and failure to make reasonable accommodations." *Logan v. Matveevskii*, 175 F. Supp. 3d 209, 225 (S.D.N.Y. 2016) (internal citations and quotation marks omitted); *see also Fair Hous. Justice*

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 70 of 105

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

2019 WL 8437456

*Ctr., Inc. v. Cuomo*, No. 18-CV-03196 (VSB), 2019 WL 4805550, at *12 (S.D.N.Y. Sept. 30, 2019).

Here, Wiltz alleges that he was discriminated against based on his disability and race because he was denied a lease renewal for his rent-stabilized apartment. (Compl. ¶¶ 1-6, 10, 81, 85.) Wiltz also alleges that he was denied reasonable accommodations to maintain his housing because, instead of being able to apply for a lease renewal, he was forced to defend his rights in Housing Court, which he was unable to do because of his disability. (*Id.* ¶¶ 85, 91, 94.) In addition to his claims regarding the lease renewal, Wiltz alleges that he was denied repairs to hazardous conditions in his apartment because of his race and disability. (*Id.* ¶¶ 1-6, 10, 81, 85.) Wiltz further contends that he was retaliated against for seeking a lease renewal, making accommodation requests and filing complaints with the DHR, DHCR and DHPD. (*Id.* ¶¶ 2, 92.) Finally, Wiltz alleges claims for racial discrimination based on a variety of NYU's alleged practices and policies that he contends "favor[ed] whites causing an adverse impact on Blacks and other minorities." (*Id.* ¶ 93.)

The Court considers each of these claims in turn. For the reasons set forth below, the Court finds that Wiltz is precluded from asserting his discrimination claims; that Plaintiff's ADA claims should be dismissed because he has failed to allege that any Defendant is subject to the ADA; that his FHA and Rehabilitation Act claims should be dismissed because he has failed to state a claim either based on a theory of intentional discrimination or reasonable accommodation or for retaliation; that he lacks standing to pursue discrimination claims based on NYU's alleged policies; that his §§ 1981, 1983, 1985, 1986 and that his remaining claims should be dismissed for failure to state a claim.

## II. Plaintiff's ADA Claims Should Be Dismissed

*7 The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). The purpose of the Act is to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998). Title II of the ADA "require[s] that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run

by such entities." *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003), *superseded by regulation on other grounds, Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 619 (2d Cir. 2016). Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

"A plaintiff may establish a violation of Titles II and III by proving: (1) that [he] is a qualified individual with a disability; (2) that the defendants are subject to the ADA; and (3) that [he] was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disabilit[y]." *Lopez v. City of New York*, No. 17-CV-03014 (VEC) (AJP), 2017 WL 4342203, at *10 (S.D.N.Y. Sept. 28, 2017) (citing *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004) (internal quotation marks omitted)), *report and recommendation adopted*, 2018 WL 1371164 (S.D.N.Y. Mar. 15, 2018) (citing *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004) (internal quotation marks omitted)).

The Court finds that, assuming that Wiltz is a qualified individual with a disability, [10] Wiltz's ADA claims should be dismissed because NYU is not subject to the ADA. [11] First, Wiltz's Title II claims should be dismissed because NYU is not a public entity within the meaning of the statute. "The term 'public entity' means ... any State or local government" or "any department, agency, special purpose district, or other instrumentality" of a State or States or local government[.]" 42 U.S.C. § 12131(1)(A). Wiltz argues that NYU is a "public entity" because it: (1) receives federal funding; (2) "assumed responsibility of state power through an agreement with New York City promising not to terminate the rights of tenants residing in the subject facilities[;]" (3) has facilities regulated by DHCR; (4) provided medical services to Wiltz through NYU doctors; and (5) is under the supervision of the Regents of the State of New York. (Compl. ¶ 86.) None of these grounds render NYU a public entity within the meaning of Title II.

10      "Stress and depression are conditions that may or may not be considered impairments, depending on whether these conditions result from a documented

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

2019 WL 8437456

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 71 of 105

physiological or mental disorder." *Laface v. E. Suffolk Boces*, No. 18-CV-01314 (ADS) (AKT), 2018 WL 6002395, at *6 (E.D.N.Y. Nov. 15, 2018) (citing *Santos v. City of New York*, 01-CV-00120, 2001 WL 1568813, *4 (S.D.N.Y. Dec. 7, 2001)).

11    Wiltz does not allege that CBS and C&W are subject to the ADA claims. Moreover, to the extent that Wiltz purports to bring ADA and Rehabilitation Act claims against any of the individual defendants, those claims should be dismissed because there is no individual liability under those statutes. *See J.L. on behalf of J.P. v. New York City Dep't of Educ.*, 324 F. Supp. 3d 455, 467 (S.D.N.Y. 2018) (dismissing ADA and Rehabilitation Act claims against individual defendant).

It is well settled that private universities and private hospitals are not public entities subject to Title II, even if they receive government funding. *See Pierce v. Fordham Univ., Inc.*, No. 15-CV-04589 (JMF), 2016 WL 3093994, at *4 (S.D.N.Y. June 1, 2016), *aff'd*, 692 F. App'x 644 (2d Cir. 2017) (private university not public entity within meaning of ADA); *see also Spychalsky v. Sullivan*, No. 01-CV-00958 (DRH) (ETB), 2003 WL 22071602, at *5 (E.D.N.Y. Aug. 29, 2003) (same), *aff'd*, 96 F. App'x 790 (2d Cir. 2004); *Green v. City of N.Y.*, 465 F.3d 65, 78 (2d Cir. 2006) (private hospital not public entity); *Sandler v. Benden*, No. 15-CV-01193 (SJF) (AKT), 2016 WL 9944017, at *17 (E.D.N.Y. Aug. 19, 2016) (private nursing home and rehabilitation facility that received government funding not public entity), *aff'd*, 715 F. App'x 40 (2d Cir. 2017). To the extent Wiltz argues that NYU had an agreement with the City not to terminate the rights of tenants in NYU-owned buildings, any contract between NYU and the City still would not turn NYU into a public entity. *See Green*, 465 F.3d at 79 ("A private [entity] performing services pursuant to a contract with a municipality even if it does so according to the municipality's rules and under its direction, is not a creature of any governmental entity."). Thus, I recommend that Wiltz's Title II claims be dismissed.

**\*8** Similarly, Wiltz's Title III claims should be dismissed because Washington Square Village is not a "public accommodation" within the meaning of the ADA. The statute sets forth a list of private entities that are considered public accommodations including hotels, motels and private schools. *See* 42 U.S.C. § 12181(7). However, "[a] residential facility, such as an apartment, is not a public accommodation under the ADA." *Reid v. Zackenbaum*, No. 05-CV-01569

(FB), 2005 WL 1993394, at *4 (E.D.N.Y. Aug. 17, 2005); *see also Mazzocchi v. Windsor Owners Corp.*, No. 11-CV-07913 (LBS), 2012 WL 3288240, at *7 (S.D.N.Y. Aug. 6, 2012) ("The term 'public accommodation' as used in the ADA ... does not include residential facilities or apartment buildings."); *Kitchen v. Phipps Houses Grp. of Cos.*, No. 08-CV-04296 (DC), 2009 WL 290470, at *2 n.3 (S.D.N.Y. Feb. 5, 2009), *aff'd*, 380 F. App'x 99 (2d Cir. 2010) (internal citation and quotation omitted); *Kneitel v. Almarc Realty Corp.*, No. 19-CV-03557 (PKC) (LB), 2019 WL 2717106, at *3 (E.D.N.Y. June 28, 2019) (apartment not public accommodation under ADA). The fact that Washington Square Village also includes several commercial facilities does not change this result. *See Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 264 n.5 (E.D.N.Y. 2009) (internal citation omitted).

In any event, the Court finds that Wiltz's Title III claims are moot because, as set forth in Discussion Section IX below, he is not entitled to injunctive relief and money damages are not available under Title III. *See Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 90 (2d Cir. 2011) (private individual cannot recover damages for violations of a right under Title III); *see also Vale v. Northwell Health*, No. 17-CV-07111 (PKC) (LB), 2018 WL 1115345, at *2 (E.D.N.Y. Feb. 26, 2018) (ADA Title III claim moot when injunctive relief not available) (citing cases).

Finally, even if Wiltz could bring a claim under Title II or Title III against any of the Defendants, for the same reasons set forth in Discussion Section III(C) below, the Court finds that Plaintiff has not adequately alleged a claim of discrimination based on disability. *See Forziano v. Indep. Grp. Home Living Program, Inc.*, 613 F. App'x 15, 18–19 (2d Cir. 2015) (summary order) (analyzing ADA, FHA and Rehabilitation Act claims based on failure to make reasonable accommodations theory in tandem); *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (analyzing ADA, FHA and Rehabilitation Act claims based on disparate treatment/intentional discrimination in tandem). For these reasons, I recommend that Wiltz's ADA claims be dismissed.

## III. <u>Plaintiff's FHA And Rehabilitation Act Claims Should Be Dismissed</u>

### A. <u>Applicability Of The *Rooker-Feldman* Doctrine</u>

To start, Defendants argue that the Court lacks jurisdiction over the bulk of Wiltz's claims under the *Rooker-Feldman* doctrine because the injuries about which he complains arise

Case 1:24-cv-00376-BKS-TWD   Document 4   Filed 05/10/24   Page 72 of 105

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

2019 WL 8437456

almost entirely from the state court judgment and order authorizing a warrant of eviction. (*See* NYU Mem. at 3, 15-19.) "The *Rooker-Feldman* doctrine provides that, in most circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts." *Morrison v. City of New York*, 591 F.3d 109, 112 (2d Cir. 2010) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-83 (1983); and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-16 (1923)). The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Underlying the doctrine "is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009).

**\*9** Four requirements must be met for *Rooker-Feldman* to apply: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; (4) the state court judgment must have been rendered before the district court proceedings commenced. *See Morrison*, 591 F.3d at 112 (citing *Exxon Mobil*, 544 U.S. at 284). "The first and fourth requirements are procedural, while the second and third are substantive; the requirement that the plaintiff complain of an injury caused by a state judgment ... is the core requirement from which the others derive." *Thompson v. Donovan*, No. 13-CV-02988 (CS), 2014 WL 5149037, at \*11 (S.D.N.Y. Oct. 14, 2014) (citing *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85, 87 (2d Cir. 2005) (internal quotation marks omitted)). Thus, as the Second Circuit has explained, the applicability of the doctrine, "turns not on the similarity between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007) (emphasis omitted).

Here, through his discrimination claims, Wiltz seeks redress for injuries caused by the allegedly discriminatory denial of a lease renewal and denial of repairs to his apartment, as well as injuries caused by racial discrimination and retaliation. These injuries could not have been caused by the state court judgment because they predate the eviction proceedings. *See Byrd v. Grove St. Mgmt. Corp.*, No. 16-CV-06017 (MAT), 2018 WL 3110219, at \*6 (W.D.N.Y. June 25, 2018) (discrimination claims based on defendants' refusal to renew lease and denial of apartment maintenance services not barred by *Rooker-Feldman* doctrine) (quoting *Hoblock*, 422 F.3d at 88 (internal quotation marks and alteration omitted)); *see also Cho v. City of New York*, 910 F.3d 639 (2d Cir. 2018) (*Rooker-Feldman* doctrine did not apply where alleged injuries occurred prior to judicial action); *Phillips ex rel. Green v. City of New York*, 453 F. Supp.2d 690, 715 (S.D.N.Y. 2006) ("A federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.") Thus, to the extent that Wiltz seeks damages for alleged discrimination that occurred prior to the eviction proceedings in Housing Court, the Court finds that such claims are not barred by the *Rooker-Feldman* doctrine. [12]

12   However, it follows that Wiltz only is entitled to recover damages stemming from the alleged discrimination and not the eviction itself. *Cf. Byrd*, 2018 WL 3110219 at \*7 (finding that plaintiff's claims for damages from allegedly discriminatory denial of lease renewal and repairs that post-dated state court judgment of eviction were barred by *Rooker-Feldman* "because the injuries would not have occurred 'but for' the eviction order.").

**B. The Appellate Division's Article 78 Decision Is Entitled To Preclusive Effect** [13]

13   The Court notes that while Defendants did not specifically argue that Wiltz's claims are precluded based on the state court's Article 78 decision, the Court may dismiss claims based on collateral estoppel, *sua sponte*, even without permitting the party against which it is asserted an opportunity to argue the issue. *See Smeraldo v. City of Jamestown*, 512 F. App'x 32, 34 (2d Cir. 2013).

The Court also considers whether Wiltz's discrimination claims are barred under ordinary preclusion law. *See Shetiwy v. Midland Credit Mgmt.*, 980 F. Supp. 2d 461, 469 (S.D.N.Y. 2013) ("Even where *Rooker–Feldman* does not apply, plaintiffs' claims may still be barred by ordinary preclusion principles."). "Because the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to accord state

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 73 of 105

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

2019 WL 8437456

judgments the same preclusive effect those judgments would have in the courts of the rendering state." *Hoblock*, 422 F.3d at 93. "Under New York law, issue preclusion applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Maack v. 1199 SEIU Local*, 638 F. App'x 66, 68 (2d Cir. 2016) (internal citations omitted). "In the Article 78 context, a 'New York state court affirmation of the [DHR's] finding of no probable cause would preclude federal litigation based on the same facts, provided that the procedures followed in coming to that determination satisfied the minimum constitutional requirements of the Due Process Clause of the Fourteenth Amendment.' " *Gomez v. New York State Dep't of Transp.*, No. 09-CV-05184, 2011 WL 2940623, at *2 (E.D.N.Y. July 19, 2011) (citing *Yan Yam Koo v. Dep't of Bldgs. of City of New York*, 218 Fed. App'x 97, 98 (2d Cir. 2007)) (summary order) (citing *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-82 (1982)).

**\*10** Wiltz's claims that he was denied a lease renewal and repairs based on his race and disability were, following an investigation, found lacking by the DHR and the DHR's subsequent decision was affirmed by the New York Supreme Court. Moreover, the record demonstrates that Wiltz had a full and fair opportunity to present his claims. Thus, the Court finds that Wiltz has forfeited his right to relitigate his discrimination claims in this Court. *See Aumporn Wongkiatkachorn v. Capital One Bank*, No. 09-CV-09553 (CM), 2010 WL 3958764, at *5 (S.D.N.Y. Oct. 5, 2010) ("Plaintiff forfeited her right to relitigate her federal claim in this court by going to the State Supreme Court and obtaining judicial affirmance of the [DHR's] decision."); *see also Gomez v. New York State Dep't of Transp.*, No. 09-CV-05184, 2011 WL 2940623, at *2 (E.D.N.Y. July 19, 2011) ("Having obtained judicial affirmance of the DHR's decision in an appropriate New York state court, which fully examined his claims, plaintiff forfeited his right to relitigate his federal claims in federal court.").

For these reasons, I find that Wiltz is precluded from asserting his discrimination claims. Nonetheless, even if the state court's findings were not entitled to preclusive effect, the Court finds that Wiltz's discrimination claims should be dismissed for failure to state a claim.

**C. Plaintiff's FHA Claims Should Be Dismissed For Failure To State A Claim**

The FHA "broadly prohibits discrimination in housing...." *Mitchell v. City of New York*, No. 19-CV-02785 (CM), 2019 WL 2725615, at *3 (S.D.N.Y. July 1, 2019) (quoting *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979)). The FHA, as amended, makes it unlawful "[t]o ... make unavailable or deny, a dwelling to any buyer or renter" or "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith," on the basis of, *inter alia*, race or handicap. 42 U.S.C. §§ 3604 (a), (b), (f)(1)-(2). The FHA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of ... any right granted or protected by" § 3604. 42 U.S.C. § 3617.

**1. Plaintiff's Lease Renewal Claims Should Be Dismissed**

Wiltz alleges both that he was denied a lease renewal because of his race and disability, *i.e.*, as a result of intentional discrimination, and the failure to renew his lease constituted a failure to provide him with a reasonable accommodation. The Court considers separately each of these claims of discrimination.

**a. Intentional Discrimination**

A plaintiff can establish a *prima facie* case of housing discrimination by showing (1) that he is a member of a protected class; (2) that he sought and was qualified to rent or purchase the housing; (3) that he was rejected; and (4) that the housing opportunity remained available to other renters or purchasers. *See LeFrak Org., Inc.*, 987 F. Supp. 2d at 400. Additionally, the plaintiff "must present evidence that animus against the protected group was a significant factor" in the position taken by the defendant." *Id.* (internal citation omitted). However, at the pleading stage, "[t]he allegations in the complaint 'need only give plausible support to a minimal inference of discriminatory motivation." *Khodeir v. Sayyed*, No. 15-CV-08763 (DAB), 2016 WL 5817003, at *6 (S.D.N.Y. Sept. 28, 2016) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

The Court finds that Wiltz cannot state a claim for discrimination based on denial of a lease renewal because he has not adequately alleged that he was qualified for renewal of the rent-stabilized lease. [14] *See Wilson v. Wilder Balter Partners, Inc.*, No. 13-CV-2595 KMK, 2015 WL 685194,

**Wiltz v. New York University, Not Reported in Fed. Supp. (2019)**

2019 WL 8437456

at *9 (S.D.N.Y. Feb. 17, 2015) ("Common to all housing discrimination claims under the FHA, [New York State Human Rights Law], ADA, and the Rehabilitation Act is the requirement that plaintiffs show that they were qualified for an available benefit and were denied that benefit.") (internal citations, quotation marks and alterations omitted); *see also Burris v. Hous. & Servs. Inc.*, No. 17-CV-09289 (JGK), 2019 WL 1244494, at *6 (S.D.N.Y. Mar. 18, 2019) (dismissing plaintiff's claim that she was evicted because of her race when not pleaded that she was qualified for unit); *Pandozy v. Segan*, 518 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (to state claim for housing-related discrimination plaintiff must allege that he is "qualified for the dwelling at issue"), *aff'd*, 340 F. App'x 723 (2d Cir. 2009); *Passanante v. R.Y. Mgmt. Co., Inc.*, No. 99-CV-09760, 2001 WL 123858, at *5 (S.D.N.Y. Feb. 13, 2001) (plaintiff did not make out *prima facie* case of discrimination where plaintiff was not financially qualified to rent apartment). Wiltz's conclusory allegations that he "was and is entitled to a lease renewal" (Compl. ¶ 10), and that he should have been awarded succession rights (*Id.* ¶¶ 85, 115) are insufficient. *See Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) (requirement that court accept factual allegations as true "inapplicable to legal conclusions"); *see also Backus v. U3 Advisors, Inc.*, No. 16-CV-08990 (GHW), 2017 WL 3600430, at *5 (S.D.N.Y. Aug. 18, 2017) ("A complaint that offers 'labels and conclusions' or 'naked assertion[s]' without 'further factual enhancement' will not survive a motion to dismiss.") (quoting *Iqbal*, 556 U.S. at 678).

14    "The law is settled that succession rights are not automatically vested in a potential successor upon the death of a stabilized tenant, but remain inchoate until the occupant's 'status as a qualified successor [is] ratified by judicial determination at a time after the tenant's death' (*245 Realty Assoc. v. Sussis*, 243 A.D.2d 29, 33, 673 N.Y.S.2d 635 (1998)), with the evidentiary burden on the succession issue generally resting with the claimed successor (*see Rent Stabilization Code [9 NYCRR] § 2523.5[e]*)." *S. Pierre Assocs. v. Mankowitz*, 17 Misc. 3d 53, 54-55 (App. Term 1st Dep't 2007).

**\*11** Moreover, the Court finds that Wiltz has failed to allege even a minimal measure of discriminatory motivation. Despite being his third pleading regarding these claims, Wiltz's Complaint contains only conclusory allegations that he was denied a lease renewal based on his race and/or disability and that NYU imposed different rental application standards for white and non-disabled residents. (Compl. ¶¶ 10, 85, 93.) Wiltz provides no factual allegations

supporting his claim that NYU imposed different standards for other residents, nor has he identified any white or non-disabled tenant who received a lease renewal under similar circumstances. Thus, dismissal is appropriate. *See Harris v. Dep't of Hous. Pres. & Dev.*, No. 08-CV-01886 (ENV), 2011 WL 13299800, at *3 (E.D.N.Y. Apr. 5, 2011) ("[C]laims supported only by conclusory statements that defendants discriminated against the plaintiff on account of a protected status do not state a plausible cause of action under the FHA.") (citing *Sanders v. Grenadier Realty, Inc.*, 367 F. App'x 173, 175-76 (2d Cir. 2010)); *Lawtone-Bowles v. New York City Hous. Auth.*, No. 13-CV-01434 (GBD) (JCF), 2014 WL 705272, at *2 (S.D.N.Y. Feb. 20, 2014) (dismissing FHA claim for failure to provide factual allegations raising inference of discriminatory treatment) (citing *Twombly*, 550 U.S. at 555; and *Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) (dismissal appropriate where "bald assertions of discrimination and retaliation" were unsupported by examples of similarly-situated individuals being treated differently)).

To the extent that Wiltz attempts to show racial animus based on the allegation that Lynch's and NYU's lawyers used "code language" in a statement to the DHCR suggesting that Wiltz was an "angry black man" (Compl. ¶ 103), Wiltz does not identify any specific language that could be construed as evidence of discriminatory intent.

### b. Reasonable Accommodation

Next, Wiltz alleges that he was denied a reasonable accommodation to submit a lease renewal, instead of having to defend his rights in Housing Court, and thus was denied an equal opportunity to secure housing. (Compl. ¶¶ 85, 91, 94.) Discrimination based on handicap includes ... a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3). "In order to prove a failure-to-accommodate claim [under the FHA], a plaintiff must show (1) that the plaintiff or a person who would live with the plaintiff had a handicap within the meaning of § 3602(h); (2) that the defendant knew or reasonably should have been expected to know of the handicap; (3) that the accommodation was likely necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation requested was reasonable; and (5) that the defendant refused to make the

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 75 of 105

2019 WL 8437456

requested accommodation." *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014).

Even assuming Wiltz has satisfied the first two factors, he has not shown how the requested "accommodation," a lease renewal at the rent-stabilized rate, was necessary to provide him an equal opportunity to use and enjoy the apartment. [15] Put another way, Wiltz cannot show that he was denied an equal opportunity to a lease renewal. Certainly, NYU was not required to provide him with a lease renewal to which he otherwise was not entitled simply because he suffered a disability. *See Temple v. Hudson View Owners Corp.*, 222 F. Supp. 3d 318, 325 (S.D.N.Y. 2016) ("The law requires only equality, not that a 'superior advantage' be given.") (internal citations and emphasis omitted); *McElwee, 700 F.3d at 641* (housing provider "does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice"); *Williams v. New York City Housing Authority*, 879 F. Supp. 2d 328, 339 (E.D.N.Y. 2012) (Housing Authority had no obligation to "reasonably accommodate [plaintiff's] disability by allowing him to succeed to his mother's lease" in contravention of its policies and other legal obligations); *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001) (dismissing reasonable accommodation claim where "the crux of [plaintiff's] claim is simply that SUNY denied him the accommodations he sought").

[15]  To the extent that Wiltz alleges that he was discriminated against in the Housing Court proceedings, the Court previously dismissed those claims. *See Wiltz v. New York Univ.*, No. 18-CV-00123 (GHW) (SDA), 2019 WL 720700, at *1 (S.D.N.Y. Feb. 19, 2019).

**\*12** Finally, even if Wiltz could assert a discrimination claim based on a reasonable accommodation theory, he would be limited to pursuing injunctive relief. *See Forziano*, 613 F. App'x at 18-19 ("it is well-settled that injunctive relief is the only relief available for non-intentional violations [*i.e.* based on disparate impact or failure to provide reasonable accommodations] of [the FHA, ADA, and Rehabilitation Act].") (internal citations omitted). However, as set forth in Discussion Section IX, below, I find that Wiltz is not entitled to injunctive relief. Thus, I recommend that his reasonable accommodation claim be dismissed.

## 2. Denial Of Repairs Claims

In addition to claims based on the failure to provide a lease renewal, Wiltz alleges that he was denied necessary repairs to his apartment due to his race and disability. (Compl. ¶¶ 1-6, 10, 81, 85.) Prohibited actions under the FHA include failing to provide maintenance or repairs because of, *inter alia*, race or handicap. *See Miller v. 270 Empire Realty LLC*, No. 09-CV-02857 (RJD) (RER), 2012 WL 1933798, at *4 (E.D.N.Y. Apr. 6, 2012) (citing 24 C.F.R. § 100.65(b)(2) ("Prohibited actions under this section include ... [f]ailing or delaying maintenance or repairs of sale or rental dwellings because of race, color, religion, sex, handicap, familial status, or national origin.")), *report and recommendation adopted*, 2012 WL 1940829 (E.D.N.Y. May 29, 2012).

Wiltz alleges that, around December 2015, he notified NYU that the apartment "began to fall into disrepair due to ongoing roof repair work" (Compl. ¶ 40) and requested repairs for a growing floor hazard (*id.* ¶ 85), but the repairs were not addressed and the apartment "was intentionally left in a defective and dangerous condition." (*Id.* ¶ 43.) Wiltz further alleges that, around June 13, 2016, water began leaking into his apartment from the ongoing roof construction, which caused water damage and led to water accumulation in the apartment. (*Id.* ¶ 55.) Wiltz alleges that Lynch, Diaz, CBS, Perlaza and C&W and Broderick "omitted to restore" essential services to his apartment and intentionally avoided performing repairs. (Compl. ¶¶ 57, 58.) Wiltz alleges that these actions were discriminatory because white tenants on the same floor had water damage repairs made in 2016 and white tenants in another building had their floors repaired in 2015 or 2016. (*Id.* ¶ 93.)

As set forth above, the Court finds that Wiltz is precluded from raising these claims because the Article 78 court found no basis to Wiltz's claims that he was denied repairs based on his race or disability. (See 5/29/2019 Article 78 Order, Feinberg Ex. NN, ECF No. 42-2.) Notably, the DHR found that NYU did not engage in discrimination for failing to make repairs because NYU made fifteen written attempts to enter Wiltz's apartment to make repairs, but Wiltz did not grant permission to enter. (*See id.* at 5.) Moreover, for the same reasons as with Wiltz's lease renewal claims, the Court finds that Wiltz has failed to plausibly allege that he was denied repairs based on his disability or race.

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 76 of 105

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

2019 WL 8437456

### 3. **Retaliation Claims** [16]

[16]

    While the Court recommends that Wiltz's discrimination claims be dismissed, the Court separately must consider whether Wiltz has stated a claim for retaliation, as "[e]ven when a plaintiff's underlying discrimination claim is dismissed, [his] retaliation claim may survive if [he] 'had a good faith, reasonable belief' that [he] was opposing [an] unlawful practice." *See Wilson*, 2015 WL 685194, at *12 (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs P.C.*, 716 F.3d 10, 14 (2d Cir. 2013)).

**\*13** Wiltz alleges that he was retaliated against for making accommodation requests because, instead of sending his requests to the housing committee, Defendants, led by Lynch, "ordered an eviction lawsuit be issued against [him] in December 2015 and January 2016." (Compl. ¶¶ 2, 92.) Wiltz further contends that, after he filed complaints with the DHCR, DHPD and the New York State Department of Health, NYU retaliated against him by filing a motion to strike his answer in Housing Court. (*Id.*) Finally, Wiltz contends that he was retaliated against because, after he filed complaints with the DHR and DHCR, NYU's lawyers sent "false information" to those agencies stating that Wiltz was an unlawful tenant. (*Id.*)

The FHA's retaliation provision makes it unlawful "to coerce, intimidate, threaten, or interfere with any person" for exercising the rights protected by the statute. *See* 28 U.S.C. § 3617. To state a *prima facie* case of retaliation under the FHA, a plaintiff must show that: (1) he engaged in protected activity by opposing prohibited conduct; (2) the defendants were aware of that activity; (3) he was subject to an adverse action; and (4) there was a causal connection between the protected activity and the adverse action. *See Wilson*, 2015 WL 685194, at *8 (internal citations omitted). "Moreover, the plaintiff is required to show that [the] defendants' action against him [or her] arose from a discriminatory motive." *Id.* (internal citation and quotation marks omitted).

Protected activity is interpreted broadly and includes any "opposition to an act or practice made unlawful by the applicable anti-discrimination statutes." *Khodeir* 2016 WL 5817003, at *7 (internal citation and quotation marks omitted); *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (defining "protected activity" as

"action taken to protest or oppose statutorily prohibited discrimination"), *superseded on other grounds by the Restoration Act*. A complaint to a government agency can constitute "protected activity." *See id.* at *8 (citing 24 C.F.R. § 100.400(c)(5) (including complaint as an example of protected activity). A request for a reasonable accommodation also can constitute protected activity. *See Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002) (citing *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999) (retaliation claim can be based on, *inter alia*, request for reasonable accommodation)). Thus, assuming the Complaint allegations to be true, the Court finds that Wiltz adequately alleged that he engaged in protected activity.

As for Wiltz's claim based on the eviction proceeding, "[c]ourts in this Circuit and elsewhere have found that an eviction proceeding can constitute an adverse action under Section 3617." *Byrd*, 2018 WL 3110219, at *3 (citing cases). Further, the eviction proceeding was filed after Wiltz made a request for a lease renewal. Thus, Wiltz adequately has alleged a causal connection. *See Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir. 2001) ("The plaintiff's burden at the beginning of the case is a light one, usually demanding only that the protected activity preceded the adverse action in order to satisfy the causation requirement."). Nonetheless, the Court finds that Wiltz's claim should be dismissed because he has failed to allege even a minimal inference of discriminatory motivation.

As for Wiltz's other two retaliation claims, the Court finds that he has not adequately alleged an adverse action. Any injury stemming from NYU's motion to strike was caused by the state court's decision granting that motion and not the motion itself. Moreover, Wiltz has not alleged any adverse action based on the claim that NYU's lawyers told the agencies that he was an unlawful tenant. Thus, I find that Wiltz has failed to state a claim for retaliation on these grounds. [17]

[17]

    The NYU Defendants argue that Wiltz's retaliation claims based on the Housing Court litigation are barred by the absolute litigation privilege. (*See* NYU Mem. at 31.) However, that privilege applies only to claims for defamation, libel or slander. *See Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, No. 18-CV-01781 (PGG), 2019 WL 5103885, at *12 (S.D.N.Y. Oct. 11, 2019) (litigation privilege only applies to defamation, libel and slander actions); *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 429 (S.D.N.Y.

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 77 of 105

2019 WL 8437456

2010) (litigation privilege "wholly inapplicable" when plaintiff did not claim defamation).

**\*14**  In addition, the Court finds that Wiltz's retaliation claims related to the eviction proceeding and NYU's motion to strike could and should have been raised during the eviction proceeding and, thus, are barred by *res judicata. See Springer v. Lincoln Shore Owners, Inc.*, No. 03-CV-4676 (FB) (KAM), 2007 WL 2403165, at \*4 (E.D.N.Y. Aug. 16, 2007) (action barred by *res judicata* because "although the Springers did not argue that the termination would violate FHA and ADA, they could have."). Federal courts allow discrimination claims to proceed in federal court, even when they could have been raised in a state proceeding, if they are sufficiently distinct from the Housing Court proceeding. *See Byrd*, 2018 WL 3110219, at \*8 (citing cases); *see also Sinisgallo*, 865 F. Supp.2d at 323 (noting that a "party can raise a defense, legal or equitable, state or federal, in a summary proceeding commenced in New York State," but, "[n]evertheless, 'the need for speedy dispositions in landlord-tenant matters ordinarily dictates that counterclaims be severed unless they are in essence a defense to landlord's claim or so intertwined with such a defense as to become part and parcel thereof' "). Here, the Court finds that Wiltz's retaliation claims are so intertwined with the eviction proceeding that preclusion is warranted.

Finally, to the extent Wiltz asserts retaliation claims against any of the individual defendants,[18] I recommend that those claims be dismissed for the additional reason that Wiltz fails to allege sufficient facts connecting the individual defendants to the retaliatory conduct.

[18]    Unlike the ADA, the FHA allows for individual liability. *See Andujar v. Hewitt*, No. 02-CV-02223, 2002 WL 1792065, at \*10 (S.D.N.Y. Aug. 2, 2002).

### IV. Plaintiff Fails To State A Claim Under 42 U.S.C. § 1981

Section 1981 provides that: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981. "To state a § 1981 claim, a plaintiff must allege that: (1) [he] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015) (internal citation omitted). "To survive a motion to dismiss, a plaintiff must specifically allege the circumstances giving rise to a plausible inference of racially discriminatory intent." *Id.* (internal citation omitted).

Wiltz's only claim concerning one of the activities enumerated in § 1981 is his claim that he was denied a lease renewal. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (recognizing that defendants could be liable under § 1981 "when, for racially motivated reasons, they prevented individuals who sought to enter into contractual relationships from doing so") (internal citation and quotation marks omitted). As forth in Discussion Section III(C), *supra*, the Court finds that Wiltz's conclusory allegations that he was denied a lease renewal because of his race fail to give rise to a plausible inference of discriminatory intent. For the same reasons, I recommend that his § 1981 claim be dismissed. *See Bentley, Jr.*, 599 F. App'x at 396 ("A plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss."); *see also Chavez v. Maker*, No. 18-CV-07965 (RA) (GWG), 2019 WL 4926348, at \*3 (S.D.N.Y. Oct. 7, 2019) (plaintiff's "vague allegations regarding unspecified prior treatment 'in a disparate manner' " insufficient to support a claim under § 1981).

### V. Plaintiff Fails To State A Claim Under 42 U.S.C. §§ 1985 Or 1986

"To prevail on Section 1985 claim, a plaintiff must establish (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 283 (S.D.N.Y. 2019) (citing *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586-87 (2d Cir. 1988)). In addition, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* at 283-84 (internal citations omitted). Relatedly, § 1986 provides a cause of action against anyone with the power to prevent a § 1985 violation who fails to do so. *See Fountain v. City of White Plains*, No. 13-CV-07016 (LTS) (FM), 2015 WL 5602869, at \*9 (S.D.N.Y. Sept. 23, 2015) (citing *Mian v. Donaldson, Lufkin & Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir.

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 78 of 105

2019 WL 8437456

1993)). Thus, a § 1986 claim must be predicated upon a valid § 1985 claim. *See id.*

**\*15** The Court finds that Wiltz has not adequately alleged facts to suggest a conspiracy on which to base his § 1985 claim. *See Mir v. Zucker*, 19-CV-06374 (CM), 2019 WL 5693695, at \*7 (S.D.N.Y. Nov. 1, 2019) ("vague and unsupported" allegations regarding conspiracy insufficient to state claim under § 1985 or, as a result, § 1986). Moreover, as discussed above in the context of Wiltz's housing discrimination claims, he has failed to adequately allege the necessary racial animus. *See Favourite*, 381 F. Supp. 3d at 284 (dismissing § 1985 claim when plaintiff failed to show that racial animus accounted for defendants' conduct). Because I recommend that the Court dismiss Wiltz's § 1985 claim, I also recommend that his § 1986 claim be dismissed. *See Mian*, 7 F.3d at 1088.

## VI. Plaintiff Fails To State A Claim Under § 1983

Next, Wiltz asserts that the Housing Court, in coordination with NYU and Lynch, violated his rights under the ADA, as well as his constitutional rights to due process and equal protection, in various ways during the eviction proceedings in state court. (Compl. ¶ 95.) To the extent these claims are asserted against the Housing Court, the Court already has dismissed them for failure to state a claim. *See Wiltz*, 2019 WL 720700, at \*\*11-13. Thus, the Court limits its analysis to NYU and Lynch. Wiltz seeks to hold NYU and Lynch liable for alleged violations by the Housing Court, arguing that the Housing Court acted "[i]n coordination with [NYU's lawyers] at Defendant Lynch's request[.]" (*Id.*)

"Because 'the core purpose of § 1983 is to provide compensatory relief to those deprived of their federal rights by state actors,' relief under that statute is only available when the 'actions alleged by the plaintiffs come within the definition of color of state law.' " *Sklodowska-Grezak v. Stein*, 236 F. Supp. 3d 805, 808 (S.D.N.Y. 2017) (quoting *Kia P. v. McIntyre*, 235 F.3d 749, 755-56 (2d Cir. 2000) (internal alterations and quotation marks omitted)). "A private individual may be considered a state actor for purposes of a constitutional challenge if his or her conduct is fairly attributable to the state." *Id.* (citing *Leeds v. Meltz*, 85 F.3d 51, 54 (2d Cir. 1996) (internal quotation marks and brackets omitted)). "Thus, a § 1983 claim 'may be proved by showing that a person acting under color of state law collaborated or conspired with a private person to deprive the plaintiff of a constitutional right.' " *Id.* (citing *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)).

NYU and Lynch are not state actors. *See, e.g., Quow v. Wallach*, No. 16-CV-03947 (AMD), 2016 WL 4099107, at \*2 (E.D.N.Y. Aug. 2, 2016) (plaintiff could not state § 1983 claim against private landlord). Nor has Wiltz adequately alleged that NYU was engaged in state action. [19] *See Favourite*, 381 F. Supp. 3d at 283 ("Extensive government regulation and even public funding, either alone or taken together, will not transform a private actor into a state actor.") (denying § 1983 claim against corporate owner of cooperative apartment building); *see also Burris*, 2019 WL 1244494, at \*9 ("government funding of a private entity ... is insufficient to transform otherwise private conduct into state action.") (internal citation omitted); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a Section 1983 claim against the private entity.").

[19]    Private entities can be said to engage in state action where "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009). "The fundamental question under each test is whether the private entity's challenged actions are fairly attributable to the state." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (internal citation and quotation marks omitted).

**\*16** Moreover, "[t]o prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Wiltz has not plausibly alleged a conspiracy between the Housing Court and NYU and Lynch to deprive Wiltz of his constitutional rights. Thus, I recommend that the Court dismiss Wiltz's § 1983 claim. [20]

[20]    Defendants argue that the Court should abstain from considering Wiltz's constitutional claims pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). However, because I find that Wiltz cannot state a constitutional claim against any Defendant, I do not consider this argument. *See Romero v.*

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)
Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 79 of 105
2019 WL 8437456

*Pataki*, 241 F. App'x 764, 767 (2d Cir. 2007) ("There being no claim that survives Rule 12(b)(6) dismissal, we need not consider whether, if there were valid claims, federal courts should abstain under [*Younger*].").

## VII. Plaintiff's Other Racial Discrimination Claims Should Be Dismissed

In addition to housing discrimination claims, Wiltz purports to bring claims for racial discrimination based on a variety of NYU's alleged practices and policies that he contends "favor[ed] whites causing an adverse impact on Blacks and other minorities." (Compl. ¶ 93.) Wiltz alleges that NYU served inappropriate meals during black history month that played into racial stereotypes; that NYU had a practice of placing black residents on lower floors; that NYU had a practice of placing few minorities in higher positions in the administration; and that NYU gave less preference to black students. (*Id.*) The Court finds that, even if these allegations were sufficient to state a claim for discrimination, Wiltz does not have standing to pursue these claims as he does not allege that he personally was harmed by any of the alleged discrimination. *See Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 481 (S.D.N.Y. 2015) (dismissing claims due to lack of standing when no plaintiff alleged actual, particularized injury from alleged discrimination).

## VIII. Plaintiff Cannot Assert A Claim Under 18 U.S.C. § 241 Or § 242

Wiltz also purports to bring claims pursuant to "Section 241 and 242." (Compl. ¶ 119.) However, Wiltz does not assert which federal law he is referring to. To the extent Wiltz seeks to allege violations of 18 U.S.C. § 241 and § 242, those are provisions of the United States Criminal Code, for which there is no private right of action. *See Williams v. Maney*, No. 17-CV-05853 (GHW), 2017 WL 6729363, at *2 (S.D.N.Y. Oct. 26, 2017) (no private right of action under 18 U.S.C. § 241), *aff'd sub nom. Williams v. Bronx Cty. Child Support Customer Serv. Unit*, 741 F. App'x 854 (2d Cir. 2018); *Storm-Eggink v. Gottfried*, 409 Fed. App'x 426, 427 at *1 (2d Cir. 2011) (no private right of action under § 242). Thus, I recommend that these claims be dismissed.

## IX. Plaintiff's Claims For Injunctive Relief Should Be Denied

Wiltz seeks an injunction compelling NYU to deliver him a rent-stabilized renewal lease to his former apartment. (Compl.

at 59.) The Court finds that Wiltz is not entitled to such relief. Wiltz admits that he is not challenging the validity of the state court's eviction order, which, in any event, he is precluded from doing under the *Rooker-Feldman* doctrine. Wiltz also seeks an injunction requiring Defendants to stop harassing and discriminating against him and requiring Defendants to eliminate policies "discriminating against residents who are minorities or have a disability." (Compl. at 59.) However, to demonstrate that he has standing to seek injunctive relief, Wiltz must allege that there is a "real or immediate threat that he will be wronged again" by Defendants. *Naiman v. New York Univ.*, No. 95-CV-06469 (LMM), 1997 WL 249970, at *4 (S.D.N.Y. May 13, 1997). This must be more than a hypothetical or possible likelihood. *See id.* Because Wiltz is no longer a resident of Washington Square Village, the Court finds that he has not shown a real or immediate threat that he will be wronged again by Defendants. Therefore, the Court finds that Wiltz lacks standing to pursue injunctive relief.[21]

[21]    Because I find that Wiltz is not entitled to injunctive relief, I do not consider whether such relief is barred by the Anti-Injunction Act, 28 U.S.C. § 2283.

## X. Plaintiff's Civil RICO Claims Should Be Dismissed[22]

[22]    In a letter, dated June 14, 2019, Wiltz asks the Court to permit him to amend the Complaint to "exclude the RICO issue." (*See* Pl. Letter, ECF No. 36, at 1.) To the extent that this request can be considered a motion to amend, the Court recommends that it be denied. It appears to the Court that Wiltz is seeking to avoid dismissal of otherwise meritless claims. Thus, the Court addresses the RICO claims herein.

### A. Applicability Of The *Rooker-Feldman* Doctrine

**\*17** Plaintiff's RICO claims are premised on his assertion that he was subject to an unlawful eviction scheme. However, in light of the Housing Court's judgment authorizing NYU to evict Wiltz, any determination by this Court that the eviction was unlawful would, in essence, constitute a rejection of that judgment. Thus, the Court finds that Plaintiff's RICO claims are barred by the *Rooker-Feldman* doctrine. *See Pharr v. Evergreen Garden*, Inc., 123 F. App'x 420, 425 (2d Cir. 2005) (district court properly dismissed, under the *Rooker-Feldman* doctrine, plaintiffs' attempt to challenge the rent increase as a violation of RICO); *see also Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27, 30 (2d Cir. 2003) (doctrine barred RICO claims that directly implicated state court judgment).

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 80 of 105

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

2019 WL 8437456

In any event, even if the Court were to consider Plaintiff's RICO claims on the merits, for the reasons set forth below, I recommend that the claims be dismissed.

### B. RICO Legal Standards

The RICO Act confers a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation" of the statute. 18 U.S.C. § 1964(c). In relevant part, the Act makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c). In order to establish a civil claim under RICO, a plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation." Foster v. 2001 Real Estate, No. 14-CV-09434 (RWS), 2015 WL 7587360, at *3 (S.D.N.Y. Nov. 24, 2015) (citing Lundy v. Catholic Health Sys. of L.I., Inc., 711 F.3d 106, 119 (2d Cir. 2013)).

Racketeering activity is broadly defined to encompass a variety of state and federal offenses (so-called "predicate acts"), including, as alleged here, extortion (18 U.S.C. § 1951), mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1344). See 18 U.S.C. § 1961(1). A " 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Thus, there must be at least two predicate acts to constitute a pattern, though "two acts alone will not always suffice[.]" DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001) (citation omitted).

As for injury and causation, a plaintiff not only must allege an injury to business or property, but also that the defendant's injurious conduct is both the factual and the proximate cause of the injury alleged. See Lerner v. Fleet Bank N.A., 318 F.3d 113, 120 (2d Cir. 2003), abrogation on other grounds recognized by Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 359 (2d Cir. 2016). "RICO pattern or acts proximately cause a plaintiff's injury if they are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23-24 (2d Cir. 1990). This causation requirement is necessary because "the less direct an injury is, the more

difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors." De Sole v. Knoedler Gallery, LLC, 974 F. Supp. 2d 274, 300 (S.D.N.Y. 2013) (internal quotation omitted).

Finally, because civil RICO is an "unusually potent weapon ... courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." Foster, 2015 WL 7587360, at *3. "Alleged RICO violations must be reviewed with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorney's fees in federal court simply because they are cast in terms of RICO violations." Id. (internal quotation and citations omitted).

*18 RICO claims must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b). Rule 9(b) "requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.' " United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 25 (2d Cir. 2016) (alteration in original) (quoting Fed. R. Civ. P. 9(b)). "To satisfy this Rule, a complaint alleging fraud must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " Id. (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)). "The purpose of Rule 9(b) is threefold — it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." Ladas, 824 F.3d at 25 (internal citation omitted).

### C. Application

Wiltz contends that Defendants, along with other individuals and entities not named as defendants in this action, acted together with the common purpose of evicting rent-stabilized tenants from NYU's buildings, including Washington Square Village. (Compl. ¶¶ 121, 128.) Among other infirmities, Plaintiff's RICO claims should be dismissed because he has not adequately alleged a pattern of racketeering activity or a cognizable injury to his business or property.

Case 1:24-cv-00376-BKS-TWD   Document 4   Filed 05/10/24   Page 81 of 105

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

2019 WL 8437456

### 1. **Plaintiff Has Not Alleged A Pattern of Racketeering Activity**

Beyond conclusory allegations of a scheme to defraud, Wiltz attempts to establish a pattern of racketeering activity based on allegations of mail fraud, wire fraud and/or extortion. (*See* Compl. ¶¶ 151-71.) First, Wiltz contends that Defendant Lynch mailed a "false affidavit," in which Lynch stated that it was unknown that Wiltz was a resident in the apartment prior to April 2015. (Compl. ¶ 153.) Wiltz contends that the Housing Court relied on this statement as a basis for finding that Wiltz had not demonstrated a meritorious succession defense. (*Id.*) Second, Wiltz contends that Lynch and one of NYU's lawyers "organized a pseudo housing committee through U.S. mail/wire communications for purposes of advancing the unlawful eviction scheme." (*Id.* ¶ 155.) Next, Wiltz alleges that Lynch used email communications to help NYU organize a separate tenants' association to reduce the power of the tenants' associated that rent-stabilized tenants used to protect their rights. (Compl. ¶ 156.) Wiltz also alleges that, through wire communications with Lynch and Perlaza, Diaz operated a "pseudo investigation" to target rent stabilized tenants (*Id.* ¶ 157) and that Broderick used the mail to "return Wiltz's rent checks and refuse his lease renewal." (*Id.* ¶ 158.) Wiltz further alleges that Lynch threatened rent-stabilized tenants with market-rate rent if they did not give up their apartments. (*Id.* ¶ 162.) Finally, Wiltz alleges that Diaz and Perlaza received "extortion payments" from various third parties in exchange for various business opportunities, and that Lynch and Perlaza engaged in an "extortion plan" to take Wiltz's personal property. (*Id.* ¶¶ 163-68.)

To start, the Court finds that these allegations are insufficient to meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b). *See First Int'l Advisors Corp. v. Wolff*, 956 F. Supp. 480, 485 (S.D.N.Y. 1997) ("general conclusory allegations" insufficient under Rule 9(b)). Moreover, the Court finds that none of Wiltz's myriad of allegations are sufficient to establish a predicate act, let alone a pattern of racketeering activity. The essential elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme. *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004) (quotations and citation omitted). The essential elements of extortion are that the defendant "(1) induced [the victim], with [the victim's] consent, to part with property, (2) through the wrongful use

of actual or threatened force, violence or fear (including fear of economic loss), (3) in such a way as to adversely effect interstate commerce." *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992). Here, while Wiltz references various acts which he contends constitute mail and/or wire fraud, he has not plausibly alleged that any of the alleged conduct was fraudulent. Wiltz's allegations of extortion do not meet the requisite elements. Thus, I recommend that his RICO claims be dismissed. *See Boritzer v. Calloway*, No. 10-CV-06264 (JPO), 2013 WL 311013, at *8 (S.D.N.Y. Jan. 24, 2013) ("[A]s a general rule, even where a complaint directly references various wire or mail transactions, if the allegations of a scheme to defraud are themselves deficient, there will be no plausible claim sounding in fraud—a necessary element of the RICO predicate act of [wire fraud].") (citation omitted).

### 2. **Plaintiff Has Not Alleged Injury To Business Or Property**

**\*19** In addition, Wiltz's RICO claims should be dismissed because he has not adequately alleged an injury to business or property. To the extent that Wiltz bases his RICO claim on the loss of his apartment, he cannot show a property interest in the apartment. Moreover, because the Housing Court found that Wiltz lawfully could be evicted, he cannot show that the alleged RICO predicate acts caused such injury. "Failure to allege that the specifically identified RICO predicate acts proximately caused plaintiff's injury is ground for dismissal at the pleading stage." *Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d 216, 219 (S.D.N.Y. 2002) (citing *First Nationwide Bank v. Gelt Funding*, 27 F.3d 763, 769 (2d Cir. 1994)). "A predicate act does not proximately cause an injury if it merely furthers, facilitates, permits or conceals an injury that happened or could have happened independently of the act." *Id.* (claimed injury happened or could have happened even if alleged predicate acts by Defendant had not occurred) (citation omitted). Wiltz's injury based on the eviction independently was caused by the Housing Court judgment. Thus, I recommend that Wiltz's RICO claims be denied.

Finally, because the Court finds that Plaintiff does not adequately allege a substantive violation of RICO, any allegation of a RICO conspiracy in violation of 18 U.S.C. § 1962(d) should also be dismissed. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004).

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 82 of 105

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

2019 WL 8437456

## XI. **The Court Should Dismiss Any State Law Claims**

To the extent that Wiltz raises any state law claims, I recommend that the Court decline to exercise supplemental jurisdiction over those claims. *See Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction") (quoting 28 U.S.C. § 1367(c)); *see also Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 288 (2d Cir. 2014) (noting that district courts "normally decline to retain jurisdiction in such circumstances").

## XII. **Leave To Amend Should Be Denied**

"In this circuit, '[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.' " *Leneau v. Ponte*, No. 16-CV-00776 (GHW), 2018 WL 566456, at *18 (S.D.N.Y. Jan. 25, 2018) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). However, a District Court may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009). Wiltz already has been given multiple opportunities to amend, including after Defendants twice filed earlier motions to dismiss identifying defects in his pleadings. Despite three attempts to state a claim against Defendants, Wiltz has failed to do so. Thus, I recommend that Wiltz be denied leave to amend. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

## XIII. **Defendants' Motion For An Injunction Should Be Granted In Part**

The NYU Defendants seek an injunction precluding Wiltz from "filing further litigation or administrative complaints against NYU, its employees, and agents for claims arising out of his eviction without the prior approval of the Court." (NYU Injunction Mem., ECF No. 48.) The CBS Defendants join in the NYU Defendants' motion and seek an "injunction prohibiting Plaintiff from filing any new federal/state complaint or administrative proceeding against the CBS Defendants or CBS' employees or agents, concerning his landlord/tenant dispute with NYU—including harassment/discrimination claims—without prior approval of this Court." (CBS Injunction Mem., ECF No. 54.)

"A district court possesses the authority to enjoin a person, including a *pro se* litigant, from filing further vexatious litigation." *Pandozy v. Segan*, 518 F. Supp. 2d 550, 557 (S.D.N.Y. 2007), *aff'd*, 340 F. App'x 723 (2d Cir. 2009) (citing *Polur v. Raffe*, 912 F.2d 52, 57 (2d Cir. 1990)). "In fact, a 'district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation.' " *Id.* (quoting *Safir v. U.S. Lines, Inc.*, 792 F.2d 19 (2d Cir. 1986)); *see also* 28 U.S.C. § 1651.

**\*20** The Second Circuit has articulated five factors for district courts to consider in determining whether to restrict a litigant's future access to court: "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, whether the litigant has an objective good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties." *Id.* (citing *Safir*, 792 F.2d at 24). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.* Any injunction must be "narrowly tailored so as to preserve a [litigant's] right of access to the court." *Lamb v. Cuomo*, No. 16-CV-06568 (JS) (AKT), 2016 WL 7378910, at *2 (E.D.N.Y. Dec. 19, 2016), *aff'd*, 698 F. App'x 1 (2d Cir. 2017). Moreover, the court must provide "notice and an opportunity to be heard" before issuing a filing injunction, *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998), though a party's awareness of a motion requesting such relief and the party's response is considered sufficient notice and opportunity. *See Azkour v. Maucort*, No. 11-CV-05780 (RJS), 2018 WL 1441366, at *1 (S.D.N.Y. Mar. 21, 2018.)

Wiltz has filed multiple duplicative lawsuits in both this Court and in state courts, in addition to raising similar claims before various City and State agencies, which have no hope of providing Wiltz the relief he ultimately seeks, which is to be returned to his previous apartment with a rent-stabilized lease. The Court also recognizes the not-insignificant cost to Defendants of defending against these numerous court actions. As a result, the Court recommends that Wiltz be enjoined from filing any lawsuits in federal court arising out of or related to the Washington Square Village Apartment and/

Wiltz v. New York University, Not Reported in Fed. Supp. (2019)

2019 WL 8437456

or the state court and administrative proceedings commenced by Wiltz, without prior Court approval.

## CONCLUSION

For the foregoing reasons, I recommend that Defendants' motions to dismiss (ECF Nos. 18, 20 & 25) be GRANTED and motion for an injunction (ECF Nos. 47 & 53) be GRANTED IN PART. The Clerk of Court is directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff.

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Woods.

**THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 8437456

---

End of Document    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Wiltz v. New York University, Not Reported in Fed. Supp. (2020)

2020 WL 614658

2020 WL 614658
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Randall WILTZ, Plaintiff,
v.
NEW YORK UNIVERSITY; Franklin Diaz; Erin Lynch;
Collins Building Services, LLC; Angel Perlaza; Cushman
& Wakefield, Inc.; Michael Broderick, Defendants.

1:19-cv-03406-GHW
|
Signed 02/10/2020

**Attorneys and Law Firms**

Randall Wiltz, Astoria, NY, pro se.

Ira Martin Feinberg, Benjamin Andrew Fleming, Andrew
M. Harris, Hogan Lovells US LLP, New York, NY, for
Defendants New York University, Franklin Diaz, Erin Lynch,
Cushman & Wakefield, Inc., Michael Broderick.

Daniel David Schudroff, Catherine Tucciarello, Jackson
Lewis P.C., New York, NY, for Defendants Collins Building
Services, Inc., Angel Perlaza.

MEMORANDUM OPINION AND ORDER

GREGORY H. WOODS, United States District Judge:

 **\*1** On February 24, 2016, New York University ("NYU")
initiated an eviction proceeding in New York City Civil
Court's Housing Part ("Housing Court") to remove *pro se*
plaintiff Randall Wiltz from the rent-stabilized apartment
(the "Washington Square Village Apartment") that he had
allegedly shared with the now-deceased Martha Dewell. This
sparked a rash of litigation that ultimately culminated in
this proceeding. On December 23, 2019, Magistrate Judge
Stewart D. Aaron issued a Report and Recommendation
recommending that Defendants' motions to dismiss the
complaint be granted, as well as recommending that the
motion by Defendants NYU, Franklin Diaz, Erin Lynch,
Collins Building Services, Inc., and Angel Perlaza for an
injunction precluding Plaintiff from filing further litigation
in federal court without prior approval of the Court be granted
in part. For the reasons set forth below, the Report and
Recommendation is accepted and adopted in its entirety.

**I. RELEVANT BACKGROUND**
For a more detailed recitation of Plaintiff's claims, the
Court refers the reader to Magistrate Judge Aaron's Report
and Recommendation, which thoroughly and accurately
summarizes the knotty web of procedural history presented
in this litigation. Briefly: This case arises out of NYU's
decision to evict Wiltz from an NYU-owned rent-stabilized
apartment, when the tenant of record, Ms. Dewell, died. *See*
Compl., Dkt. No. 2, ¶¶ 26, 41. Plaintiff then sued, claiming
that the Defendants had violated, among other things, the
Civil Rights Act, the Fair Housing Act, the Americans with
Disabilities Act ("ADA"), and the Racketeer Influenced and
Corrupt Organizations Act ("RICO"). *See Wiltz v. New York
University, et al.*, No. 1:18-cv-0123-GHW (S.D.N.Y. filed
Jan. 8, 2018) ("*Wiltz I*"). Defendants moved to dismiss, and
Plaintiff amended his complaint pursuant to Federal Rule of
Civil Procedure 15(a)(1)(B) on May 7, 2018. *Wiltz I*, Dkt. No.
80. Shortly thereafter, Wiltz initiated an action in state court,
filing a complaint virtually identical to his amended complaint
in *Wiltz I*, which Defendants promptly removed to federal
court. *See Wiltz I*, Dkt. No. 112; *Wiltz v. New Your University,
et al.*, No. 1:18-cv-11168-GHW (S.D.N.Y. filed Nov. 30,
2018) ("*Wiltz II*"). Defendants again moved to dismiss, and
the Court ultimately granted Defendants' motions. *See Wiltz
I*, Dkt. No. 149.

On March 15, 2019, Wiltz voluntarily dismissed this first
action under Rule 41(a)(1)(A)(i), claiming that his medical
and housing problems prevented him from fully engaging
in litigation. *Wiltz I*, Dkt. No. 162; *Wiltz II*, Dkt. No. 37.
Before endorsing the dismissal, the Court conferred with the
parties to clarify Plaintiff's position, and noted on the record
that Defendants reserved their rights under Rule 41(d), which
ensures that: "If a plaintiff who previously dismissed an action
in any court files an action based on or including the same
claim against the same defendant, the court: (1) may order
the plaintiff to pay all or part of the costs of that previous
action; and (2) may stay the proceedings until the plaintiff has
complied." *See* Status Conference Tr., *Wiltz I*, Dkt. No. 164,
3:25-4:20.

 **\*2** Wiltz initiated this action on April 16, 2019, again
claiming that Defendants had violated numerous federal
statutes in evicting him, including 42 U.S.C. § 1983; the Fair
Housing Act; the ADA; the Rehabilitation Act; and RICO.
Compl., Dkt. No. 2, ¶¶ 82-174. Defendants moved to dismiss
on May 14, 2019. Dkt. Nos. 18-27. The Court referred these
motions to Magistrate Judge Aaron. Dkt. No. 14.

Case 1:24-cv-00376-BKS-TWD   Document 4   Filed 05/10/24   Page 85 of 105

Wiltz v. New York University, Not Reported in Fed. Supp. (2020)
2020 WL 614658

Judge Aaron issued his Report and Recommendation on December 23, 2019, recommending that Defendants' motions to dismiss the complaint be granted, as well as recommending that the motion by Defendants NYU, Franklin Diaz, Erin Lynch, Collins Building Services, Inc., and Angel Perlaza for an injunction precluding Plaintiff from filing further litigation without prior approval of the Court be granted in part. Report and Recommendation ("R&R"), Dkt. No. 65. Plaintiff timely objected on January 13, 2020. Dkt. No. 68.

## II. LEGAL STANDARD

When a party timely objects to a magistrate's report and recommendation, a district court reviews, *de novo*, "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.,* No. 07 Civ. 6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); *see also Ortiz v. Barkley,* 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.") (citation and internal quotation marks omitted). "Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a meaningless dress rehearsal. The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge." *Vega v. Artuz,* No. 97 Civ. 3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (citations and internal quotation marks omitted). Finally, "it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Sci. Components Corp. v. Sirenza Microdevices, Inc.,* No. 03 Civ. 1851 (NGG)(RML), 2006 WL 2524187, at *2 (E.D.N.Y. Aug. 30, 2006).

Although the objections of *pro se* parties are "generally accorded leniency and should be construed to raise the strongest arguments that they suggest," *Howell v. Port Chester Police Station,* No. 09 Civ. 1651 (CS)(LMS), 2010 WL 930981, at *1 (S.D.N.Y. Mar. 15, 2010) (citations and

internal quotation marks omitted), those of a practicing lawyer representing himself "ordinarily receive[ ] no such solicitude at all," *Tracy v. Freshwater,* 623 F.3d 90, 102 (2d Cir. 2010) (collecting cases). Thus, the solicitude owed to Wiltz—a lawyer who received an LL.M. from NYU School of Law but claims that he has never worked in a law firm, practiced in federal court, or represented a client in a courtroom, *see* Compl. ¶ 11—falls somewhere between those two extremes.

## III. ANALYSIS

**\*3** Most of Plaintiff's initial objections repackage the same arguments he has unsuccessfully presented to both the magistrate judge and numerous state courts and agencies over the last two years. Such objections warrant only clear error review. *See Vega,* 2002 WL 31174466, at *1. Plaintiff submitted many more objections only in his reply—which was received after the February 4, 2020 deadline. [1] *See* Dkt. Nos. 69, 75. Again, even when a *pro se* litigant's pleadings are granted special solicitude, that "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006). This is all the more true when the pro se plaintiff is a lawyer. Still, the Court has reviewed the Report and Recommendation *de novo,* and found it thorough, well-reasoned, and correct. Magistrate Judge Aaron employed the proper legal standards, accurately recited the facts, and then reasonably applied the law to the facts.

[1]    Because Wiltz is proceeding *pro se,* the Court has reviewed these new objections, but notes that it does not believe Wiltz warrants the same special solicitude granted to unsophisticated non-lawyers, and is cognizant of the Second Circuit's clear guidance that "[a]rguments may not be made for the first time in a reply brief." *Knipe v. Skinner,* 999 F.2d 708, 711 (2d Cir. 1993).

Plaintiff's objections are meritless. In one, Plaintiff asserts that the Report incorrectly ignored the "sufficient facts" that bring "NYU's role" as a public entity "into question." Objections, Dkt. No. 68, at 5-7. But, as the Report and Recommendation correctly concluded, even assuming that NYU had an agreement with New York City to "judge the rights of rent stabilized tenants," Objections at 5-6, any contract between NYU and the City still would not turn NYU into a public entity as a matter of law. *See* R&R at 15-16 (citing cases). And Judge Aaron's Report and Recommendation did not "fail[ ]

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 86 of 105

Wiltz v. New York University, Not Reported in Fed. Supp. (2020)

2020 WL 614658

to consider" that the Washington Square Village Apartment "is an official dormitory facility," Reply, Dkt. No. 75, at 4—it instead accurately noted that residential facilities or apartment buildings are not public accommodations under the ADA, *R&R* at 16 (citing cases).

In another objection, Plaintiff challenges Defendants' removal of his August 2018 state court action to federal court. But Plaintiff voluntarily discontinued that action in March 2019—a month before filing the instant action in this court, alleging federal question jurisdiction. *See Wiltz I*, Dkt. No. 162; *Wiltz II*, Dkt. No. 37. And even if Defendants' removal of the August 2018 state court action had any bearing on this case, this court will not entertain arguments Plaintiff failed to raise before the magistrate judge. *See Sci. Components Corp*, 2006 WL 2524187, at *2; *see also Abu-Nassar v. Elders Futures, Inc.*, No. 88 Civ. 7906 (PKL), 1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994) (refusing to entertain new arguments not raised before Magistrate Judge—to do otherwise "would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments").

Plaintiff also challenges the degree of solicitude that Judge Aaron afforded his pleadings and asserts that "[n]ot all that facts were considered in the Plaintiff's favor." Objections at 4. But the solicitude afforded to *pro se* plaintiffs, and the mandate that courts reads their pleadings liberally, interpreting them to raise the strongest arguments that they suggest, *see Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir. 1999), "is not without limits, and all normal rules of pleading are not absolutely suspended," *Gil v. Vogilano*, 131 F. Supp. 2d 486, 491 (S.D.N.Y. 2001) (quotation omitted). Thus, under Federal Rule of Civil Procedure 12(b)(1), if "jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quotation omitted). And when deciding a motion to dismiss under Rule 12(b)(6), "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**\*4** Finally, Plaintiff objected to the magistrate's application of the five-factor test laid out in *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986) to determine whether or not a district judge should restrict a litigant's future access to the courts. *See* Objections at 19; Reply at 18-20. Wiltz claims that Judge Aaron failed to 1) determine whether the application of the five factors warrants imposing an injunction, 2) identify which of his suits were duplicative, or 3) provide him with a hearing. Objections at 19.

In *Safir*, the Second Circuit articulated five factors to be considered in determining whether to restrict a litigant's future access to court: "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. Ultimately, the question the court must answer is whether a litigant has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir*, 792 F.2d at 24.

The answer in this case, as Magistrate Judge Aaron correctly identified, is yes. As the Report and Recommendation details, Wiltz has peppered New York agencies, state courts, and the federal judiciary with countless, meritless claims stemming from his original eviction proceedings in Housing Court in 2016. *See* R&R at 3-9. These include, among others, *Wiltz I*, *Wiltz II*, and the instant action, *Wiltz III*. And like the litigant in *Safir*, "he has repeatedly asserted the same claims in slightly altered guise" and all of his claims "have been resoundingly rejected by the courts." *Safir*, 792 F.2d at 24. And though Wiltz is not represented by counsel, he is not an unsophisticated litigant—the story of this litigation has its roots in Wiltz's move to Washington Square Park to complete an LL.M. at NYU School of Law.

The fourth and fifth *Safir* factors also weigh in favor of imposing an injunction. Without question, Wiltz's litigiousness has required the defendants to incur needless expenses and unnecessarily burdened the Court and its personnel: Wiltz's submissions are dense and lengthy, requiring significant investment of time both from the Court and those who "have had to defend themselves against [the plaintiff's] virtually unending onslaught of litigation." *In re Cunningham*, No. 17-CV-7809 (CM), 2018 WL 10038795, at *10 (S.D.N.Y. Mar. 22, 2018). Further, it is unlikely that any other sanctions would stop Plaintiff from continuing to file

frivolous complaints, given his history of litigation involving the Washington Square Village Apartment.

The Court notes that Defendants could have invoked their right under Federal Rule of Civil Procedure 41(d), demanding that Wiltz pay Defendants' costs and fees associated with the prior action before proceeding in *Wiltz III*. Fed. R. Civ. P. 41(d); *see also BH Seven, LLC v. Ambit Energy, L.P.*, No. 11-CV-2483 (ARR)(RER), 2012 WL 4445825, at *2 (E.D.N.Y. Sept. 25, 2012). This would have amounted to an even more severe sanction—effectively barring Wiltz, who is proceeding *in forma pauperis, see* Dkt. Nos. 1, 3, from the adjudication of the merits of his complaint. Only after rejecting the substance underlying his third entrée into federal court will the Court finally bar its doors.

 *5  Finally, though Wiltz asserts that he was denied a hearing in connection with Defendant's application for an injunction, he was alerted to the possibility that the Court may impose an injunction when Defendants moved for one on July 22, 2019. Dkt. No. 47. Indeed, Plaintiff substantively responded to that motion. *See* Dkt. No. 58. "Accordingly, the Court finds that Plaintiff had notice that the Court might impose a filing injunction and had ample opportunity to respond to Defendants' request." *Azkour v. Maucort*, No. 11-CV-5780 (RJS), 2018 WL 1441366, at *1 (S.D.N.Y. Mar. 21, 2018) (citing *Robert v. Dep't of Justice*, 439 F. App'x 32, 35 (2d Cir. 2011)).

In sum, Judge Aaron correctly applied the *Safir* factors, and did not err in enjoining Plaintiff from filing any lawsuits in federal court arising out of or related to the Washington Square Village Apartment and/or the state court and administrative proceedings commenced by Plaintiff, without prior Court approval. Plaintiff's objections to the Report and Recommendation are meritless.

## IV. CONCLUSION

For these reasons, the Court accepts and adopts the thorough and well-reasoned Report and Recommendation in its entirety.

Before Wiltz files any other action in federal court arising out of or related to the Washington Square Village Apartment and/or the state court and administrative proceedings commenced by Plaintiff, he must first request permission from the Clerk of Court. Any such request should 1) include a copy of his proposed complaint and any supporting documents; 2) bear the caption "Request for Permission to File under Filing Injunction"; 3) be addressed to the Clerk of Court; and 4) be submitted to the Pro Se Intake Unit of the Southern District of New York. Any violation of this sanction could expose Wiltz to other sanctions, including monetary penalties. *See Cunningham*, 2018 WL 10038795, at *11.

The Clerk of Court is further directed to terminate the motions pending at Dkt. Nos. 18, 20, 25, 47, and 53, to enter judgment for Defendants, and to close this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 614658

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

2016 WL 4046780
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jorge TIRSE, Plaintiff,

v.

David GILBO in his official capacity as a Lieutenant
in the Johnstown Police Dep't; Johnstown Police
Dep't; Gloversville Police Dep't; Donald Vandeusen
in his official capacity as the Chief of Police of the
Gloversville Police Department; Louise Sira in her
official capacity as District Attorney of the County of
Fulton; John P. Sira, Jr., in his official capacity as a
Captain in the Gloversville Police Dep't; Jesse Ashdown
in his official capacity as a Special Prosecutor and
Assistant District Attorney in the County of Saratoga
District Attorney's Office; Fulton County; Mark Gifford
in his official capacity as the Chief of Police of the
Johnstown Police Dep't; and Darryl Bazan in his official
capacity as a New York State Police Investigator in
the Bureau of Criminal Investigation, Defendants.

6:15-CV-0987 (GTS/ATB)
|
Signed 07/27/2016

**Attorneys and Law Firms**

JORGE TIRSE, 53 Park Street, Gloversville, New York
12078, Plaintiff Pro Se.

MURPHY, BURNS, BARBER & MURPHY, LLP, 226 Great
Oaks Blvd., OF COUNSEL: THOMAS K. MURPHY, ESQ.,
STEPHEN M. GROUDINE, ESQ., Albany, New York 12203,
Counsel for Defendants David Gilbo, Johnstown Police
Dept., and Mark Gifford.

LEMIRE JOHNSON, LLC, P.O. Box 2485, 2534 Route 9, OF
COUNSEL: APRIL J. LAWS, ESQ., GREGG T. JOHNSON,
ESQ., Malta, New York 12020, Counsel for Defendants
Louise Sira, Donald VanDeusen, Gloversville Police Dept.,
John P. Sira, Jr., Jesse Ashdown, and Fulton County.

ERIC T. SCHNEIDERMAN, 615 Erie Blvd. West, Suite
102, OF COUNSEL: KEVIN M. HAYDEN, ESQ., Assistant
Attorney General, Syracuse, New York 13204, GLENN T.
SUDDABY, Chief United States District Judge, Attorney

General for the State of New York, Counsel for Defendant
Darryl Bazan.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Jorge Tirse ("Plaintiff") against the County
of Fulton, Louise Sira in her official capacity as the District
Attorney for the County of Fulton (collectively "County
Defendants"), the Gloversville Police Department, Donald
VanDeusen in his official capacity as the Chief of Police
of the Gloversville Police Department, John P. Sira, Jr.,
in his official capacity as a Gloversville Police Captain
(collectively "Gloversville Defendants"), Jessie Ashdown in
his official capacity as a special prosecutor and an Assistant
District Attorney for the County of Saratoga ("Defendant
Ashdown"), the Johnstown Police Department, Mark Gifford
in his official capacity as the Chief of Police of the Johnstown
Police Department, David Gilbo in his official capacity as a
Lieutenant in the Johnstown Police Department (collectively
"Johnstown Defendants"), and Darryl Bazan in his individual
and official capacity as a New York State Police Investigator
("Defendant Bazan"), are Defendants' respective motions to
dismiss Plaintiff's Complaint (Dkt. No. 1) for failure to state
a claim upon which relief can be granted, pursuant to Fed. R.
Civ. P. 12(b)(6) (Dkt. Nos. 11, 14, 26, 27, 30). For the reasons
set forth below, Defendants' motions are granted.

**I. RELEVANT BACKGROUND**

Generally, liberally construed, Plaintiff's Complaint alleges
as follows. On November 29, 2011, Plaintiff's business was
closed due to a civil dispute with his landlord, Joseph
Andrews. (Dkt. No. 1, ¶ 1 [Pl.'s Compl.].) On the same
day, Plaintiff was given a notice from the Johnstown Police
Department not to trespass on the property. (*Id.*, ¶ 3.) On
December 1, 2011, Plaintiff went to the Johnstown Police
Department to file a complaint against Mr. Andrews and Mr.
Andrews's friend, "Sgt. Stevens," for not allowing Plaintiff
to access the property and for threatening to arrest him
even though he had a lease with Mr. Andrews. (*Id.*, ¶ 2.)
While at the police department, Plaintiff was interviewed by
Defendant Gilbo, who secretly recorded the interview. (*Id.*, ¶
4.) In that interview, Plaintiff described everything that had
happened. (*Id.*) The interview lasted nine minutes and 32
seconds; however, Defendants Gilbo and Bazan conspired to
edit the video so it would show only three minutes of the

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

interview. (*Id.*, ¶¶ 4-5, 31, 34.) The unedited video would have constituted proof that Plaintiff had not committed a crime; but, because it was edited, it depicted Plaintiff admitting to a crime that he never committed. (*Id.*, ¶ 7.) The video was later used in Plaintiff's criminal prosecution. (*Id.*, ¶ 6.)

On December 7, 2011, Plaintiff commenced a breach-of-contract action against Mr. Andrews in New York State Supreme Court, Fulton County. (*Id.*, ¶ 10.) The following day, Mr. Andrews filed a criminal complaint against Plaintiff, alleging that Plaintiff had forged his signature on the lease. (*Id.*, ¶ 11.) This was a false accusation, evidenced by the fact that Plaintiff had sent the lease to the New York State Liquor Authority on November 23, 2011, one week before Mr. Andrews prohibited Plaintiff from entering the premises. (*Id.*, ¶ 13.) On January 13, 2012, Plaintiff was falsely arrested by Defendant Bazan for felony forgery. (*Id.*, ¶¶ 14-15.) During Plaintiff's criminal and civil proceedings, he was advised by the court and Defendant Ashdown that, if Plaintiff dropped his civil suit against Mr. Andrews, the criminal charges against him would be withdrawn. (*Id.*, ¶¶ 16-17.) Defendant Ashdown was assigned as a special prosecutor to handle Plaintiff's criminal prosecution due to Defendant Louise Sira's relationship with Mr. Andrews. (*Id.*, ¶ 18.) Plaintiff alleges that the forgery charge was a "trump charge" to use as leverage against him and to coerce him into dismissing his civil action against Mr. Andrews. (*Id.*, ¶¶ 18-21.)

**\*2** Furthermore, "in-house police reports" generated by the Gloversville Police Department were used in bad faith and to maliciously prosecute Plaintiff. (*Id.*, ¶¶ 22, 26-27.) Plaintiff alleges that Defendant John Sira conspired in Plaintiff's malicious prosecution by forwarding these in-house police reports to Gerard McAuliffe, Mr. Andrews's attorney, who in turn sent them to Defendant Ashdown. (*Id.*, ¶¶ 22, 24, 26.) Defendant John Sira knew that using or sharing these in-house documents violated federal, state, and local laws. (*Id.*, ¶ 29.) Defendant John Sira is married to Defendant Louise Sira. (*Id.*, ¶ 28.)

On August 15, 2012, Plaintiff received a copy of the video that recorded his interview with Defendant Gilbo. (*Id.*, ¶ 30.) Defendant Ashdown also received a copy of this video but claims he never watched it. (*Id.*, ¶ 33.) Plaintiff had difficulty viewing the video because it was saved under the editing software used by the police department. (*Id.*, ¶ 35.) Plaintiff went to the Johnstown Police Department and received assistance from an officer in accessing the videotape. (*Id.*) When Plaintiff finally viewed the videotape, he noticed

that it did not end correctly. (*Id.*, ¶ 36.) As a result, Plaintiff made a Freedom of Information Law ("FOIL") request for the entire videotape, which was denied by Defendant Gilbo. (*Id.*) Plaintiff spoke with Defendant Gifford regarding the matter, including the fact that the videotape had been tampered with and had been done so out of malice. (*Id.*, ¶ 37.) Defendant Gifford told Plaintiff that he "shouldn't of [done] what [he] did" and hung up the telephone. (*Id.*) Plaintiff left several messages for Defendant Gifford but they were never returned. (*Id.*, ¶ 38.) Plaintiff also contacted public officials, such as the local Mayor, regarding the issue but to no avail. (*Id.*, ¶¶ 39-40, 43.) Plaintiff eventually sent the videotape to be analyzed and the results confirmed that it had been edited and tampered with. (*Id.*, ¶ 40.)

Based upon the foregoing allegations, the Complaint asserts the following eight causes of action: (1) a claim that Defendants maliciously abused their power by using legal process to accomplish some ulterior purpose outside the legitimate ends of process in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (2) a claim that Defendants deliberately abused legal process in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (3) a claim that Defendants intentionally inflicted emotional distress on Plaintiff in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (4) a claim that Defendants falsely arrested Plaintiff and deprived him of his constitutional rights in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988; (5) a claim that Defendants maliciously prosecuted Plaintiff in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (6) a claim that Defendants conspired to violate Plaintiff's constitutional rights in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1983 and 1985; (7) a claim that Defendants refused or neglected to prevent Plaintiff's constitutional rights from being violated in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983; and (8) a claim that Defendants Gifford and VanDeusen failed to train, supervise, and discipline their subordinates in their respective police departments in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983. (*Id.* at 9-16.)

## II. PARTIES' BRIEFING ON DEFENDANTS' MOTIONS TO DISMISS

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 90 of 105

**1. Defendants' Memoranda of Law in Chief on Their Respective Motions to Dismiss**

**a. The County Defendants' Memorandum of Law in Chief**

**\*3**  Generally, in their memorandum of law, the County Defendants assert thirteen arguments with regard to Plaintiff's claims against them. (Dkt. No. 11, Attach. 5 [Cty. Defs.' Mem. of Law].)

First, the County Defendants argue that Defendant Louise Sira is entitled to prosecutorial immunity because (a) she acted within the scope of her duties in initiating the criminal prosecution against Plaintiff, and (b) she recused herself from the criminal prosecution itself. (*Id.* at 5-7.)

Second, the County Defendants argue that Plaintiff's claims for abuse of process, false arrest, and conspiracy are time-barred by New York's three-year statute of limitations for personal injury. (*Id.* at 7.)

Third, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a claim under 42 U.S.C. § 1981 because it does not allege that Plaintiff is a member of a racial minority or that Defendants discriminated against Plaintiff on the basis of his race. (*Id.* at 9.)

Fourth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a claim under 42 U.S.C. § 1985 because it does not allege that they acted with racial animus toward Plaintiff. (*Id.* at 10-11.)

Fifth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a claim under 42 U.S.C. § 1986 because (a) it does not allege facts indicating that they had any involvement in Plaintiff's criminal prosecution, and (b) a viable § 1985 claim is a prerequisite for an actionable § 1986 claim. (*Id.* at 11.)

Sixth, the County Defendants argue that Plaintiff's 42 U.S.C. § 1983 claim must be dismissed because the Complaint fails to allege facts plausibly suggesting that they violated his constitutional rights. (*Id.* at 9-10.)

Seventh, the County Defendants argue that Plaintiff's malicious abuse of power and abuse of process claims must be dismissed because the Complaint fails to allege facts plausibly

suggesting that they acted with malice and/or that they attempted to achieve a collateral purpose beyond Plaintiff's criminal proceeding. (*Id.* at 12-14.)

Eighth, the County Defendants argue that Plaintiff's false arrest claim must be dismissed because (a) the New York Court of Claims has already determined that there was probable cause to arrest him, and (b) the Complaint fails to allege facts plausibly suggesting any involvement by the County Defendants in Plaintiff's arrest in that Plaintiff alleges that he was arrested by the New York State Police following an investigation by the Johnstown Police Department and then prosecuted by a special prosecutor from Saratoga County (i.e., Defendant Ashdown). (*Id.* at 14-15.)

Ninth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a malicious prosecution claim against them because (a) the Complaint alleges that Plaintiff's criminal proceeding was initiated by the New York State Police as well as Defendant Ashdown and not the County Defendants, (b) Plaintiff did not receive a favorable termination of the criminal charges against him, and (c) the New York Court of Claims has already determined that there was probable cause to arrest him. (*Id.* at 15-16.)

Tenth, the County Defendants argue that Plaintiff's conspiracy claim must be dismissed because the Complaint fails to allege facts plausibly suggesting a "meeting of the minds" between the County Defendants and the other Defendants regarding an agreement to conspire against Plaintiff. (*Id.* at 16-17.)

**\*4**  Eleventh, the County Defendants argue that Plaintiff's state law claim for intentional infliction of emotional distress must be dismissed because (a) Plaintiff never served them with a notice of claim, and (b) the Complaint fails to allege facts plausibly suggesting that they engaged in extreme or outrageous conduct. (*Id.* at 18-19.)

Twelfth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a *Monell* claim because it does not cite to and/or describe any Fulton County policy or custom that allegedly caused him a constitutional deprivation. (*Id.* at 20.)

Thirteenth, and finally, the County Defendants argue that Defendant Louise Sira is entitled to qualified immunity because (a) she recused herself from Plaintiff's criminal investigation and prosecution, and (b) the New York Court of Claims has determined that there was probable cause to arrest

**Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)**
Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 91 of 105
2016 WL 4046780

Plaintiff and, therefore, Defendant Louise Sira did not violate any of his clearly established rights. (*Id.* at 21-22.)

### b. The Gloversville Defendants'
### Memorandum of Law in Chief

The Gloversville Defendants have substantially restated all of the County Defendants' arguments in support of their motion to dismiss. (*Compare* Dkt. No. 14, Attach. 3, at 5-17, 22-23 [Gloversville Defs.' Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 7-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here. Rather, the Court will merely summarize the three additional arguments that the Gloversville Defendants assert.

First, the Gloversville Defendants argue that governmental immunity, which shields public entities from liability for discretionary actions taken during the performance of governmental functions, bars any state law negligence claim asserted against them for the following reasons: (a) responding to a FOIL request is a discretionary act; (b) Plaintiff has failed to allege facts plausibly suggesting that he had a special relationship with any of the Gloversville Defendants, which acts as an exception to governmental immunity; and (c) Plaintiff has not alleged facts plausibly suggesting either (i) the existence of a City policy or identifiable custom under which his alleged injury occurred, or (ii) a causal connection between such policy and a constitutional deprivation. (Dkt. No. 14, Attach. 3, at 18-19 [Gloversville Defs.' Mem. of Law].)

Second, the Gloversville Defendants argue that any claims against them in their individual capacities must be dismissed because the Complaint fails to allege specific facts plausibly suggesting their personal involvement in the constitutional violations alleged. (*Id.* at 19-20.) More specifically, they argue that the only specific allegations regarding Defendant VanDeusen and Defendant John Sira are that Defendant Sira responded to a third-party FOIL request in his capacity as chief FOIL officer for the Gloversville Police Department. (*Id.* at 20.) The Gloversville Defendants argue that Plaintiff's conclusory allegation that Defendant VanDeusen failed to supervise Defendant Sira when he responded to the FOIL request is insufficient to plausibly suggest a constitutional violation or supervisory liability. (*Id.*)

Third, the Gloversville Defendants argue that, in any event, Defendant VanDeusen and Defendant John Sira are entitled to

qualified immunity because (a) even though these Defendants did not participate in Plaintiff's criminal investigation, the New York Court of Claims has already determined that there was probable cause to arrest him, and (b) the Complaint fails to allege facts plausibly suggesting that they violated Plaintiff's clearly established rights, or that they had reason to believe that Plaintiff's rights were being violated when they processed the non-party FOIL request. (*Id.* at 20-22.)

### c. Defendant Ashdown's Memorandum of Law in Chief

**\*5** Defendant Ashdown substantially restates the County Defendants' arguments in support of his motion to dismiss. (*Compare* Dkt. No. 26, Attach. 3, at 7-21 [Ashdown Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 5-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here.

### d. Defendant Bazan's Memorandum of Law in Chief

Defendant Bazan substantially restates the County Defendants' arguments in support of his motion to dismiss. (*Compare* Dkt. No. 27, Attach. 3, at 10-20 [Bazan Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 7-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here.

### e. The Johnstown Defendants'
### Memorandum of Law in Chief

The Johnstown Defendants substantially restate the County Defendants' arguments in support of their motion to dismiss. (*Compare* Dkt. No. 30, Attach. 3, at 4-7 [Johnstown Defs.' Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 7-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here. Rather, the Court will merely summarize the three additional arguments that the Johnstown Defendants assert.

First, the Johnstown Defendants argue that Plaintiff's claims against the Johnstown Police Department must be dismissed for the following reasons: (a) it is an administrative arm of the City of Johnstown and, therefore, does not have its own legal identity; (b) the County of Fulton is the proper party in interest; and (c) Plaintiff has failed to allege facts plausibly suggesting an official policy, practice or custom that caused

**Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)**

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 92 of 105

2016 WL 4046780

his constitutional rights to be violated in order to state a *Monell* claim. (Dkt. No. 30, Attach. 3, at 9-10 [Johnstown Defs.' Mem. of Law].)

Second, the Johnstown Defendants argue that Plaintiff's state law tort claims for intentional infliction of emotional distress and negligence must be dismissed because (a) he failed to serve a notice of claim, and (b) the claims are time-barred by the one-year and ninety-day limitations period. (*Id.* at 10-12.)

Third, the Johnstown Defendants argue that Defendants Gifford and Gilbo are entitled to qualified immunity because the New York Court of Claims has already determined that probable cause existed to arrest Plaintiff. (*Id.* at 12-13.)

### 2. Plaintiff's Opposition Memorandum of Law

#### a. Plaintiff's Memorandum of Law in Opposition to the County Defendants' Motion to Dismiss

Generally, liberally construed, Plaintiff asserts three arguments in opposition to the County Defendants' motion to dismiss. (Dkt. No. 32 [Pl.'s Opp'n Mem. of Law].)

First, with respect to Defendant Louise Sira, Plaintiff argues that she is not entitled to prosecutorial immunity for the following three reasons: (a) she knew that she was not supposed to interfere with Plaintiff's prosecution but did so by reviewing statements made by Defendants, providing Defendant Bazan with a subpoena, and assisting him throughout his investigation; (b) she was aware of the conflict of interest regarding her involvement in the criminal investigation against Plaintiff but continued to assist in the investigation in order to find probable cause to arrest him; and (c) she recused herself only after the criminal investigation had been completed and she had collected sufficient evidence to secure Plaintiff's arrest. (*Id.* at 6-8.)

**\*6** Second, Plaintiff argues that his *Monell* and § 1983 claims against the County of Fulton should not be dismissed for the following reasons: (a) the County violated N.Y. Gen. Mun. Law § 18 because of its numerous monetary contracts with the City of Gloversville and allowing Defendant John Sira to be employed as Captain of the Gloversville Police Department and Louise Sira to be employed as district attorney despite the fact that they are married, which created an inherent conflict of interest; (b) the County allowed Defendant Louise Sira to assist in the criminal investigation

against Plaintiff despite the conflict of interest that existed due to her relationship with Mr. Andrews; (c) the County turned a blind eye to these numerous conflicts of interest; and (d) the County is vicariously liable for the actions of Defendant Ashdown because it appointed him as special prosecutor to handle Plaintiff's criminal prosecution. (*Id.* at 8-9.)

Third, Plaintiff argues that his claims for abuse of process, false arrest, and conspiracy are not barred by the three year limitations period for the following reasons: (a) he did not agree to a plea deal on July 5, 2012, but instead the criminal charges against him were dropped on that date and the case was ultimately dismissed on November 28, 2012; (b) he did not have knowledge of the substance forming the basis of his claims because all records were sealed by the N.Y. Supreme Court and he did not have access to them until they were released by the N.Y. Attorney General's Office in the subsequent N.Y. Court of Claims action on July 13, 2013; and (c) he received additional information regarding his claims during Defendant Bazan's deposition on May 30, 2013. (*Id.* at 14.)

#### b. Plaintiff's Memorandum of Law in Opposition to the Gloversville Defendants' Motion to Dismiss

Generally, liberally construed, Plaintiff asserts four arguments in opposition to the Gloversville Defendants' motion to dismiss. (Dkt. No. 35 [Pl.'s Opp'n Mem. of Law].)

First, with respect to Defendant John Sira, Plaintiff argues as follows: (a) he conspired with other Defendants and allowed "in-house" police reports to be used in Plaintiff's criminal prosecution, to maliciously prosecute him, and to coerce him into taking a plea deal; (b) he impermissibly sent these "in-house" police reports to Mr. Andrews's attorney, Gerard McAuliffe, at his request so that they could be used against him; and (c) he ordered his subordinates at the Gloversville Police Department to harass Plaintiff and his family. (*Id.* at 6-8.) Because of these actions, Plaintiff argues that Defendant John Sira was forced into an early retirement from the Gloversville Police Department. (*Id.* at 9.)

Second, with respect to Defendant VanDeusen and the Gloversville Police Department, Plaintiff argues that they (a) harassed and discriminated against his family, and (b) willfully ignored Defendant John Sira's unlawful conduct. (*Id.* at 8.)

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 93 of 105

Third, Plaintiff argues that the Gloversville Defendants are not entitled to qualified immunity because (a) they violated his constitutional rights, (b) Defendant John Sira violated FOIL laws and police department policies, and (c) Defendant John Sira was aware that his conduct was unlawful while Defendant VanDeusen was aware of this conduct as well but failed to intervene. (*Id.* at 12-13.)

Fourth, and finally, Plaintiff argues that his claims are not time-barred for the reasons discussed above in Part II.2.a. of this Decision and Order.

### c. Plaintiff's Memorandum of Law in Opposition to Defendant Ashdown's Motion to Dismiss

Generally, liberally construed, Plaintiff asserts three arguments in opposition to Defendant Ashdown's motion to dismiss. (Dkt. No. 51 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that Defendant Ashdown violated his right to due process when Defendant Ashdown impermissibly conditioned any plea agreement to drop the criminal charges against Plaintiff on Plaintiff agreeing to discontinue his civil lawsuit against Mr. Andrews, paying for the locks to be changed on the subject premises, and moving his property out of Mr. Andrew's building. (*Id.* at 10-11.)

**\*7** Second, Plaintiff argues that Defendant Ashdown conspired with Defendant Bazan by using his arrest as leverage to get the civil lawsuit against Mr. Andrews dismissed. (*Id.* at 11.) Furthermore, Plaintiff argues that Defendant Ashdown conspired with Mr. McAuliffe by impermissibly requesting, and receiving, the "in-house" police reports from Mr. McAuliffe, which were then used against Plaintiff in his criminal prosecution. (*Id.* at 11-12.)

Third, Plaintiff argues that Defendant Ashdown is not entitled to prosecutorial or qualified immunity for the following four reasons: (a) Defendant Ashdown violated Plaintiff's constitutional rights on numerous occasions as described above; (b) there was no probable cause to charge Plaintiff with felony forgery, a fact that Defendant Ashdown was aware of; (c) despite the lack of probable cause, Defendant Ashdown maliciously pursued the criminal charge anyway in an attempt to get Plaintiff's civil lawsuit dismissed against Mr. Andrews; and (d) Defendant Ashdown's actions were outside the scope of his duties as prosecutor. (*Id.* at 12-13.)

### d. Plaintiff's Memorandum of Law in Opposition to Defendant Bazan's Motion to Dismiss

Generally, liberally construed, Plaintiff asserts two arguments in opposition to Defendant Bazan's motion to dismiss. (Dkt. No. 50 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that Defendant Bazan is not entitled to qualified immunity because (a) he tampered with evidence, coerced witness statements, and intentionally ignored exculpatory evidence, and (b) he engaged in unlawful conduct by tampering with evidence. (*Id.* at 10.)

Second, Plaintiff argues that Defendant Bazan tampered with the videotape containing his interview at the police station. (*Id.* at 7, 11, 14.) In addition, Plaintiff argues that the tampering with the videotape, coupled with the tampering of witness statements, negates the probable cause for his arrest. (*Id.* at 11.)

### e. Plaintiff's Memorandum of Law in Opposition to the Johnstown Defendants' Motion to Dismiss

Generally, liberally construed, Plaintiff asserts three arguments in opposition to the Johnstown Defendants' motion to dismiss. (Dkt. No. 48 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that Defendant Gilbo is not entitled to qualified immunity because (a) he violated Plaintiff's constitutional rights by falsifying evidence and submitting it to the court in order to facilitate Plaintiff's malicious prosecution, (b) he did not comply with Plaintiff's FOIL request but instead provided Plaintiff with an edited copy of his video taped interview at the police station, and (c) he has threatened Plaintiff's life for pursuing this matter against him. (*Id.* at 12-13.)

Second, Plaintiff argues that he has alleged facts plausibly suggesting a *Monell* claim because he has alleged that the Johnstown Police Department violated FOIL request laws by tampering with the evidence that he requested. (*Id.* at 11.)

Third, Plaintiff argues that his claim is not time-barred by the three-year statute of limitations period because he first learned on August 14, 2012, that the video taped disk of his interview at the police station was tampered with. (*Id.* at 8.)

**Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)**

2016 WL 4046780

### 3. Defendants Respective Reply Memoranda of Law

#### a. The County Defendants' Reply Memorandum of Law

Generally, the County Defendants assert seven arguments in reply to Plaintiff's opposition. (Dkt. No. 37 [Cty. Defs.' Reply Mem. of Law].)

First, the County Defendants argue that Defendant Louise Sira is entitled to prosecutorial immunity for the following reasons: (a) Plaintiff's various admissions and evidence contained in his opposition papers make it clear that Defendant Louise Sira played no role in his prosecution or the decision to arrest him; (b) even if Defendant Louise Sira processed a subpoena before being recused, this conduct was clearly within the scope of her duties in initiating and pursuing a criminal prosecution; and (c) Plaintiff's claim that Defendant Louise Sira conspired with Defendant John Sira is speculative at best. (*Id.* at 2-3.)

**\*8** Second, the County Defendants argue that Plaintiff's § 1983 claims are time-barred because his excuse that he did not have access to his criminal legal file until it was released by the New York Attorney General's Office is not valid for purposes of tolling the limitations period. (*Id.* at 3-4.) More specifically, the County Defendants argue that Plaintiff, as a defendant in a criminal prosecution, had knowledge of the charges against him and was present and acting on his own behalf when the charges were eventually dismissed. (*Id.* at 4.)

Third, the County Defendants argue that Plaintiff's claims under §§ 1981, 1983, 1985, and 1986 should be dismissed for the reasons stated in their memorandum of law. (*Id.* at 4-5.)

Fourth, the County Defendants argue that Plaintiff's claim for intentional infliction of emotional distress should be dismissed because (a) he admits that he never served a notice of claim, and (b) he has not alleged facts plausibly suggesting that they engaged in extreme or outrageous conduct. (*Id.* at 5-6.)

Fifth, the County Defendants argue that Plaintiff's *Monell* claim must be dismissed because he has failed to allege facts plausibly suggesting and/or describing a policy or custom that caused his constitutional deprivations. (*Id.* at 6.)

Sixth, the County Defendants argue that Defendant Louise Sira is entitled to qualified immunity because, even if she

did not recuse herself, the Complaint still does not allege facts plausibly suggesting anything that would have informed her that (a) there was insufficient probable cause to arrest Plaintiff, and (b) she acted unlawfully or violated Plaintiff's constitutional rights. (*Id.* at 6-7.)

Seventh, the County Defendants argue that Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile for the following two reasons: (a) the documentary evidence submitted by Plaintiff in his opposition papers demonstrate that the County Defendants had nothing to do with his criminal investigation, arrest, and/or prosecution; and (b) his federal claims are time-barred by the applicable statute of limitations. (*Id.* at 7-8.)

#### b. The Gloversville Defendants' Reply Memorandum of Law

Generally, the Gloversville Defendants assert six arguments in reply to Plaintiff's opposition. (Dkt. No. 38 [Gloversville Defs.' Reply Mem. of Law].)

First, the Gloversville Defendants argue that Plaintiff's § 1983 claims for malicious abuse of power, abuse of process, false arrest, and conspiracy are time-barred because, contrary to Plaintiff's argument that he did not have the requisite knowledge regarding these claims until a later date, Plaintiff had knowledge of the charges levied against him (as the defendant in a criminal proceeding) and was present when the criminal charges were eventually dismissed. (*Id.* at 3-4.)

Second, the Gloversville Defendants argue that Plaintiff's §§ 1981, 1983, 1985, and 1986 claims should be dismissed for the reasons stated in their memorandum of law. (*Id.* at 4.) Similarly, the Gloversville Defendants argue that Plaintiff has failed to allege facts plausibly suggesting a claim for malicious abuse of power, abuse of process, false arrest, malicious prosecution, and conspiracy for the reasons set forth in their memorandum of law. (*Id.* at 4-5.) In addition, the Gloversville Defendants argue that Plaintiff has failed to make any arguments in opposition to their motion to dismiss demonstrating that they had any involvement in the allegations serving as the basis for these claims. (*Id.* at 5.)

**\*9** Third, the Gloversville Defendants argue that Plaintiff has not opposed their arguments for dismissal of his intentional infliction of emotional distress and negligence

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

claims and has not offered an explanation regarding his failure to serve a notice of claim. (*Id.*)

Fourth, the Gloversville Defendants argue that Plaintiff has not opposed their arguments regarding his failure to allege facts plausibly suggesting the personal involvement of Defendants VanDeusen and John Sira in the alleged constitutional violations. (*Id.* at 6.)

Fifth, the Gloversville Defendants argue that Defendants VanDeusen and John Sira are entitled to qualified immunity and Plaintiff has failed to allege facts plausibly suggesting a *Monell* claim for the reasons stated in their memorandum of law. (*Id.* at 6-7.)

Sixth, the Gloversville Defendants argue that Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile for the following reasons: (1) the attachments to Plaintiff's opposition papers demonstrate that the Gloversville Defendants were not involved with Plaintiff's criminal investigation, arrest and/or prosecution; and (2) the statute of limitations regarding the majority of Plaintiff's claims has expired. (*Id.* at 7-8.)

### c. The Johnstown Defendants' Reply Memorandum of Law

Generally, the Johnstown Defendants assert eight arguments in reply to Plaintiff's opposition. (Dkt. No. 47 [Johnstown Defs.' Reply Mem. of Law].)

First, the Johnstown Defendants restate their argument from their memorandum of law that all of Plaintiff's § 1983 claims, with the exception of his malicious prosecution claim, are time-barred and Plaintiff has failed to oppose the dismissal of those claims on this basis. (*Id.* at 2.)

Second, the Johnstown Defendants restate their argument from their memorandum of law that Plaintiff's malicious prosecution claim should be dismissed because (a) Plaintiff has failed to allege facts plausibly suggesting that the Johnstown Defendants initiated a criminal proceeding against him, (b) a termination in the interest of justice is not a favorable termination, (c) the N.Y. Court of Claims has already determined that probable cause existed for Plaintiff's arrest, and (d) Plaintiff has failed to allege facts plausibly suggesting either malice or that the Johnstown Defendants

attempted to achieve a collateral purpose beyond Plaintiff's criminal proceeding. (*Id.* at 2-4.)

Third, the Johnstown Defendants restate their argument from their memorandum of law that Plaintiff has failed to allege facts plausibly suggesting a claim under §§ 1981, 1985, and 1986. (*Id.* at 4-5.)

Fourth, the Johnstown Defendants restate their argument that Plaintiff has failed to allege facts plausibly suggesting the personal involvement of Defendant Gifford in a violation of Plaintiff's constitutional rights and Plaintiff's allegation that Defendant Gifford advised him over the telephone that he " shouldn't of did what [he] did" and hung up is insufficient to state a claim. (*Id.* at 5.)

Fifth, the Johnstown Defendants restate their arguments from their memorandum of law that the claims against the Johnstown Police Department must be dismissed because it is a nonlegal entity and he has failed to allege facts plausibly suggesting a *Monell* claim. (*Id.* at 5-6.)

 **\*10** Sixth, the Johnstown Defendants argue that Plaintiff's state law claims must be dismissed because (a) he failed to serve a notice of claim, and (b) they are time-barred by the one-year-and-ninety-day statute of limitations period. (*Id.* at 6-7.)

Seventh, the Johnstown Defendants restate their arguments from their memorandum of law that Defendants Gifford and Gilbo are entitled to qualified immunity. (*Id.* at 7-8.)

Eighth, the Johnstown Defendants argue that Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile. (*Id.* at 8-10.)

### d. Defendant Ashdown's Reply Memorandum of Law

Generally, Defendant Ashdown asserts seven arguments in reply to Plaintiff's opposition. (Dkt. No. 52 [Def. Ashdown's Reply Mem. of Law].)

First, Defendant Ashdown argues that the Court should disregard Plaintiff's opposition papers because they were filed three days after the deadline set by the Court and Plaintiff has not offered any explanation for his delayed filing. (*Id.* at 2.)

**Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)**
Case 1:24-cv-00376-BKS-TWD   Document 4   Filed 05/10/24   Page 96 of 105
2016 WL 4046780

Second, Defendant Ashdown argues that, even if the Court considers Plaintiff's opposition papers, he is still entitled to prosecutorial immunity because (a) Plaintiff's admissions and "evidence" contained in his opposition papers demonstrate that Defendant Ashdown acted exclusively within his role as special prosecutor, (b) all activities Plaintiff argues that Defendant Ashdown engaged in were also within the scope of his duties in initiating and pursuing a criminal prosecution, and (c) Plaintiff's continued speculation that Defendant Ashdown acted in concert with law enforcement agents or the other Defendants is speculative at best and does not plausibly suggest a claim. (*Id.* at 2-3.)

Third, Defendant Ashdown restates the argument from his memorandum of law that Plaintiff's § 1983 claims for malicious abuse of power, abuse of process, false arrest, and conspiracy are time-barred by the statute of limitations. (*Id.* at 3.)

Fourth, Defendant Ashdown restates his arguments from his memorandum of law that Plaintiff has failed to allege facts plausibly suggesting a claim under §§ 1981, 1983, 1985, and 1986. (*Id.* at 4.)

Fifth, Defendant Ashdown argues that Plaintiff has failed to allege facts plausibly suggesting a claim for intentional infliction of emotional distress because (a) any alleged tortious acts by Defendant Ashdown were taken within the scope of his role as special prosecutor, (b) Plaintiff has offered nothing more than conclusory assertions that Defendant Ashdown acted in concert with other Defendants for personal and/or nefarious reasons, and (c) no rational fact-finder could find that Defendant Ashdown engaged in extreme and outrageous conduct. (*Id.* at 5.)

Sixth, Defendant Ashdown argues that he is entitled to qualified immunity for the reasons stated in his memorandum of law. (*Id.* at 5-6.)

Seventh, and finally, Defendant Ashdown argues that, for the foregoing reasons, Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile. (*Id.* at 6-7.)

**e. Defendant Bazan's Reply Memorandum of Law**

Generally, Defendant Bazan asserts four arguments in reply to Plaintiff's opposition. (Dkt. No. 55 [Def. Bazan's Reply Mem. of Law].)

First, Defendant Bazan argues that Plaintiff's opposition papers should not be considered because they were filed after the deadline set by this Court. (*Id.* at 1.)

 **\*11** Second, Defendant Bazan argues that Plaintiff has failed to refute the fact that the N.Y. Court of Claims has already determined that probable cause existed for his arrest. (*Id.*)

Third, Defendant Bazan argues that Plaintiff has failed to respond to the arguments that his claims are time-barred and that Defendant Bazan is entitled to qualified immunity. (*Id.* at 2.)

Fourth, and finally, Defendant Bazan argues that Plaintiff should not be given an opportunity to amend his Complaint because (1) any amendments would be futile, (2) Plaintiff has not filed a proposed amended complaint, and (3) there are no meritorious claims that can be asserted against Defendant Bazan. (*Id.*)

## III. RELEVANT LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand,

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 97 of 105

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

**\*12** Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[1] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[2] Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp. 2d at 214, n.28 [citations omitted].[3]

1    See *Vega v. Artus,* 610 F. Supp. 2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak*, 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases).

2    See *Rosendale v. Brusie*, 374 Fed.Appx. 195, 196 (2d Cir. 2010) ("[A]lthough the courts remain

**Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)**

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 98 of 105

2016 WL 4046780

obligated to construe a pro se complaint liberally, ... the complaint must contain sufficient factual allegations to meet the plausibility standard."); *Vega,* 610 F. Supp. 2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases).

3      It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus,* 127 S. Ct. 2197, 2200 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S. Ct. 1965, n.3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. See *Rusyniak,* 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

**\*13**  Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. 4  Moreover, in the Second Circuit, a *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his

complaint–to the extent those papers are consistent with the allegations in the complaint. 5

4      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC,* No. 10-573, 2011 WL 2135734, at \*1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint.... However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a]

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 99 of 105

defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

5      See *Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 170 n.1 (2d Cir. 1998) (per curiam) ("[W]e deem Drake's complaint to include the facts contained in his memorandum of law filed in response to Delta's 1996 motion to dismiss."); *Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987) ("In his affidavit submitted in opposition to defendants' motion to dismiss, Gill asserts that Mooney's actions amounted to deliberate and willful indifference. Liberally construed under *pro se* pleading standards, Gill's allegations against Mooney involve more than ordinary lack of due care for the prisoner's interests or safety, ... and therefore state a colorable claim under the Eighth and Fourteenth Amendments.") (internal quotation marks and citation omitted); *Donhauser v.Goord,* 314 F. Supp. 2d 119, 212 (N.D.N.Y.) (Sharpe, M.J.) ("[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they "are consistent with the allegations in the complaint.") (collecting district court cases), *vacated on other grounds,* 317 F. Supp. 2d 160 (N.D.N.Y. 2004) (Hurd, J.).

## IV. ANALYSIS

**\*14** As an initial matter, the Court must determine what extraneous documents it may consider in deciding Defendants' respective motions. More specifically, Defendants have submitted a decision and order from the New York Court of Claims in a related state court action where Plaintiff sued the State of New York for false arrest and defamation. (Dkt. No. 11, Attach. 4 [N.Y. Court of Claims Op.].) Defendants argue that the Court can take judicial notice of this document. (Dkt. No. 11, Attach. 5, at 3 [Cty. Defs.' Mem. of Law].) In opposing Defendants' respective motions, Plaintiff appears to have submitted all of the exhibits that were filed in that action, including various deposition transcripts. (Dkt. No. 51, Attach. 1.)

As discussed above in Part III of this Decision and Order, there are four circumstances under which the Court may consider materials outside of the pleadings, including documents that the Court may take judicial notice of. State court decisions are clearly public documents that fall under

this category. *See Johnson v. Pugh,* 11-CV-0385, 2013 WL 3013661, at \*2 (E.D.N.Y. June 18, 2013) (stating that, "[a] court may take judicial notice of matters of public record, including ... decisions in prior state court adjudications"); *accord, Nemeth v. Vill. of Hancock,* 10-CV-1161, 2011 WL 56063, at \*1 n.3 (N.D.N.Y. Jan. 7, 2011) (McAvoy, J.) (collecting cases); *Barnes v. Cty. of Monroe,* 85 F. Supp. 3d 696, 723 (W.D.N.Y. 2015). Therefore, the Court agrees with Defendants that it may take judicial notice of the decision and order from the New York Court of Claims. However, in so doing, the Court may take judicial notice "only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." Glob. *Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir. 2006) (internal quotations and citation omitted).

The Court reaches a different conclusion with respect to the documents submitted by Plaintiff for the following three reasons. First, Plaintiff does not explain how the documents may be properly considered by the Court. Although it is conceivable that they could be considered public documents, Plaintiff admits that not all of the exhibits (without identifying which ones) were properly filed with the New York Court of Claims. (Dkt. No. 51, at 16 [Pl.'s Opp'n Mem. of Law] [stating that "my evidence was not submitted in the right form and was not considered"].) Similarly, the decision and order indicates that the New York Court of Claims did not consider the exhibits submitted by Plaintiff. (Dkt. No. 11, Attach. 4, at 7.)

Second, with respect to the deposition transcripts, the Court finds that they cannot be properly considered as either incorporated by reference or integral to the Complaint. The Complaint neither expressly references the depositions, nor does it bear any indication that they were substantially relied upon in its drafting. *See Goel v. Bunge, Ltd.,* 820 F.3d 554, 560 (2d Cir. 2016) (finding error in district court's decision to consider deposition testimony from an underlying state court action and stating that "[a] complaint that alleges facts related to or gathered during a separate litigation does not open the door to consideration, on a motion to dismiss, of any and all documents filed in connection with that litigation"); *see also Allstate Ins. Co. v. Rozenberg,* 771 F. Supp. 2d 254, 268 (E.D.N.Y. 2011) (declining to consider deposition transcript because the complaint did not make any reference to it and the plaintiffs did not "purport to have relied on [the] deposition in crafting the allegations").

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

Case 1:24-cv-00376-BKS-TWD   Document 4   Filed 05/10/24   Page 100 of 105

Third, in any event, the Court has reviewed the exhibits submitted by Plaintiff and it is apparent that, even if the Court were to consider them, they are immaterial to the Court's adjudication of Defendants' respective motions.

**\*15** Having resolved this issue, the Court now turns to its analysis of the issues raised in Defendants' respective motions.

### A. Whether Plaintiff's Malicious Prosecution Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' respective memoranda of law. *See*, *supra*, Part II of this Decision and Order. To those reasons, the Court adds the following analysis.

"To state a claim for malicious prosecution under New York law, the plaintiff must show: (1) the defendant initiated a criminal proceeding; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for the criminal charge; and (4) the defendant acted maliciously." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 272 (S.D.N.Y. 2010) (internal quotation marks omitted). "In addition, the Court of Appeals requires that in order 'to sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating claimant's personal liberty and privacy interests under the Fourth Amendment.' " *Brandon*, 705 F. Supp. 2d at 272 (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 316 [2d Cir. 2004]).

As discussed above, Defendants argue that this claim should be dismissed because (1) the dismissal of Plaintiff's criminal proceeding in the interest of justice is not a termination in his favor, and (2) the New York Court of Claims has determined that there was probable cause for Plaintiff's arrest. With respect to the first argument, it is true that the Second Circuit has held that "[a] dismissal 'in the interest of justice' under [N.Y. Crim. Proc. Law § 170.40] cannot provide the favorable termination required as the basis for a claim of malicious prosecution." *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 Fed.Appx. 672, 674 (2d Cir. 2009) (internal quotations omitted); *accord*, *Murphy v. Gibbons*, 13-CV-1433, 2014 WL 4828126, at \*6 (N.D.N.Y. Sept. 29, 2014) (Sharpe, C.J.). However, other courts in this Circuit have recognized that, in *Cantalino v. Danner*, 96 N.Y.2d 391 (N.Y. 2001), the New York Court of Appeals rejected this proposition as a *per se* rule. *See Guzman v. U.S.*, 11-CV-5834, 2013 WL 543343, at

\*8 (S.D.N.Y. Feb. 14, 2013) (stating that, "[b]ecause *Lynch* relies on *Hygh*, it appears that the Second Circuit overlooked the Court of Appeals' clarification of the law in *Cantalino*. Indeed, even after the Second Circuit decided *Lynch*, other judges [in this Circuit] have seen fit to apply the rule of *Cantalino*."); *see also Norton v. Town of Brookhaven*, 47 F. Supp. 3d 152, 160 (E.D.N.Y. 2014) (collecting cases). Indeed, in *Cantalino*, the New York Court of Appeals explained that, while "there are circumstances where a dismissal in the interest of justice is inconsistent with innocence because it represents mercy requested or accepted by the accused," the Court's past decisions did "not establish a *per se* rule that a dismissal in the interest of justice can never constitute a favorable termination. Rather ... the question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused." *Cantalino*, 96 N.Y. 2d at 396-97.

**\*16** The Court need not linger on this issue, however, because it agrees with Defendants' second argument: that dismissal of Plaintiff's malicious prosecution claim is warranted on the grounds that the N.Y. Court of Claims has already determined that probable cause existed for his arrest. *See Martin v. Cty. of Nassau*, 692 F. Supp. 2d 282, 293 (E.D.N.Y. 2010) ("[T]he Court takes judicial notice of the fact that another court has already found probable cause for the plaintiff's arrest."). Although Plaintiff appears to contest this determination in his opposition papers, he is collaterally estopped from doing so. Specifically, "[t]he doctrine of collateral estoppel, or issue preclusion, refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Sahni v. Legal Servs. of the Hudson Valley*, 14-CV-1616, 2015 WL 4879160, at \*3 (S.D.N.Y. Aug. 13, 2015). "[I]nferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004). Under federal law, collateral estoppel applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Austin v. Downs, Rachlin & Martin*, 270 Fed.Appx. 52, 53-54 (2d Cir. 2008). Similarly, under New York law, federal courts must give preclusive effect to state court judgments "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and

Case 1:24-cv-00376-BKS-TWD   Document 4   Filed 05/10/24   Page 101 of 105

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

the plaintiff had a full and fair opportunity to litigate the issue in an earlier action." *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002).

Here, the N.Y. Court of Claims dismissed Plaintiff's false arrest claim as a matter of law, finding that "Claimant fails to raise any genuine issues of material fact which illustrate that Investigator Bazan lacked probable cause to believe that a crime had been committed." (Dkt. No. 11, Attach. 4, at 6.) The Court of Claims then held that, because "Claimant's arrest is privileged ... Defendant is entitled to summary judgment dismissing the cause of action alleging false arrest." (*Id.* at 7.) A lack of probable cause is a necessary element of claims for false arrest and malicious prosecution. Furthermore, Plaintiff had a full and fair opportunity to litigate the issue of probable cause through the summary judgment motion filed in the N.Y. Court of Claims. *See Tobias v. First City Nat'l Bank & Trust Co.*, 709 F. Supp. 1266, 1270 (S.D.N.Y. 1989) (stating that "[a] fully litigated and opposed summary judgment determination can constitute the requisite full and fair opportunity to litigate"). Accordingly, because Plaintiff cannot establish that probable cause was lacking, his malicious prosecution claim is dismissed. *See Mitchell v. Hartnett*, 262 F. Supp. 2d 153, 155 (S.D.N.Y. 2003) (state court decision collaterally estopped plaintiff from relitigating the lawfulness of his arrest via § 1983 claim); *Boomer v. Bruno*, 134 F. Supp. 2d 262, 268-69 (N.D.N.Y. 2001) (Kahn, J.) (dismissing § 1983 malicious prosecution claim where state court previously determined the issue); *Graebe v. Falcetta*, 726 F. Supp. 36, 38 (E.D.N.Y. 1989) (giving preclusive effect to probable cause determination in underlying state court action when dismissing subsequent § 1983 malicious prosecution claim).

### B. Whether Plaintiff's § 1983 Claims for "Malicious Abuse of Power," [6] Malicious Abuse of Process, and False Arrest Are Time-Barred

[6]    Although Plaintiff titles this claim as "Malicious Abuse of Power," it is clear from a reading of the substantive allegations that this is a claim for malicious abuse of process. (Dkt. No. 1, at 9 [Pl.'s Compl.].)

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' respective memoranda of law. *See*, *supra*, Part II of this Decision and Order. To those reasons, the Court adds the following analysis.

"Under New York law, the statute of limitations for § 1983 claims, including false arrest and malicious abuse of process, is three years." *Anderson v. Cty. of Putnam*, 14-CV-7162, 2016 WL 297737, at *2 (S.D.N.Y. Jan. 22, 2016). A § 1983 claim accrues "when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994); *see also Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (stating that a claim accrues under § 1983 "when the plaintiff knows or has reason to know of the injury which is the basis of his action...."). "Ordinarily, a claim for abuse of process accrues at such time as the criminal process is set in motion–typically at arrest–against the plaintiff." *Duamutef v. Morris*, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997) (Sotomayor, J.); *accord*, *Anderson*, 2016 WL 297737, at *3. Similarly, "[a] claim for false arrest generally accrues on the date of the arrest." *Harrison v. New York*, 95 F. Supp. 3d 293, 327 (E.D.N.Y. 2015).

**\*17**  In the present case, the Complaint alleges that Plaintiff was arrested on January 13, 2012. (Dkt. No. 1, ¶ 14 [Pl.'s Compl.].) Plaintiff commenced this action on August 13, 2015, which is three years and eight months after his arrest. Accordingly, Plaintiff's § 1983 claims for false arrest, malicious abuse of power, and abuse of process are time-barred by the applicable statute of limitations.

In any event, the Court would dismiss Plaintiff's false arrest claim because probable cause for his arrest has already been determined by the N.Y. Court of Claims as discussed above in Part IV.A. of this Decision and Order. *See McBride v. Bratton*, 95-CV-9626, 1996 WL 636075, at *3 (S.D.N.Y. Nov. 4, 1996) (Chin, J.), *aff'd*, 122 F.3d 1056 (2d Cir. 1997) (dismissing § 1983 false arrest claim where state court previously determined officers had probable cause to arrest); *accord*, *Brown v. De Fillips*, 717 F. Supp. 172, 179 (S.D.N.Y. 1989); *see also Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (stating that "[p]robable cause is a complete defense to false arrest claims"). With respect to Plaintiff's malicious abuse of process claim, "[c]ourts in this Circuit appear to be divided on whether the existence of probable cause defeats a claim for malicious abuse of process." *Posner v. City of New York*, 11-CV-4859, 2014 WL 185880, at *7 (S.D.N.Y. Jan. 16, 2014); *see also Deanda v. Hicks*, 137 F. Supp. 3d 543, 576 (S.D.N.Y. 2015) (collecting cases); *cf. Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 958 (2d Cir. 2015) (recognizing the confusion surrounding this issue but declining to resolve it). [7] Nevertheless, the

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 102 of 105

Court would dismiss Plaintiff's malicious abuse of process claim for the alternative reason that he has not alleged facts plausibly suggesting that Defendants employed regularly issued legal process to compel performance of some act, with intent to do harm without excuse or justification, in order to obtain a collateral objective that is outside the legitimate ends of the process, for the reasons stated in Defendants' respective memoranda of law. (Dkt. No. 11, Attach. 5, at 12-14 [Cty. Defs.' Mem. of Law]; Dkt. No. 14, Attach. 3, at 10-12[Gloversville Defs.' Mem. of Law]; Dkt. No. 26, Attach. 3, at 12-14 [Def. Ashdown's Mem. of Law]; Dkt. No. 27, Attach. 3, at 14-15 [Def. Bazan's Mem. of Law].) For example, while the Complaint generally alleges that Defendants were maliciously motivated to use the "trump" criminal charge to coerce Plaintiff into discontinuing his civil lawsuit against Mr. Andrews (Dkt. No. 1, ¶¶ 16-18 [Pl.'s Compl.] ), it does not plausibly suggest a collateral objective because the allegations plausibly suggest merely a malicious motive. *See Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003) (explaining that a "malicious motive alone" is not a "collateral objective"); *Perry v. Manocherian*, 675 F. Supp. 1417, 1429 (S.D.N.Y. 1987) (stating that a "malicious motive alone ... does not give rise to a cause of action for abuse of process" and holding that issuance of a summons and complaint, even if made with the intent to coerce settlement, does not constitute abuse of process).

7    The Court notes that, in *Jones v. J.C. Penny's Dep't Stores Inc.*, 317 Fed.Appx. 71 (2d Cir. 2009), the Second Circuit, in a non-precedential summary order, indicated its support for the interpretation that probable cause is a complete defense to an abuse of process claim. *Jones*, 317 Fed.Appx. at 74 (holding that "[t]he conclusion that [the plaintiff] could not prevail on her claims that the officers lacked probable cause for her arrest ... required dismissal of her ... claims of abuse of process"). Under *Jones*, Plaintiff's malicious abuse of process claim would clearly fail because, as discussed above in Part IV.A. of this Decision and Order, probable cause for Plaintiff's arrest has already been established. At the very least, Defendants would be entitled to qualified immunity based on this ground.

## C. Whether Plaintiff's Conspiracy Claim Under §§ 1983 and 1985 Should Be Dismissed

**\*18** After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth below

### 1. Conspiracy Claim Under § 1983

"To establish a § 1983 conspiracy, plaintiff must prove '(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.' " *Mitchell v. Cty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. 2011) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 [2d Cir. 1999]). "In addition, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (internal quotations omitted); *accord*, *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011). Finally, "a § 1983 conspiracy fails as a matter of law where there is no underlying constitutional violation." *Mitchell*, 786 F. Supp. 2d at 564; *accord*, *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 97 (N.D.N.Y. 2013) (Suddaby, J.).

Here, Plaintiff's § 1983 conspiracy claim is dismissed because his underlying constitutional claims for false arrest, malicious prosecution, abuse of process, and malicious abuse of power have been dismissed. In any event, the Court agrees with Defendants that Plaintiff's allegations, even when read with the utmost of special liberality, are impermissibly vague and conclusory to plausibly suggest a conspiracy.

### 2. Conspiracy Claim Under § 1985

"To avoid dismissal of a § 1985 claim, a plaintiff must demonstrate: (1) a conspiracy; (2) for the purpose of depriving either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) a person is either injured in his person or property or deprived of any right of a citizen of the United States; and (5) the conspiracy is motivated by some racial or perhaps otherwise invidious discriminatory animus." *K.W. ex rel. Brown v. City of New York*, 275 F.R.D. 393, 399 (E.D.N.Y. 2011).

Case 1:24-cv-00376-BKS-TWD    Document 4    Filed 05/10/24    Page 103 of 105
Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

Because the Court has found that Plaintiff has failed to allege facts plausibly suggesting a conspiracy and/or an underlying constitutional violation, Plaintiff's § 1985 claim is likewise dismissed. *See Alston v. Sebelius*, 13-CV-4537, 2014 WL 4374644, at *18 (S.D.N.Y. Sept. 2, 2014) (stating that, "given that plaintiff has failed to allege an underlying claim for a constitutional violation, his conspiracy claim under Section 1985 cannot stand."). In addition, the Court agrees with Defendants that the Complaint is devoid of any facts plausibly suggesting that their alleged actions were motivated by racial or discriminatory animus or that Plaintiff is a member of a protected class.

### D. Whether Plaintiff's Claim for "Refusing or Neglecting to Prevent" Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the following two reasons.

**\*19** First, the Court construes this claim as an attempt to bring a claim under 42 U.S.C. § 1986. *See Bromfield v. Lend-Mor Mortg. Bankers Corp.*, 15-CV-1103, 2016 WL 632443, at *6 (D. Conn. Feb. 17, 2016) (reading *pro se* plaintiff's claim that defendants "violated [her] constitutionally protected Rights by refusing or neglecting to prevent deprivation of [her] rights under Color of Law" as a claim under § 1986).

Second, because Plaintiff's § 1985 claim is dismissed, his § 1986 claim must also be dismissed. *See Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (stating that "[a] claim under Section 1986 ... lies only if there is a viable conspiracy claim under 1985"); *accord*, *Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 361 (N.D.N.Y. 2015) (Suddaby, J.).

### E. Whether Plaintiff's *Monell* Claim Against the Johnstown Police Department and Gloversville Police Department Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for each of the two reasons set forth below.

First, because the Court has dismissed Plaintiff's underlying constitutional claims, his *Monell* claim must also be dismissed. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely

correct"); *accord*, *Grega v. Pettengill*, 123 F. Supp. 3d 517, 556 (D. Vt. 2015).

Second, in any event, police departments are not municipalities or "persons" within the meaning of § 1983. *See Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (holding that, "[b]ecause a municipal police department is not an independent legal entity, it is not subject to suit under [§] 1983") (collecting cases). Accordingly, Plaintiff's *Monell* claim is dismissed on this additional basis.

### F. Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Supervisory Liability Claim Against Defendants Gifford and VanDeusen

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' respective memoranda of law. (Dkt. No. 30, Attach. 3, at 7-8 [Johnstown Defs.' Mem. of Law]; Dkt. No. 14, Attach. 3, at 19-20 [Gloversville Defs.' Mem. of Law].). In addition to those reasons, the Court adds the following two points.

First, this claim is dismissed on the basis that Plaintiff cannot demonstrate an underlying constitutional violation because his claims have been dismissed. *See Lacey v. Yates Cty.*, 30 F. Supp. 3d 213, 227 (W.D.N.Y. 2014) (stating that, "[a]s a threshold matter, where a plaintiff has not established any underlying constitutional violation, [he] cannot state a claim for § 1983 supervisory liability") (internal quotations omitted); *accord*, *Lawrence v. Evans*, 136 F. Supp. 3d 486, 491 (W.D.N.Y. 2015).

Second, even if the merits of Plaintiff's claim were considered, the Court notes that the only allegation regarding Defendant VanDeusen's personal involvement in this matter is his failure "to train, supervise and discipline Captain Sira for his conflicted and malice acts[,]" (Dkt. No. 1, ¶ 46 [Pl.'s Compl.] ), which is wholly conclusory and insufficient to plausibly suggest his personal involvement in a constitutional violation. *See Davis v. Cty of Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005) (stating that "[a] complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal."); *Tricoles v. Bumpus*, 05-CV-3728, 2006 WL 767897, at *4 (E.D.N.Y. Mar. 23, 2006) ("Courts have dismissed § 1983 ... claims where a complaint merely asserts bare conclusory statements that a defendant supervisor failed to supervise or train ...."); *Pravda v. City of Albany*, 956

**Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)**

2016 WL 4046702

Case 1:24-cv-00376-BKS-TWD   Document 4   Filed 05/10/24   Page 104 of 105

F. Supp. 174, 182 (N.D.N.Y. 1997) (Scullin, J.) (granting defendants' motion for judgment on the pleadings, where *pro se* plaintiff's "conclusory allegations" that county jail superintendent and county sheriff were responsible for setting county policy and supervising corrections officers involved in abuse were "insufficient to establish the personal involvement of these individual Defendants in Plaintiff's alleged constitutional deprivations").

### G. Whether Plaintiff's State Law Claim for Intentional Infliction of Emotional Distress Should Be Dismissed

**\*20** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' respective memoranda of law regarding Plaintiff's failure to serve Defendants' with a notice of claim as required by N.Y. Gen. Mun. Law § 50-e. *See Rivas v. Suffolk Cty.*, 326 F. Supp. 2d 355, 360-61 (E.D.N.Y. 2004) ("The defendants contend that the plaintiff has failed to serve the required notice of claim, and the plaintiff has not denied such contentions in his reply papers. In the absence of such a filing, the plaintiff's tort claim for intentional infliction of emotional distress ... must be dismissed"). In addition, the Court notes that it does not have the authority to consider a motion for leave to file a late notice of claim. *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 710 (S.D.N.Y. 2011) (collecting cases). Therefore, Plaintiff's claim for intentional infliction of emotional distress is dismissed.

### H. Whether Plaintiff Should Be Afforded Leave to Amend His Complaint

After carefully considering the matter, the Court answers this question in negative for the reasons set forth below.

Generally, *pro se* civil rights litigants, such as Plaintiff, are to be afforded special solicitude in this Circuit. *See, e.g., Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (explaining that the liberal pleading standard set forth in Fed. R. Civ. P. 12[b][6] "applies with greater force when the complaint is submitted *pro se* or the plaintiff alleges civil rights violations"). As a result, where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's]

causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112.

Here, the Court finds that the defects with Plaintiff's claims are substantive, rather than formal, such that any amendments would be futile. More specifically, the Court has found that Plaintiff's claims for false arrest, malicious abuse of power, and malicious abuse of process are time-barred and, therefore, cannot be cured by better pleading. *See Mackensworth v. S.S. Am. Merch.*, 28 F.3d 246, 251 (2d Cir. 1994) (finding denial of leave to amend complaint proper on futility grounds because proposed claim would have been barred by the statute of limitations); *Diallo v. Williams*, 04-CV-4556, 2006 WL 156158, at \*2 (S.D.N.Y. Jan. 20, 2006) (denying plaintiff's motion to amend to include § 1983 claims as futile where the claims would be barred by the statute of limitations). With respect to Plaintiff's malicious prosecution claim, the Court has found that Plaintiff is collaterally estopped from re-litigating the issue of probable cause for his arrest and, therefore, cannot establish the necessary elements for his claim.

Finally, because Plaintiff cannot establish an underlying constitutional violation, any amendments to his § 1983 and conspiracy claims would be futile. Similarly, any amendments to Plaintiff's claim for intentional infliction of emotional distress would also be futile because he has failed to serve a notice of claim.

**ACCORDINGLY**, it is

**ORDERED** that Defendants Fulton County and Louise Sira's Motion to Dismiss (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendants' Gloversville Police Department, John P. Sira, Jr. and Donald Vandeusen's Motion to Dismiss (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant Jesse Ashdown's Motion to Dismiss (Dkt. No. 26) is **GRANTED**; and it is further

**\*21 ORDERED** that Defendant Darryl Bazan's Motion to Dismiss (Dkt. No. 27) is **GRANTED**; and it is further

**ORDERED** that Defendants Mark Gifford, David Gilbo and Johnstown Police Department's Motion to Dismiss (Dkt. No. 30) is **GRANTED**; and is further

2016 WL 4046780

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** in its entirety with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4046780

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.